THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIERRA CLUB; and CENTER FOR ENVIRONMENTAL LAW AND POLICY,<br><br>                    Plaintiffs,<br><br>        v.<br><br>DENNIS McLERRAN; LISA JACKSON; and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>                    Defendants,<br><br>        and<br><br>SPOKANE COUNTY, a political subdivision of the State of Washington,<br><br>        Defendant-Intervenor,<br><br>        and<br><br>KAISER ALUMINUM WASHINGTON, LLC, a Delaware corporation,<br><br>        Applicant Defendant-Intervenor. | No. 2:11-cv-01759-RSL<br><br>DECLARATION OF KELLY F. MOSER IN SUPPORT OF KAISER ALUMINUM WASHINGTON, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO INTERVENE AS DEFENDANT |

I, Kelly F. Moser, hereby declare and state as follows:

MOSER DECLARATION IN SUPPORT OF
KAISER'S REPLY MEMORANDUM
(No. 2:11-cv-01759) – 1
03915-0003/LEGAL22717130.1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1.    I am over the age of eighteen, have personal knowledge of the following facts and, if called upon, could testify competently thereto.

2.    I am an attorney at the law firm of Perkins Coie LLP and one of the counsel of record for Applicant Defendant-Intervenor, Kaiser Aluminum Washington, LLC.

3.    Attached hereto as **Exhibit A** is a true and correct copy of an excerpt from Spokane County's National Pollutant Discharge Elimination System Waste Discharge Permit No. WA-0093317 ("NPDES") issued on November 29, 2011 for the Spokane County Regional Water Reclamation Facility.

4.    Attached hereto as **Exhibit B** is a true and correct copy of an excerpt from the Fact Sheet for Spokane County's NPDES Permit No. WA-0093317 for the Spokane County Regional Water Reclamation Facility

5.    Attached hereto as **Exhibit C** is a true and correct copy of Order Re Motions to Intervene, *Area Reg. Sewer Bd. v. U.S. EPA*, No. CV 10-362-N-REB (D. Idaho Nov. 12, 2010).

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.  This declaration is executed this 10th day of February, 2012 at Seattle, Washington.


*/s/ Kelly F. Moser*
Kelly F. Moser

MOSER DECLARATION IN SUPPORT OF
KAISER'S REPLY MEMORANDUM
(No. 2:11-cv-01759) – 2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4800
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

# Exhibit A

Page 1 of 69
Permit No. WA-0093317

Issuance Date:     November 29, 2011
Effective Date:    December 1, 2011
Expiration Date:   November 31, 2016

# National Pollutant Discharge Elimination System
# Waste Discharge Permit No. WA-0093317

State of Washington
DEPARTMENT OF ECOLOGY
Olympia, Washington 98504-7600

Eastern Regional Office
4601 North Monroe Street
Spokane, WA 99205-1295

In compliance with the provisions of
The State of Washington Water Pollution Control Law
Chapter 90.48 Revised Code of Washington
and
The Federal Water Pollution Control Act
(The Clean Water Act)
Title 33 United States Code, Section 1342 et seq.

Spokane County Division of Utilities
1026 W. Broadway Ave.
Spokane, WA 99260-0430

is authorized to discharge in accordance with the Special and General Conditions that follow.

| | |
|---|---|
| Plant Location: Spokane County Regional Water Reclamation Facility, 1004 North Freya Street, Spokane, WA 99202 | Receiving Water: Spokane River<br>Latitude:    47.675833° N<br>Longitude: 117.3446944° W |
| Treatment Type: Step-feed nitrification/denitrification membrane bioreactor | |

James M. Bellatty
Water Quality Section Manager
Eastern Regional Office
Washington State Department of Ecology

### b. O&M manual components

In addition to the requirements of WAC 173-240-080 (1) through (5), the O&M Manual must include:

1. Emergency procedures for cleanup in the event of wastewater system upset or failure.

2. Wastewater system maintenance procedures that contribute to the generation of process wastewater.

3. Reporting protocols for submitting reports to Ecology to comply with the reporting requirements in the discharge permit.

4. Any directions to maintenance staff when cleaning or maintaining other equipment or performing other tasks which are necessary to protect the operation of the wastewater system (for example, defining maximum allowable discharge rate for draining a tank, blocking all floor drains before beginning the overhaul of a stationary engine).

5. The treatment plant process control monitoring schedule.

6. Minimum staffing adequate to operate and maintain the treatment processes and carry out compliance monitoring required by the permit.

7. Specify other items on case-by-case basis such as O&M for collection systems pump stations, lagoon liners, etc.

## S6. Pretreatment

### S6.A.  General Requirements

1. The Permittee shall implement the Industrial Pretreatment Program in accordance with the legal authorities, policies, procedures, and financial provisions described in the Permittee's approved pretreatment program submittal entitled "Industrial Pretreatment Program" and updated on February 5, 2001; any approved revisions thereto; and the General Pretreatment Regulations (40 CFR Part 403). The Ordinance section containing the local limits was last updated October 1, 2009.

A meeting was held on October 20, 2004 at the Department of Ecology Eastern Regional Office on the subject of Spokane-area pretreatment. The Department of Ecology, City of Spokane, Spokane County, and the City of Spokane Valley agreed that Spokane County has the authority to administer its Delegated Pretreatment Program to their present and future sewer customers located within their designated sewer service areas in Spokane County and in the City of Spokane Valley. For the purpose of this permit and pretreatment program delegation, this applies to customers who contribute wastewater into the Spokane County sewer collection system and are located outside of the corporate limits of the City of Spokane and within the City of Spokane Valley and Spokane County.

Existing permitted facilities that this applies to, Ecolite, Galaxy Compound Semiconductors, Lloyd Industries, Honeywell, Kemira Water Solutions, American On-Site Services and Novation in the City of Spokane Valley, and the Mica Landfill in Spokane County. The County acknowledges that as owner and operator of a wastewater collection system it is their responsibility to protect their infrastructure, and by agreement the infrastructure of the downstream POTWs, and accepts the obligations of a Delegated Pretreatment Program.

Both the City of Spokane and Spokane County, as the control authority for their Delegated Pretreatment Programs, will continue to enforce and update, if necessary and appropriate, their interlocal agreements and/or multijurisdictional pretreatment agreement with "contributing" jurisdictions such as Millwood, the City of Spokane Valley and the City of Spokane. Some of these actions will include conducting Industrial User Surveys, monitoring, and permitting commercial and/or industrial users.

At a minimum, the following pretreatment implementation activities shall be undertaken by the Permittee:

a.  Enforce categorical pretreatment standards promulgated pursuant to Section 307(b) and (c) of the Federal Clean Water Act (hereinafter, the Act), prohibited discharge standards as set forth in 40 CFR 403.5, local limitations specified in Section 08.03A.0204 of Ordinance 8.03A, or state standards, which ever are most stringent or apply at the time of issuance or modification of a local industrial waste discharge permit. Locally derived limitations shall be defined as pretreatment standards under Section 307(d) of the Act and shall not be limited to categorical industrial facilities.

b.  Issue industrial waste discharge permits to all significant industrial users [SIUs, as defined in 40 CFR 403.3(v)] contributing to the treatment system, including those from other jurisdictions. Industrial waste discharge permits shall contain as a minimum, all the requirements of 40 CFR 403.8 (f)(l)(iii). The Permittee shall coordinate the permitting process with the Department regarding any industrial facility, which may possess a state waste discharge permit issued by the Department. Once issued, an industrial waste discharge permit will take precedence over a state-issued waste discharge permit.

c.  Maintain and update, as necessary, records identifying the nature, character, and volume of pollutants contributed by industrial users to the POTW. Records shall be maintained for at least a three-year period.

d.  Perform inspections, surveillance, and monitoring activities on industrial users to determine and/or confirm compliance with applicable pretreatment standards and requirements. A thorough inspection of SIUs shall be conducted annually.

Frequency of regular local monitoring of SIU wastewaters shall normally be commensurate with the character and volume of the wastewater but shall not be less than once per year. Sample collection and analysis shall be performed in accordance with 40 CFR Part 403.12(b)(5)(ii)-(v) and 40 CFR Part 136.

e. Enforce and obtain remedies for noncompliance by any industrial users with applicable pretreatment standards and requirements. Once violations have been identified, the Permittee shall take timely and appropriate enforcement action to address the noncompliance. The Permittee's action shall follow its enforcement response procedures and any amendments, thereof.

f. Publish, at least annually in a newspaper of general circulation in the Permittee's service area, a list of all nondomestic users which, at any time in the previous 12 months, were in significant noncompliance as defined in 40 CFR 403.8(f)(2)(viii) through 40 CFR 403.8(f)(2)(viii)(H).

g. If the Permittee elects to conduct sampling of an SIU's discharge in lieu of requiring user self-monitoring, it must satisfy all requirements of 40 CFR Part 403.12.
This includes monitoring and record keeping requirements of Sections 403.12(g) and (o). For SIUs subject to categorical standards (CIUs), the Permittee may either complete baseline and initial compliance reports for the CIU (when required by 403.12(b) and (d)) or require these of the CIU. The Permittee must ensure that it provides SIUs the results of sampling in a timely manner, inform SIUs of their right to sample, their obligations to report any sampling they do, to respond to non-compliance, and to submit other notifications. These include a slug load report (403.12(f)), notice of changed discharge (403.12(j)), and hazardous waste notifications (403.12(p)). If sampling for the SIU, the Permittee must not sample less than once in every six-month period unless the Permittee's approved program includes procedures for reduction of monitoring for Middle-Tier or Non-Significant Categorical Users per 403.12(e)(2) and (3) and those procedures have been followed.

h. Develop and maintain a data management system designed to track the status of the Permittee's industrial user inventory, industrial user discharge characteristics, and compliance status.

i. Maintain adequate staff, funds, and equipment to implement its pretreatment program.

j. Establish, where necessary, legally binding agreements with contributing jurisdictions to ensure compliance with applicable pretreatment requirements by commercial or industrial users within these jurisdictions.

# Exhibit B

# FACT SHEET FOR NPDES PERMIT WA-0093317

## Spokane County Regional Water Reclamation Facility (SCRWRF)

### PURPOSE of this Fact Sheet

This fact sheet explains and documents the decisions Ecology made in drafting the proposed National Pollutant Discharge Elimination System (NPDES) Permit for the Spokane County Regional Water Reclamation Facility (SCRWRF).

This fact sheet complies with Section 173-220-060 of the Washington Administrative Code (WAC), which requires Ecology to prepare a draft permit *and accompanying fact sheet* for public evaluation before issuing an NPDES permit.

Ecology makes the draft permit and fact sheet available for public review and comment at least thirty (30) days before issuing the final permit. Copies of the fact sheet and draft permit for the Spokane County Regional Water Reclamation Facility NPDES Permit WA-0093317, are available for public review and comment from June 28, 2011 until August 29, 2011. For more details on preparing and filing comments about these documents, please see **Appendix A - Public Involvement**.

Spokane County Utilities and CH2M Hill reviewed the draft fact sheet for factual accuracy. Ecology corrected any errors or omissions regarding the facility's location, history, discharges, or receiving water.

After the public comment period closes, Ecology will summarize substantive comments and provide responses to them. Ecology will include the summary and responses to comments in this Fact Sheet as **Appendix E - Response to Comments**, and publish it when issuing the final NPDES Permit. Ecology will not revise the rest of the fact sheet, but the full document will become part of the legal history contained in the facility's permit file.

### SUMMARY

The Spokane County Regional Water Reclamation Facility (SCRWRF) is an advanced wastewater treatment plant. It will provide an initial 8 million gallons per day (MGD) of capacity with an ability to expand capacity in phases up to 24 MGD. Spokane County owns and is financing the Facility. CH2M Hill Constructors, Inc. designed and built the facility, and will operate, maintain, and repair the Facility for an initial 20-year period. CH2M Hill Constructors, Inc. will be responsible for on-site biosolids treatment. The County constructed improvements to the conveyance system, including the force mains, pump stations and the outfall for the Facility, as separate public works projects. The Facility includes a treatment process incorporating a step-feed nitrification/denitrification membrane bioreactor with the following key components: fine screening, grit removal, primary clarification, sodium hypochlorite disinfection, gravity belt thickening for primary and waste activated sludge, anaerobic digestion, aerobic digestion/solid storage, centrifuge dewatering, and chemical feed systems. Other facilities include odor control, an administration building with a laboratory, a water resource center, and a maintenance building.

*Fact Sheet for NPDES Permit WA-009331-7*
*Spokane County Regional Water Reclamation Facility*

In addition, Ecology may require revision or establishment of local limits for any pollutant that causes an exceedance of the Water Quality Standards or established effluent limits, or that causes whole effluent toxicity. The maximum effluent concentration reported in the City of Spokane's NPDES application does not exceed the reasonable potential criterion for mercury. However, Mercury in the Riverside Park Reclaimed Water Facilities effluent equaled or exceeded the chronic water quality criteria seven times from January 2002 through October 2004. It is Ecology's determination that the Permittees need to develop and implement a mercury abatement and control program. Additional Mercury Plan development guidance can be found at the following locations:

Ecology Mercury Website:  http://www.ecy.wa.gov/mercury/
For Dental Plan Guidance:  http://www.ecy.wa.gov/dentalbmps/index.html
Reduction Plan Guidance:  http://www.ecy.wa.gov/biblio/0303001.html

Ecology may modify this permit to incorporate additional requirements relating to the establishment and enforcement of local limits for pollutants of concern

**Requirements for Performing an Industrial User Survey**

This POTW has the potential to serve significant industrial or commercial users and is required to perform an Industrial User Survey. The goal of this survey is to develop a list of SIUs and PSIUs, and of equal importance, to provide sufficient information about industries which discharge to the POTW, to determine which of them require issuance of State waste discharge permits or other regulatory controls. An Industrial User Survey is an important part of the regulatory process used to prevent interference with treatment processes at the POTW and to prevent the exceedance of water quality standards. The Industrial User Survey also can be used to contribute to the maintenance of sludge quality, so that sludge can be a useful biosolids product rather than an expensive waste problem.

An Industrial User Survey is a rigorous method for identifying existing, new, and proposed significant industrial users and potential significant industrial users. A complete listing of methodologies is available in Ecology's guidance document entitled "Conducting an Industrial User Survey".

- The first section of the pretreatment requirements prohibits the POTW from accepting pollutants which causes "Pass-through" or "Interference". This general prohibition is from 40 CFR §403.5(a). **Appendix C** of this fact sheet defines these terms.

- The second section reinforces a number of specific State and Federal pretreatment prohibitions found in WAC 173-216-060 and 40 CFR §403.5(b). These reinforce that the POTW may not accept certain wastes, which:

  - Are prohibited due to dangerous waste rules.
  - Are explosive or flammable.
  - Have too high or low of a pH (too corrosive, acidic or basic).
  - May cause a blockage such as grease, sand, rocks, or viscous materials.
  - Are hot enough to cause a problem.
  - Are of sufficient strength or volume to interfere with treatment.

- Contain too much petroleum-based oils, mineral oil, or cutting fluid.
- Create noxious or toxic gases at any point.

40 CFR Part 403 contains the regulatory basis for these prohibitions, with the exception of the pH provisions which are based on WAC 173-216-060.

- The third section of pretreatment conditions reflects state prohibitions on the POTW accepting certain types of discharges unless the discharge has received prior written authorization from Ecology.

These discharges include:

- Cooling water in significant volumes.
- Stormwater and other direct inflow sources.
- Wastewaters significantly affecting system hydraulic loading, which do not require treatment.

Ecology delegated authority to Spokane County Utilities for permitting, monitoring, and enforcement over industrial users discharging to their treatment system to provide more direct and effective control of pollutants.

Ecology oversees the delegated Industrial Pretreatment Program to assure compliance with federal pretreatment regulations (40 CFR Part 403) and categorical standards and state regulations (chapter 90.48 RCW and chapter 173-216 WAC).

As sufficient data becomes available, Spokane County Utilities must, in consultation with Ecology, reevaluate its local limits in order to prevent pass-through or interference. If any pollutant causes pass-through or interference, or exceeds established sludge standards, Spokane County Utilities must establish new local limits or revise existing local limits as required by 40 CFR 403.5.

In addition, Ecology may require revision or establishment of local limits for any pollutant that causes a violation of water quality standards or established effluent limits, or that causes whole effluent toxicity.

Ecology may modify this permit to incorporate additional requirements relating to the establishment and enforcement of local limits for pollutants of concern.

## E. Solid Waste Control

To prevent water quality problems the facility is required in permit Condition S7. to store and handle all residual solids (grit, screenings, scum, sludge, and other solid waste) in accordance with the requirements of RCW 90.48.080 and state water quality standards.

The final use and disposal of sewage sludge from this facility is regulated by U.S. EPA under 40 CFR 503, and by Ecology under chapter 70.95J RCW, chapter 173-308 WAC "Biosolids Management," and chapter 173-350 WAC "Solid Waste Handling Standards." The disposal of other solid waste is under the jurisdiction of the Spokane County Health District.

Exhibit C

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| HAYDEN AREA REGIONAL SEWER BOARD, an Idaho joint powers entity, and CITY OF POST FALLS, an Idaho municipal corporation and political subdivision of the State of Idaho,<br><br>                    Plaintiffs,<br><br><br>          v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, an agency of the United States; LISA P. JACKSON, in her capacity as Administrator of the United States Environmental Protection Agency; and DENNIS MCLERRAN, in his capacity as Regional Administrator of Region 10 of the United States Environmental Protection Agency,<br><br>                    Defendants. | Case No. CV 10-362-N-REB<br><br>**ORDER RE MOTIONS TO INTERVENE**<br>(Docket Nos. 5, 14, 17, 19) |

Currently pending before the Court are Motions to Intervene filed on behalf of the following potential parties: (1) the City of Coeur D'Alene (Docket No. 5); (2) Kaiser Aluminum Fabricated Products, LLC (Docket No. 14); (3) Avista Corporation (Docket No. 17); and (4) Spokane County (Docket No. 19). A fifth motion, filed on behalf of Spokane RiverKeeper (Docket No. 26), is not ripe for decision.

ORDER- 1

## BACKGROUND

The Complaint, filed on July 16, 2010, has not been served, but Defendants have appeared in the action through counsel. Neither Plaintiffs nor Defendants object to the motions to intervene filed on behalf of the City of Coeur D'Alene (Docket No. 5); Kaiser Aluminum Fabricated Products, LLC (Docket No. 14); Avista Corporation (Docket No. 17); or Spokane County (Docket No. 19). *See Responses* (Docket Nos. 24, 25, 28, 29).

## DISCUSSION

### A. Magistrate Jurisdiction

The threshold issue before the Court is whether the undersigned magistrate judge has the jurisdiction to issue an order on the pending motions to intervene. Resolution of this jurisdiction issue hinges on whether motions to intervene are considered dispositive.

This case was assigned conditionally to the undersigned magistrate judge in the random civil case assignment process. *See* General Order No. 237; Dist. Idaho Loc. Civ. R. 73.1. Accordingly, the undersigned generally has jurisdiction to perform the duties prescribed by 28 U.S.C. § 636(a), (b), (c), and (g). *See* Dist. Idaho Loc. Civ. R. 72.1(a)(1).

Nonetheless, as of the date of this Order, none of the parties has consented to the jurisdiction of the undersigned magistrate judge.[1] Accordingly, the magistrate judge's jurisdiction is limited to only the non-dispositive matters before the Court. *See* 28 U.S.C. § 636(b)(1)(A).

---

[1] A Notice of Assignment to Magistrate Judge and Requirement for Consent was issued on September 8, 2010. (Docket No. 12).

ORDER- 2

Under 28 U.S.C. § 636(b)(1)(A), a United States Magistrate Judge may determine

any pretrial matter before the Court except for:

> a motion for injunctive relief, for judgment on the pleadings,
> for summary judgment, to dismiss or quash an indictment or
> information made by the defendant, to suppress evidence in a
> criminal case, to dismiss or to permit maintenance of a class
> action, to dismiss for failure to state a claim upon which relief
> can be granted, and to involuntarily dismiss an action.

*Id.* Motions to intervene are not included in the list of exceptions to magistrate

jurisdiction. However, the inquiry does not end here, because the list is not intended to be

exhaustive. *See Gomez v. United States*, 490 U.S. 858 (1989). Courts "do not simply

look to the list of excepted pretrial matters in order to determine the magistrate judge's

authority. Instead, [they] ... look to the effect of the motion, in order to determine

whether it is properly characterized as 'dispositive or non-dispositive of a claim or

defense of a party.'" *United States v. Rivera-Guerrero,* 377 F.3d 1064, 1068 (9th Cir.

2004) (quoting *Maisonville v. F2 America, Inc.*, 902 F.2d 746, 747 (9th Cir. 1990)).

The Ninth Circuit treats motions to intervene as non-dispositive orders. *See*

*Yorkshire v. United States Internal Revenue Serv.*, 26 F.3d 942, 944, n. 3 (9th Cir. 1994)

(recognizing magistrate judge's order on intervention nondispositive and subject to Fed.

R. Civ. P. 72(a)), *receded from on other grounds*, *Simpson v. Lear Astronics Corp.*, 77

F.3d 1170 (9th Cir. 1996). Other courts appear to agree. *See Oregon Natural Desert*

*Ass'n v. Bureau of Land Mgt.*, 2010 WL 774037 (D. Or. March 2, 2010); *see also SEC v.*

*Behrens*, 2009 WL 2868221 (D.Neb. 2009); *SEC v. Novis Technologies, LLC*, 2008 WL

115114 (D.Utah 2008). However, this position does not appear to be a universal one. *See*

ORDER- 3

*United States v. Benger*, 2010 WL 724416 (N.D. Ill. Feb. 23, 2010) (holding "a motion to intervene would seem to fall within the constraints of § 636(b)(1)(A), and thus only a recommended disposition is permitted); *see also Simon v. Mann*, 2009 WL 435202 (D.Nev. 2009); *Patridge v. J.K. Harris Co.*, 2006 WL 1582464 (C.D. Ill. 2006).

Consistent with the Ninth Circuit precedent, the undersigned treats the motions to intervene as non-dispositive motions.  In so holding, the undersigned is persuaded that a motion to intervene is akin to a motion to amend and motions to amend are treated as non-dispositive motions within the jurisdiction of a magistrate to decide pursuant to Section 636(b)(1)(A) of the Federal Magistrates Act.  *See U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099 (9th Cir. 1985), *superseded by statute on other grounds, Simpson v. Lear Astronics Corp*., 77 F.3d 1170 (9th Cir. 1996); *Andersen v. Woodcreek Venture Ltd.*, 351 F.3d 911, 917 (9th Cir. 2003).  It is, in essence, a decision as to whether or not an additional party is allowed to enter the fray, and not a decision as to whether that party's position--once a part of the fray-- will prevail or not  prevail.

Moreover, in the instant case, the inclusion of the applicant-intervenors is not disputed and the motions to intervene reflect that intervention should be allowed as a matter of right.  Accordingly, the Court's determination will not foreclose any claims.

In light of the foregoing, the undersigned will enter an order resolving the motions to intervene.  For the reasons set forth below, the motions will be granted.

## B.    Intervention Standard of Law

The Federal Rules of Civil Procedure provide two avenues for intervention: as of right and permissive.  *See* Fed. R. Civ. P. 24(a) and (b).  An applicant seeking to

ORDER- 4

intervene as of right must, on timely motion, show: (1) it has a significant protectable interest in the subject matter of the action, (2) disposition of the action "may as a practical matter impair or impede the applicant's ability to protect its interest," and (3) "the existing parties may not adequately represent the applicant's interests." *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998).

Alternatively, even if an applicant fails to show it is entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a), permissive intervention may be appropriate provided that the applicant: "(1) shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Id.* at 411. In determining whether to allow a permissive intervention, the Court may consider whether intervention will unduly delay or prejudice existing parties and whether the interests of judicial economy would be served by intervention. *Venegas v. Skaggs*, 867 F.2d 527, 530 (9th Cir. 1989), *aff'd,* 495 U.S. 82 (1990).

The applicant-intervenors argue for intervention as of right and, alternatively, permissive intervention. Because they meet the standards necessary to establish intervention as of right, the Court will not address the alternative argument presented.

## C.     Background: Allegations in Complaint

Plaintiffs, Hayden Area Regional Sewer Board and the City of Post Falls, appeal from a decision of the United States Environmental Protection Agency ("EPA") approving the Spokane River and Lake Spokane Dissolved Oxygen Total Maximum Daily Load Water Quality Improvement Report ("Spokane River TMDL") issued by the

ORDER- 5

Washington Department of Ecology.  *See Complaint for Declaratory and Injunctive Relief* (Docket No. 1).  The Spokane River TMDL, *inter alia*,  sets an over-all pollution limit for dissolved oxygen in the Spokane River and Lake Spokane.  *Id.* at ¶¶ 2, 113.  This is the maximum amount of dissolved oxygen that can be discharged or "loaded" into the waters at issue.

A TMDL has two components: a wasteload allocation ("WLA") and Load allocation ("LA").  *Id.* at ¶ 115.  The LA is the total load allocated to existing and future nonpoint sources of the pollutant.  *Id.* at ¶ 117.  The WLA is the portion of the TMDL allocated to existing and future point sources.  *Id.* at ¶ 116.  The WLA is allocated to individual point source dischargers through National Pollution Discharge Elimination System ("NPDES") permits.  *Id.* at ¶ 118.  The NPDES permits require, *inter alia*, that the point source's discharge may not exceed the portion of the TMDL that has been allocated or assigned to the individual permit holder.  *Id.* at ¶ 120.

To oversimplify through analogy, the Spokane River TMDL determines the size of the pie consisting of the total amount of dissolved oxygen permitted in the Spokane River and Lake Spokane.  The Spokane River TMDL also has a direct effect on who gets what size slice of that pie, through the NPDES permitting process, because each NPDES permit must be consistent with the total waste load allocations provided for in the TMDL.

Plaintiffs are two of the identified point-source dischargers to the Spokane River.  They contend that the allocation of pollutant loads was unfair and "transferred a disproportionate burden of cleaning Washington's water bodies onto the citizens of Idaho."  *Id.* at ¶ 8.  Plaintiffs allege that the Spokane River TMDL assigns Idaho entities

ORDER- 6

smaller allocations and thus, stricter pollution requirements, while providing Washington entities with larger allocations and thus more liberal pollution requirements.  For relief, Plaintiffs seek, *inter alia*, a declaration that the Spokane River TMDL is void.

**D.     Analysis**

The four pending and ripe motions to intervene were filed on behalf of the City of Coeur d'Alene ("Coeur d'Alene"); Kaiser Aluminum Fabricated Products, LLC ("Kaiser"); Avista Corporation ("Avista"); and Spokane County.  All four applicant-intervenors share two primary characteristics in common, which support their applications for intervention as of right.  First, neither Defendants nor Plaintiffs object to the inclusion of these intervenor-applicants as parties to this action.  Thus, the facts alleged in support of the intervention motions are undisputed for the purpose of determining whether intervention is appropriate.

Second, all motions to intervene are timely.  To determine the timeliness of a motion to intervene, the Court must consider: (1) the stage of the proceedings in which the applicant is seeking to intervene; (2) prejudice to the other parties to the suit; and (3) the length and reason, if any, for the delay in filing the motion.  *Cal. Dep't of Toxic Substances Control v. Commercial Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002).  Here, the Complaint has not been served and a case management order has not been issued.  Accordingly, timeliness is not an issue.

For these two reasons alone, the Court should grant the motions to intervene.  This result is further supported by the allegations in each applicant's motion to intervene.

ORDER- 7

1.     Intervention of NPDES Permittees: City of Coeur d'Alene, Kaiser Aluminum, and Spokane County

Along with the Plaintiffs, the proposed intervenors Coeur d'Alene, Kaiser Aluminum, and Spokane County are all identified point source dischargers with NPDES permits for the Spokane River. Coeur d'Alene seeks to intervene as a plaintiff, *see Memorandum in Support of Motion to Intervene* (Docket No. 5-1), and Kaiser Aluminum and Spokane County seek to intervene as defendants, *see Memorandum in Support of Motion to Intervene As Defendant by Applicant Defendant-Intervenor Kaiser Aluminum Fabricated Products, LLC.* (Docket No. 14-1); *Memorandum on Support of Spokane County's Motion to Intervene as Defendant* (Docket No. 20).

As NPDES permittees and identified point source dischargers in the Spokane River TMDL, these entities have a significant, protectable interest in this lawsuit. "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry" where an applicant must show a "significantly protectable interest" but "[n]o specific legal or equitable interest need be established." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). An applicant demonstrates a significant protectable interest when (1) the asserted interest is protectable under some law, and (2) there is a relationship between the legally protectable interest and the claims at issue. *N.W. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996). Generally, Clean Water Act permittees have a protectable interest in lawsuits that will affect their permits. *See Sierra Club v. EPA*, 995 F.2d 1478, 1485 (9th Cir. 1993).

ORDER- 8

In the instant case, Coeur d'Alene, Kaiser Aluminum, and Spokane County's interests in their NPDES permits are sufficient to demonstrate a legally protectable interest related to Plaintiffs' lawsuit challenging the Spokane River TMDL. A decision altering or invalidating the TMDL could significantly impact the allocations allowed to each permittee through the NPDES permits.

Similarly, the disposition of the instant lawsuit "may as a practical matter impair or impede the applicant's ability to protect its interest" and "the existing parties may not adequately represent the applicant's interests." *See Donnelly v. Glickman*, 159 F.3d at 409. The NPDES permits depend upon and are ultimately limited by the TMDL, and Plaintiffs challenge the fairness of the allocation of the total pollutant load to each point source discharger. Accordingly, each permittee has an interest in ensuring its own wasteload allocation is sufficient and cannot expect that the other parties will adequately represent its interests. Thus, the NPDES permittees, the City of Coeur d'Alene, Kaiser Aluminum, and Spokane County, have met the requirements necessary to intervene as of right under Federal Rule of Civil Procedure 24(a).

2.   Avista

Avista seeks to intervene as a Defendant. *See Avista Corp.'s Memorandum of Points and Authorities in Support of Motion to Intervene* (Docket No. 17-1). Avista avers that it does not discharge pollution; rather, it owns and operates Long Lake Dam. *Id.* at pp. 3-4. Nonetheless, the operation of its Long Lake Dam is intertwined with the regulation of dissolved oxygen levels in the affected waterways, and Avista

ORDER- 9

acknowledges that it participated in the administrative proceedings resulting in the Spokane River TMDL "so that its share of responsibility for DO [dissolved oxygen] levels in Lake Spokane caused by Long Lake Dam could be determined."  *Id.* at p. 4.

Avista contends that Plaintiffs seek to assign to it responsibility for the increased DO levels.  For example, the Complaint alleges that "[t]he fact that DO conditions in Lake Spokane reservoir are below 9.5 mg/L is due, in all material respects, to the presence and method of operation of Long Lake Dam," and that "[i]f Long Lake Dam did not exist, DO levels in the area occupied by Lake Spokane reservoir would meet the 9.5 mg/L DO Standard at all times."  Complaint ¶¶ 206, 208 (Docket No. 1).  Plaintiffs also allege that the modeling upon which the TMDL is based "overestimates the impact of Idaho point source dischargers on dissolved oxygen reductions in Lake Spokane reservoir by three to four times."  *Id.* at ¶ 283.

Avista states that its responsibilities determined under the Spokane River TMDL will be implemented through a State of Washington Department of Ecology certification under Section 401 of the CWA.  *See Avista Corp.'s Memorandum of Points and Authorities in Support of Motion to Intervene*, p. 4 (Docket No. 17-1).  Avista further states that "[o]n July 9, 2010, FERC[2] amended Avista's Spokane River Project license to include the amended certification."  *Id.*

Because Avista's responsibilities, outlined in the Spokane River TMDL, have been implemented through a FERC license and Plaintiffs seek to void the Spokane River

---

[2]  Federal Energy Regulatory Commission.

TMDL and shift greater burdens and responsibilities onto Avista, Avista has a significant

protectable interest in the subject matter of the action.  Accordingly, disposition of the

instant action without Avista's participation as a party could "as a practical matter impair

or impede the applicant's ability to protect its interest."  "  *See Donnelly v. Glickman*, 159

F.3d at 409.  Moreover, there is no indication from the record that any of the existing

parties could adequately represent Avista's interests.  *Id.*  Thus, Avista has met the

requirements necessary to intervene as of right under Federal Rule of Civil Procedure

24(a).

## ORDER

Consistent with the foregoing, IT IS HEREBY ORDERED:

(1)     City of Coeur D'Alene's Motion to Intervene (Docket No. 5) is

GRANTED;

(2)     Kaiser Aluminum Fabricated Products, LLC's Motion to Intervene (Docket

No. 14) is GRANTED;

(3)     Avista Corporation's Motion to Intervene (Docket No. 17) is GRANTED;

and

(4)     Spokane County's Motion to Intervene (Docket No. 19) is GRANTED;

DATED:  **November 12, 2010**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge