1  Richard A. Smith
   SMITH & LOWNEY, PLLC
2  2317 East John Street
   Seattle, Washington 98112
3  (206) 860-2883

4
   Attorneys for Plaintiffs
5

6

7

8              UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF WASHINGTON
9                     AT SEATTLE

10
   SIERRA CLUB; and CENTER FOR        )    No. 11-1759RSL
11 ENVIRONMENTAL LAW AND              )
   POLICY,                            )
12                                    )
                                      )    FIRST AMENDED AND
13              Plaintiffs,           )    SUPPLEMENTAL COMPLAINT
                                      )
14      and                           )
                                      )
15 THE SPOKANE TRIBE OF INDIANS,      )
                                      )
16                                    )
17          Plaintiff-Intervenor,     )
                                      )
18      v.                            )
                                      )
19 DENNIS McLERRAN; BOB               )
20 PERCIASEPE; and UNITED STATES      )
   ENVIRONMENTAL PROTECTION           )
21 AGENCY,                            )
                                      )
22              Defendants,           )
                                      )
23      and                           )
                                      )
24                                    )
   SPOKANE COUNTY; KAISER             )
25 ALUMINUM OF WASHINGTON LLC;        )
   and STATE OF WASHINGTON            )
26 DEPARTMENT OF ECOLOGY,             )
                                      )
27          Defendant-Intervenors.    )
                                      )
28 _____  )

29 FIRST AMENDED AND SUPPLEMENTAL
   COMPLAINT - 1                              SMITH & LOWNEY, P.L.L.C.
   No. 11-1759RSL                             2317 East John Street
                                              Seattle, Washington 98112
                                              (206) 860-2883

# I.    INTRODUCTION

1.      Plaintiffs Sierra Club and Center for Environmental Law and Policy seek an order requiring defendants Environmental Protection Agency and its administrators to approve or disapprove the cleanup plan, or Total Maximum Daily Load, for PCBs in the Spokane River developed by the Washington Department of Ecology, and, if they disapprove, to promulgate a Total Maximum Daily Load, as required by the Clean Water Act ("CWA"), 33 U.S.C. 1251, et seq.  Plaintiffs assert claims under the Clean Water Act's citizen suit provision, 33 U.S.C. § 1365(a)(2), and the Administrative Procedure Act, 5 U.S.C. §§ 701 – 706.  Plaintiffs seek injunctive and declaratory relief, and the award of litigation expenses, including attorney and expert witness fees.

# II.    JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction and the relief sought is authorized under 33 U.S.C. § 1365(a), 5 U.S.C. §§ 701 – 706, 28 U.S.C. § 1331, and 28 U.S.C. § 1346(a)(2).

3.      Under 33 U.S.C. § 1365(b)(2), Plaintiffs notified Defendants of Defendants' failure to perform their Clean Water Act nondiscretionary duties and of Plaintiffs' intent to sue under the CWA by letter dated and postmarked July 18, 2011 ("Notice Letter").  A copy of the Notice Letter is attached to this complaint as Exhibit 1, and incorporated herein by this reference.  Plaintiffs also mailed a copy of the Notice Letter to the United States Attorney General.

4.      More than sixty days have passed since the notice was served and failure to perform nondiscretionary duties complained of in the Notice Letter are continuing.

5.      The original complaint in this matter was filed on October 21, 2011, and properly served on each Defendant.

FIRST AMENDED AND SUPPLEMENTAL
COMPLAINT - 2
No. 11-1759RSL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

6.      The office of defendants United States Environmental Protection Agency Region 10 and Dennis McLerran, its Administrator, is located in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391.

### III.     PARTIES

7.      Plaintiff Sierra Club is suing on behalf of itself and its member(s).  Sierra Club is a national nonprofit organization of approximately 1.3 million members and supporters dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.  Sierra Club's concerns encompass water quality in the Spokane River.  The Club's particular interest in this case and the issues which the case concerns stem from the Washington Department of Ecology's failure to prepare a water quality clean-up plan to address toxic chemicals, PCBs, in the Spokane River and the Little Spokane River, thereby jeopardizing public health and the ability of Sierra Club members to use and enjoy the these waters.   The Washington State Chapter of Sierra Club has approximately 23,000 members.

8.      Plaintiff Center for Environmental Law and Policy is suing on behalf of itself and its member(s).  Center for Environmental Law and Policy is a non-profit corporation organized under the laws of the State of Washington.  It was founded in 1993 to serve as a voice for public interest water resource management and preservation in Washington State.  It has been actively engaged in advocacy and education to protect and restore water quality in the Columbia River Basin, including the Spokane River system.  It is a membership organization with members across Washington, including members who use and enjoy the Spokane River.

FIRST AMENDED AND SUPPLEMENTAL
COMPLAINT - 3
No. 11-1759RSL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

9.      Plaintiffs have representational standing to bring this action.  The recreational, economic, aesthetic and/or health interests of Plaintiffs and their member(s) have been, are being, and will be adversely affected by Defendants' failures to perform their nondiscretionary duties under the CWA, and by their failure to act.  The relief sought in this lawsuit can redress the injuries to these interests.

10.     Defendant Dennis McLerran is the Administrator of Region 10 of the United States Environmental Protection Agency and is sued in his official capacity.  Defendant McLerran is responsible for the failures of the United States Environmental Protection Agency to perform nondiscretionary duties under the CWA and the failure to act alleged in this lawsuit.

11.     Defendant Bob Perciasepe is the Acting Administrator of the United States Environmental Protection Agency and is sued in his official capacity.  Defendant Perciasepe is responsible for the failures of the United States Environmental Protection Agency to perform nondiscretionary duties under the CWA and the failure to act alleged in this lawsuit.

12.     Defendant United States Environmental Protection Agency ("EPA") is an agency of the United States government charged with implementing the CWA.

## IV.    FACTS

13.     With the enactment of the CWA in 1972, Congress set high goals for water quality, including restoration of the chemical integrity of the nations' waters and "water quality which provides for the protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water," while simultaneously shifting the regulatory focus from the health of the receiving waters to the control of pollutant discharges.  33 U.S.C. § 1251(a)(2).  Accordingly, the CWA prohibits discharges of pollutants unless authorized by CWA permit.  33 U.S.C. §1311(a).

FIRST AMENDED AND SUPPLEMENTAL
COMPLAINT - 4
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

14.     While the CWA refocused water pollution control on discharges, it does not give up on the broader goal of attaining acceptable water quality.  Section 303, entitled "Water Quality Standards and Implementation Plans," is the primary CWA provision addressing this goal.  33 U.S.C. § 1313.  Under it, states must define water quality standards that establish, and then protect, the desired conditions of each state's waterbodies.  33 U.S.C. § 1313(c)(2)(A).  As the Supreme Court explained, "[w]ater quality standards are retained as a supplementary basis for effluent limitations, however, so that numerous point sources, despite individual compliance with effluent limitations, may be further regulated to prevent water quality from falling below acceptable levels."  *EPA v. California ex. rel. State Water Res. Control Bd.*, 426 U.S. 200, 205 n.12 (1976).  Water quality standards comprise designated uses, numeric and narrative water quality criteria, and an antidegradation policy.  33 U.S.C. § 1313(c)(2)(A); 40 C.F.R. §§ 131.3(i) and 131.6.  The three components are independent and separately enforceable requirements of federal law.

15.     When a waterbody fails to meet the water quality standards, it is deemed "impaired" and placed on the state's "303(d) list."  33 U.S.C. § 1313(d).  For each waterbody on its 303(d) list, the state must develop a cleanup plan, called by the CWA a Total Maximum Daily Load, or "TMDL," to restore compliance with water quality standards.  33 U.S.C. § 1313(d)(1)(C); 40 C.F.R. § 130.7(c)(1).  A TMDL defines the specified maximum amount of a pollutant that can be discharged or "loaded" in the waters at issue from all combined sources while allowing the waters to return to and maintain compliance with standards.  The TMDL process includes identification of existing sources of pollutants contributing to water quality degradation, and the establishment of "wasteload allocations" for point sources and "load allocations" for nonpoint sources.  40 C.F.R. § 130.2(g), (h).

FIRST AMENDED AND SUPPLEMENTAL
COMPLAINT - 5
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

16.    Adherence to a TMDL results in ratcheting down of pollution sources according to their wasteload allocations and the restoration of waterbody to water quality standards. 40 C.F.R. § 130.7(c)(1). With regard to point sources of pollution, the primary means for implementing a TMDL is through the establishment of National Pollutant Discharge Elimination System ("NPDES") permit effluent limitations based on wasteload allocations and issued under 33 U.S.C. § 1342.

17.    EPA must approve or disapprove a state's submission of a TMDL within 30 days of submission, and, upon disapproval, EPA must promulgate its own TMDL within 30 days. 33 U.S.C. § 1313(d)(2). EPA's duties to approve or disapprove a TMDL submission, and to promulgate its own TMDL upon disapproval, are nondiscretionary duties.

18.    Defendant EPA and Defendant-Intervenor State of Washington Department of Ecology ("Ecology") entered a memorandum of agreement ("MOA") regarding implementation of 33 U.S.C. 1313(d), dated October 29, 1997. Among other things, the MOA requires Ecology to prioritize, schedule, scope, develop and submit TMDLs for waters on Washington State's 1996 303(d) list in accordance with a specified schedule. Under that schedule and the "TMDL priority list" developed by Ecology in accordance with the MOA, a TMDL for Spokane River waters included on Washington State's 1996 303(d) list for PCB impairment was to have been finalized and submitted to EPA by 2011.

19.    "PCBs" are polychlorinated biphenyls, which are non naturally-occurring chemical compounds. PCBs have been produced for industrial and commercial purposes since 1929. There are 209 individual forms of PCBs, known as congeners. The naming system for congeners is based on the number and location of chlorine atoms on the biphenyl rings that form the base for the PCB molecular structure. PCBs are highly toxic to humans and animals, in

FIRST AMENDED AND SUPPLEMENTAL
COMPLAINT - 6
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    which low levels of exposure can result in reproductive, carcinogenic and non-carcinogenic

2    harm.  PCBs resist breakdown in the environment and bioaccumulate in the fat and other tissues

3    of animals and humans that ingest, inhale, or absorb them.

4        20.    Washington State's human health water quality criteria for PCBs is 170 pg/l in the

5    water column and 5.3 ng/g in fish tissue.  The Spokane Tribe's human health PCB water quality

6    criterion of 3.37 pg/l in the water column and 0.1 ng/g in fish tissue applies on the waters of the

7    Reservation of the Spokane Tribe of Indians.  The difference between the two standards is

8    primarily due to assumptions about human consumption rates of fish.  Because Spokane Tribal

9    members consume more fish than average Washington residents, the Tribe has adopted a more

10    stringent numeric standard for PCB contamination.

11        21.    The Spokane River flows from Idaho west into Washington State, through the

12    City of Spokane, past dams, including that which forms Lake Spokane (a.k.a. Long Lake) in the

13    river, through the reservation of the Spokane Tribe of Indians, to its confluence with the

14    Columbia River.  The Little Spokane River flows into the Spokane River west of the City of

15    Spokane.

16        22.    Concentrations of PCBs found in the tissue of fish from the Spokane River are the

17    highest overall found in the state.

18        23.    The Washington State Department of Health has found that eating fish from the

19    Spokane River constitutes a public health hazard because of fish tissue PCB concentrations.  Fish

20    consumption advisories issued by the Department of Health in 2003 remain in effect and advise

21    people to not consume any fish caught in the Spokane River between the Idaho border and

22    Upriver Dam, and to not consume Largescale Sucker fish caught between Upriver Dam and

23    Ninemile Dam, and to limit consumption to one meal per month of all other species caught

FIRST AMENDED AND SUPPLEMENTAL
COMPLAINT - 7
No. 11-1759RSL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

between Upriver Dam and Ninemile Dam.  Also specified in the advisory is to not consume fish heads or entrails of fish caught anywhere in the river, and limitations of two meals per month or two meals per week of particular species caught in specified river segments.

24.    The State of Washington and the Spokane Tribe of Indians both specify fish harvest as a designated use in their water quality standards for the Spokane River.  Because of PCB contamination levels, this use is not supported and these water quality standards are not met.

25.    Fifteen waterbody segments of the Spokane River and Lake Spokane and one segment of the Little Spokane River are on Washington's final and approved 2008 303(d) list for not meeting Washington State's human health water quality criterion for PCBs in fish tissue:

| Waterbody | Reach | Waterbody Number | Watercourse Number | Listing ID |
|---|---|---|---|---|
| Spokane River | Idaho Border to Latah Creek | WA-57-1010 | QZ45UE | 14397 14398 8201 8207 8202 14402 |
| Spokane River | Latah Creek to Ninemile Dam | QA-54-1010 | QZ45UE | 14400 14385 9033 |
| Little Spokane River | Near mouth | QA-55-1010 | JZ70CP | 9051 |
| Lake Spokane (Long Lake) | Ninemile Dam to Lake Spokane Dam | WA-54-9040 | QZ45UE | 9021 36441 9015 36440 |
| Spokane River | Lake Spokane Dam to Mouth | WA-54-1020 | QZ45UE | 9027 |

FIRST AMENDED AND SUPPLEMENTAL
COMPLAINT - 8
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

26.    Listing IDs 8201, 8202, 8207, 9015, 9021, 9027, 9033 and 9051 have been included on the Washington State 303(d) lists since 1996.  Listing IDs 14385, 14397, 14398, 14400, 14402, 36440, and 36441 have been included since 2004.

27.    In 2006, Ecology submitted to EPA and for public comment a draft PCB TMDL for the Spokane River.  The 2006 draft TMDL found that PCB concentrations from NPDES – permitted discharges would have to be reduced by 99% or more to allow the river to attain fish tissue PCB water quality criteria.  These NPDES permits authorize wastewater and/or stormwater discharges to the Spokane River by the City of Spokane, Spokane County, the City of Liberty Lake, Kaiser Aluminum, and the Inland Empire Paper Co.  In addition, three wastewater treatment plants in Idaho also discharge via NPDES permit, including the City of Coeur d'Alene, City of Post Falls, and Hayden Area Regional Sewer Board.

28.    Most or all of the NPDES permits for these dischargers expired by the early or mid-2000's.  Ecology postponed reissuance of the Washington permits, partially in anticipation of the finalization of the Spokane River PCB TMDL so that the permits could incorporate effluent limitations consistent with the final TMDL.  The Idaho permits, which are issued by EPA, were also administratively extended.

29.    Upon review of the draft 2006 TMDL, Ecology concluded that additional information about PCB concentrations in fish tissue and in stormwater discharges should be collected before the TMDL was finalized.  Ecology then performed additional monitoring and collected this information.

30.    Ecology feared opposition and legal challenges to the finalization and approval of the Spokane River PCB TMDL by the NPDES-permitted dischargers because of the PCB discharge reduction needs it identified, and the costs anticipated to be necessary to attain them.

FIRST AMENDED AND SUPPLEMENTAL
COMPLAINT - 9
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1

2          31.     In approximately 2010, Ecology decided to change the title of the revised draft

3   PCB TMDL to "Spokane River PCB Source Assessment."  Around this time, it also decided

4   (with consultation with EPA) that it would promote a stakeholder-driven plan, termed a "straight

5   to implementation" plan, to address Spokane River PCB contamination rather than adopt a

6   TMDL.

7          32.     In April and May 2011, Ecology formally published first the "Spokane River PCB

8   Source Assessment 2003 – 2007," and then the "Spokane River Toxics Reduction Strategy."

9   Considering their statements and the substance of their content, the publication of these

10  documents constitutes the submission of a proposed TMDL to EPA.

11         33.     As discussed by the Spokane River Toxics Reduction Strategy, "[a] draft Spokane

12  River PCB TMDL was issued for public comment in June 2006 but was not completed because

13  of the need for more data, including more accurate stormwater data, updated fish tissue sampling

14  results, and the addition of new Spokane Tribe water quality standards for PCBs based on

15  updated fish consumption rates.  The draft TMDL was revised with this updated information in

16  2009 and issued as the Spokane River Source Assessment Report in 2011."  As the Strategy

17  states, "Ecology is not currently planning to develop a PCB TMDL with wasteload allocations,

18  but this is still a potential tool for the future;" and "[i]n part because it would establish an

19  impossible near-term target, and based on its experience with the Spokane River Dissolved

20  Oxygen TMDL, which took 12 years to complete, Ecology is opting to proceed directly to

21  implementing measures to reduce all toxics to the Spokane River.  Those measures are described

22  in this strategy.  Such a *straight-to-implementation* plan is a recent strategy being adopted by

23  EPA and Ecology to address the many bodies of water that are on the list of polluted waters

FIRST AMENDED AND SUPPLEMENTAL
COMPLAINT - 10
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    [called the 303(d) list] through tools other than TMDLs.  Ecology plans to develop a straight-to-

2    implementation plan for Spokane River toxics in 2012."  (italics original).

3        34.    Following the publication of the Spokane River PCB Source Assessment 2003 –

4    2007 and the Spokane River Toxics Reduction Strategy, in 2011, Ecology reissued NPDES

5    permits authorizing discharges containing PCBs to the Spokane River without effluent

6    limitations adequate to ensure that the discharges do not contribute to violations of PCB water

7    quality criteria, in large part because the TMDL was not formally adopted.  Ecology also issued a

8    first-time NPDES permit to the new Spokane County Regional Wastewater Reclamation Facility.

9        35.    On April 12, 2013, EPA issued a letter to Plaintiffs stating that it does not believe

10   that Ecology has submitted a PCB TMDL for the Spokane River or that its 33 U.S.C. §

11   1313(d)(2) non-discretionary TMDL review duties have been triggered.

## V.    CAUSES OF ACTION

### First Cause of Action – Clean Water Act Citizen Suit

36.    The preceding paragraphs and the allegations in the Notice Letter are incorporated

herein.

37.    By failing to approve or disapprove Ecology's constructively submitted TMDL

for PCBs in the Spokane River segments identified above, and, upon disapproval, to establish

their own TMDL, Defendants have failed to perform their nondiscretionary duties under 33

U.S.C. § 1313(d)(2).

38.    Defendants are liable for this failure pursuant to 33 U.S.C. § 1365(a).

39.    Without the imposition of appropriate declaratory and injunctive relief,

Defendants are likely to continue to fail to perform their nondiscretionary duties to the further

injury of the Plaintiffs, their member(s) and others.

FIRST AMENDED AND SUPPLEMENTAL
COMPLAINT - 11
No. 11-1759RSL

**Second Cause of Action – APA**

40.     The preceding paragraphs and the allegations in the Notice Letter are incorporated herein.

41.     Defendants' determination that Ecology has not submitted a Spokane River PCB TMDL is arbitrary, capricious, an abuse of discretion, and not in accordance with law, and their refusal to approve or disapprove the TMDL, and, if disapprove, to establish a TMDL as required by 33 U.S.C. § 1313(d)(2) constitutes agency action unlawfully withheld or unreasonably delayed.

42.     Defendants' actions and/or failure to act are subject to judicial review, and Plaintiffs are entitled to the relief sought, under the APA, 5 U.S.C. §§ 701 – 706.

## VI.     RELIEF REQUESTED

Wherefore, Plaintiffs respectfully request that this Court grant the following relief:

A.     Issue a declaratory judgment that Defendants have failed to perform their nondiscretionary duties under 33 U.S.C. § 1313(d)(2) with respect to the Spokane River PCB TMDL constructively submitted by Ecology, and that they have acted unlawfully and/or unlawfully withheld or unreasonably delayed agency action;

B.     Enjoin Defendants to perform their nondiscretionary duties on an expeditious schedule;

C.     Award Plaintiff their litigation expenses, including reasonable attorneys' and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and 28 U.S.C. § 2412; and

D.     Award such other relief as this Court deems appropriate.

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1

RESPECTFULLY SUBMITTED this 22nd day of April, 2013.

2

SMITH & LOWNEY, PLLC

3

4

By: s/Richard A. Smith
Richard A. Smith, WSBA #21788

5

Attorneys for Plaintiff

6

2317 E. John St.,
Seattle, WA 98112

7

Tel: (206) 860-2124

8

Fax: (206) 860-4187
E-mail: rasmithwa@igc.org

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

FIRST AMENDED AND SUPPLEMENTAL
COMPLAINT - 13
No. 11-1759RSL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

EXHIBIT 1

### SMITH & LOWNEY, P.L.L.C.

2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883, FAX (206) 860-4187

July 18, 2011

**Via Certified Mail - Return Receipt Requested**
Dennis McLerran, Administrator
Environmental Protection Agency Region 10
1200 Sixth Ave., Suite 900
Seattle, WA 98101

**Via Certified Mail - Return Receipt Requested**
Lisa Jackson, Administrator
Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

Re:    **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT
CONCERNING SPOKANE RIVER PCB TMDL**

Dear Administrators McLerran and Jackson:

We represent Sierra Club, 85 Second Street, 2nd Floor, San Francisco, CA 94105, (415) 977-5500, and Center for Environmental Law and Policy, 25 West Main, Spokane, WA 99201, (509) 209-2899. Any response or correspondence related to this matter should be directed to us at the letterhead address. This letter is to provide you with sixty days notice of Sierra Club and Center for Environmental Law and Policy's intent to file a citizen suit against you and EPA (hereinafter, collectively "EPA") under Section 505(a)(2) of the Clean Water Act ("CWA"), 33 USC § 1365(a)(2), for the violations described herein concerning EPA's failure to perform its nondiscretionary duty under CWA Sec. 303(d)(2) with regard to the total maximum daily load ("TMDL") for PCBs in the Spokane River.

Clean Water Act and TMDLs

Congress passed the CWA in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve that objective, Congress declared as a "national goal" that "the discharge of pollutants into the navigable waters be eliminated by 1985." Id.

EPA's regulatory program for water protection focuses on two potential sources of pollution: point sources and nonpoint sources. Point source pollution was addressed in the 1972 amendments to the CWA, where Congress prohibited the discharge of any pollutant

from any point source into certain waters unless that discharge complies with the CWA's specific requirements. 33 U.S.C. §§ 1311(a) and 1362(12). Under this approach, compliance focuses on technology-based controls to limit the discharge of pollutants through the National Pollutant Discharge Elimination System ("NPDES") permit process.

When these requirements are found insufficient to clean up certain waterbodies, the CWA requires use of a water quality-based approach. States are required to identify such waters and designate them as "water quality limited." The states are then to establish a priority ranking for these waters, and in accordance with that ranking, to establish more stringent pollution limited called "total maximum daily loads," or "TMDLs." 33 U.S.C. §§ 1313(d)(1)(A) and (C). TMDLs are the greatest amount of a pollutant the water body can receive daily without violating a state's water quality standard.

The TMDL calculations help ensure that the cumulative impacts of multiple point source discharges are accounted for, and evaluated in conjunction with pollution from nonpoint sources. States are then required to take whatever additional cleanup actions are necessary, which can include further controls on both point and nonpoint pollution sources. As a GAO report concluded, the TMDL process:

> Provides a comprehensive approach to identifying and resolving water pollution problems regardless of the sources of pollution. If implemented, the TMDL process can provide EPA and the states with a complete listing of key water pollutants, the source of the pollutants, information on the amount of pollutants that need to be reduced, options between point and/or nonpoint approaches, costs to clean up, and situations where it may not be feasible to meet water quality standards.[1]

Under Sec. 303(d), states and EPA are required meet a schedule regarding TMDL lists: TMDL lists were to be submitted to EPA by states no later than 180 days after EPA's publication of first water pollutants list (June 26, 1979); EPA was to approve or disapprove the submissions within 30 days after that (July 26, 1979); and, upon disapproval, EPA was to promulgate its own TMDLs within 30 days (August 25, 1979). 33 U.S.C. § 1313(d)(2); *see, American Canoe Ass'n v. EPA*, 30 F.Supp.2d 908, 921 (E.D. Va. 1998).

CWA citizen suit provision

CWA Sec. 505(a)(2), 33 U.S.C. § 1365(a)(2), authorizes citizens to bring suit in federal court against EPA for failing to perform an "act or duty" under the CWA that is not discretionary. The courts have jurisdiction to order EPA to perform such act or duty, and to award costs of litigation, including reasonable attorney and expert witness fees. 33 U.S.C. §§ 1365(a) and (d).

---

[1] US Government Accounting Office, "Water Pollution – More EPA Action Needed to Improve the Quality of Heavily Polluted Waters," January 1989 (GAO/RCED-89-38) at 34 – 35; cited by *Alaska Center for the Environment v. Reilly*, 762 F.Supp. 1422, 1424 (W.D. Wash. 1991).

EPA's duties to approve or disapprove TMDL submissions, and to promulgate its own TMDLs upon disapproval, are non-discretionary, and these duties extend to a state's constructive submission of TMDLs. *See, Scott v. City of Hammond*, 741 F.2d 992, 996-997 (7th Cir. 1984); *American Canoe Ass'n*, 30 F.Supp.2d at 919 – 921; *Alaska Center for the Environment v. Reilly*, 762 F.Supp. 1422, 1426 - 1429 (W.D. Wash. 1991).

Spokane River PCB TMDL

Fifteen waterbody segments of the Spokane River and Lake Spokane (also known as Long Lake), and one segment of the Little Spokane River are on Washington's final and approved 303(d) list for not meeting Washington State's human health water quality criterion for polychlorinated biphenyls (PCBs) in edible fish tissue:

| Waterbody | Reach | Waterbody Number | Watercourse Number | Listing ID |
|---|---|---|---|---|
| Spokane River | Idaho Border to Latah Creek | WA-57-1010 | QZ45UE | 14397 14398 8201 8207 8202 14402 |
| Spokane River | Latah Creek to Ninemile Dam | QA-54-1010 | QZ45UE | 14400 14385 9033 |
| Little Spokane River | Near mouth | QA-55-1010 | JZ70CP | 9051 |
| Lake Spokane (Long Lake) | Ninemile Dam to Lake Spokane Dam | WA-54-9040 | QZ45UE | 9021 36441 9015 36440 |
| Spokane River | Lake Spokane Dam to Mouth | WA-54-1020 | QZ45UE | 9027 |

The Spokane Tribe human health PCB water quality criterion of 3.37 pg/l (parts per quadrillion) applies to portions of the Lake Spokane (Long Lake) sections and are also not met. Washington State's human health criteria for PCBs is 170 pg/l (5.3 ng/g in fish tissue), the difference between the two standards being primarily due to assumptions about human consumption rates of fish.

Listing IDs 8201, 8202, 8207, 9015, 9021, 9027, 9033 and 9051 have been included on the Washington State 303(d) lists since 1996. Listing IDs 14385, 14397, 14398, 14400, 14402, 36440, and 36441 have been included since 2004.

The Washington Department of Ecology conducted water quality studies from 2003 to 2007 to assess PCB sources to the Spokane River. The goal of these efforts was to quantify PCB contamination and identify necessary reductions in sources and the receiving waters to meet applicable PCB water quality criteria in the Spokane River. The studies, which analyzed PCBs in river water, industrial and municipal effluents, stormwater, suspended particulate matter bottom sediments, sediment cores, and fish tissue, are described in "Spokane River PCB Source Assessment 2003 – 2007," Department of Ecology Publication No. 11-03-013 (April 2011).[2]

In May 2011, Ecology published "Spokane River Toxics Reduction Strategy," Department of Ecology Publication No. 11-10-038.[3] At page 19 of this document, Ecology explains that "[a] draft Spokane River PCB TMDL was issued for public comment in June 2006 but was not completed because of the need for more data, including more accurate stormwater data, updated fish tissue sampling results, and the addition of new Spokane Tribe water quality standards for PCBs based on updated fish consumption rates. The draft TMDL was revised with this updated information in 2009 and issued as the Spokane River Source Assessment Report in 2011."

Also on that page, Ecology declares the following:

Ecology is not currently planning to develop a PCB TMDL with wasteload allocations, but this is still a potential tool for the future. Setting wasteload allocations through a TMDL to accomplish that would set a target well below the 'background' PCB concentrations observed in remote bodies of water with no obvious source of contamination other than aerial deposition.

In part because it would establish an impossible near-term target, and based on its experience with the Spokane River Dissolved Oxygen TMDL, which took 12 years to complete, Ecology is opting to proceed directly to implementing measures to reduce all toxics to the Spokane River. Those measures are described in this strategy. Such a *straight-to-implementation* plan is a recent strategy being adopted by EPA and Ecology to address the many bodies of water that are on the list of polluted waters [called the 303(d) list] through tools other than TMDLs. Ecology plans to develop a straight-to-implementation plan for Spokane River toxics in 2012.

Intent to sue

With its actions, delay, and this declaration, Ecology has constructively submitted a TMDL for PCBs in the 303(d)-listed segments of the Spokane River identified above. EPA has failed to perform its non-discretionary duty to review and approve or disapprove this constructively submitted TMDL, and, in the event of disapproval, to promulgate its own TMDL. Sierra Club and Center for Environmental Law and Policy will file a lawsuit under 33

---

[2] Available at http://www.ecy.wa.gov/biblio/1103013.html.
[3] Available at http://www.ecy.wa.gov/biblio/1110038.html.

U.S.C. § 1365(a)(2) against EPA no less than sixty days from the date of this notice of intent to sue. Relief sought will include declaratory and injunctive relief, as well as the award of litigation expenses.

If you wish to discuss the allegations in this notice of intent to sue or the potential for settlement of this matter, please contact the undersigned at your earliest convenience. We do not intend to postpone the filing of a complaint if discussions have not been concluded at the expiration of the sixty-day notice period.

Very truly yours,

SMITH & LOWNEY, PLLC

By: _____

Richard A. Smith

c:    Eric H. Holder, Jr., U.S. Attorney General