HON. ROBERT S. LASNIK

Richard A. Smith
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| SIERRA CLUB; and CENTER FOR ENVIRONMENTAL LAW AND POLICY, | ) ) ) | No. 11-1759RSL |
| Plaintiffs, | ) ) ) | PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |
| and | ) ) | Oral Argument Requested |
| THE SPOKANE TRIBE OF INDIANS, | ) ) | NOTE ON MOTION CALENDAR: |
| Plaintiff-Intervenor, | ) ) | February 11, 2014 |
| v. | ) ) | (see order on briefing schedule (Dkt. 74)) |
| DENNIS McLERRAN; GINA McCARTHY, and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| SPOKANE COUNTY; KAISER ALUMINUM OF WASHINGTON LLC; and STATE OF WASHINGTON DEPARTMENT OF ECOLOGY, | ) ) ) ) | |
| Defendant-Intervenors. | ) ) | |

1

2

**TABLE OF CONTENTS**

3

4

I.      INTRODUCTION AND SUMMARY……………………………………………1

5

6

II.     APPLICABLE LAW…………………………………………………….....2

7

        A.      Standard of review……………………………………………….....2

8

        B.      Clean Water Act citizen suits……………………………….……..2

9

        C.      Clean Water Act Section 303 and Total Maximum Daily Loads…………2

10

11

        D.      Standing……………………………………………………….....7

12

III.    FACTS……………………………………………………………...8

13

        A.      PCBs………………………………………………………….8

14

        B.      Spokane River water quality and PCB contamination…………………….9

15

16

        C.      Prioritization of the Spokane River in Ecology's TMDL schedules…….11

17

        D.      The 2006 draft Spokane River PCB TMDL…………………………..12

18

        E.      Ecology's decision that no Spokane River PCB TMDL is necessary……14

19

        F.      Issuance of NPDES permits for PCB discharges to the Spokane River…18

20

21

        G.      Plaintiffs' notice and procedural facts…………………………..…21

22

IV.     ARGUMENT………………………………………………….……..22

23

        A.      Ecology's decision to not complete the TMDL triggered EPA's
                nondiscretionary duty under 33 U.S.C. § 1313(d)(2)……………..…22

24

25

                1.      Clear and unambiguous expression of a state's intent to
                        submit no TMDL for a particular 303(d) listing constitutes
                        "constructive submission" of the TMDL………………………..22

26

27

                2.      Ecology has unambiguously announced that it will not
                        submit the Spokane River PCB TMDL, and it has no
                        plans to do so………………………………………………..26

28

29

B.    EPA is liable for failing to perform its nondiscretionary duty..............29

C.    Plaintiffs' notice of intent to sue is sufficient................................30

D.    Plaintiffs have standing to sue..................................................30

E.    The Court should order EPA to prepare the TMDL.........................32

V.    CONCLUSION................................................................................34

ATTACHMENT 1 – Excerpts of Administrative Record (Dkt. 59)

ATTACHMENT 2 – Excerpts of Administrative Record Supplement (Dkt. 79)

ATTACHMENT 3 – Documents for which judicial notice is requested

ATTACHMENT 4 - Spokane Tribe of Indians Water Quality Standards (Mar. 7, 2003)

ATTACHMENT 5 – Excerpt of O. Houck, *The Clean Water Act TMDL Program: Law, Policy, and Implementation* (Environmental Law Inst., 2nd ed., 2002)

ATTACHMENT 6 - R. Flynn, *New Life for Impaired Waters: Realizing the Goal to 'Restore' the Nation's Waters Under the Clean Water Act*, 10 Wyo. L.R. 35 (2010)

ATTACHMENT 7 - *Sierra Club, et al. v. Ecology, et al.*, PCHB No. 11-184 (Findings of Fact, Conclusions of Law, and Order, July 19, 2013); and *Sierra Club, et al. v. Ecology, et al.*, PCHB No. 11-184 (Order Granting Partial Summary Judgment, Jan. 8, 2013)

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1

2

## TABLE OF AUTHORITIES

3

### CASES

4

5
*Alaska Center for the Environment v. Reilly*,
762 F.Supp. 1422, (W.D. Wash. 1991)… ………………………..6,24, 26

6

7
*Alaska Center for the Environment v. Reilly*,
20 F.3d 981 (9th Cir. 1994)…………………………………6, 7, 32

8
*American Littoral Society v. EPA*, 199 F.Supp.2d 217 (D.N.J. 2002)………...24

9
*Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531 (1987)………...………..33

10
*Anacostia Riverkeeper v. Jackson*, 798 F.Supp.2d 210 (D.D.C. 2011)….…..…5

11

12
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)…………………………..2

13
*City of Arcadia v. EPA*, 411 F.3d 1103 (9th Cir. 2005)…………………25, 26, 28

14
*Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*,
305 F.3d 943 (9th Cir. 2002)…………………………………….……2

15

16
*Conservation Law Found. v. EPA*,
2013 U.S. Dist. LEXIS 123731, (D. Mass. 2013) ………………………5

17

18
*Dioxin/Organchlorine Center v. Rasmussen*,
1993 U.S. Dist. LEXIS 15595, (W.D. Wash. 1993)…………………5, 22

19

20
*Ecological Rights Found. v. Pac. Lumber Co.*,
230 F.3d 1141 (9th Cir. 2000)…………………………………...7, 30

21

22
*EPA v. California ex rel. State Water Resources Control Board*,
426 U.S. 200 (1976) …………………………………………………3, 4

23

24
*Friends of the Earth v. EPA*, 346 F.Supp.2d 182 (D.D.C. 2004)…….…………6, 13

25
*Friends of the Earth v. EPA*, 446 F.3d 140 (D.C. Cir. 2006)…..……………6, 23

26
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
528 U.S. 167 (2000) …………………………………………7, 30, 30

27

28
*Friends of Pinto Creek v. EPA*, 504 F.3d 1007 (9th Cir. 2007)………...……4, 7, 20

29

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

*Hayes v. EPA*, 264 F.3d 1017 (10th Cir. 2001)…………………………25, 26, 28

*Idaho Sportsmen's Coalition v. Browner*,
    951 F.Supp. 962 (W.D. Wash. 1996)……………………………………..6

*Idaho Watersheds Project v. Hahn*, 307 F.3d 815 (9th Cir. 2002)………………33

*In the Matter of Las Virgenes Municipal Water Dist.*, State of Cal. State
    Water Res. Control Bd. Order No. WQ 98-11 (Nov. 19, 1998)………..19

*Kingman Park Civic Ass'n v. EPA*, 84 F.Supp.2d 1 (D.D.C. 1999)………..……6

*Miotke v. City of Spokane*, 101 Wn.2d 307 (1984)………………………………9

*Monongahela Power Co. v. Marsh*, 809 F.2d 41 (D.C. Cir. 1987)………………3

*Natural Resources Defense Council v. Muszynski*, 268 F.3d 91 (2001)…………5

*Natural Resources Defense Council v. Southwest Marine, Inc.*,
    236 F.3d 985 (9th Cir. 2000) …… …………………………………31, 32

*Northwest Environmental Advocates v. EPA*, 268 F.Supp.2d 1255
    (D. Or. 2003)………………………………………………………… ….23

*Or. Natural Desert Ass'n v. Dombeck*,  172 F.3d 1092 (9th Cir. 1998)……………3

*Pronsolino v. Nastri*,  291 F.3d 1123 (9th Cir. 2002)…………...3, 4, 5, 6, 22, 33, 34

*Public Interest Research Group v. Hercules, Inc.*, 50 F.3d 1239 (3rd Cir. 1995)…. 2

*PUD No. 1 of Jefferson County v. Wash. Dep't of Ecology*,
    511 U.S. 700 (1994)………………………………………………….…4

*Rosemere Neighborhood Ass'n v. Clark County*,
    2011 U.S. Dist. LEXIS 148973, (W.D. Wash. 2011)………..…34, 32, 33

*San Francisco Baykeeper v. Whitman*,
    297 F.3d 877 (9th Cir. 2002)………………………………24, 25. 28, 29

*Scott v. City of Hammond*, 741 F.2d 992 (7th Cir. 1984)…………6, 23, 24, 25, 26

*Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517 (9th Cir. 1987) …………….2

*Sierra Club v. Hankinson*, 939 F.Supp. 865 (N.D. Ga. 1996)…………..………24

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

*Sierra Club v. Meiburg*, 296 F.3d 1021 (11th Cir. 2002)………………..6, 7, 33, 34

*Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978 (8th Cir. 2011) ……34

*Sierra Club, North Star Chapter v. Browner*,
    843 F.Supp. 1304 (D. Minn. 1993)……………………………………………24

*Waterkeepers Northern California v. AG Industrial Mfg. Inc.*,
    375 F.3d 913(9th Cir. 2004)………………………………………...2, 30

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982)…………………………32

*Western Watersheds Project v. Abbey*, 719 F.3d 1035, 1054 (9th Cir. 2013)……32

## FEDERAL STATUTES

28 U.S.C. § 1391(e). ……………………………………………………………2

33 U.S.C. § 1251
    § 1251(a)………………………………………………………………34
    § 1251(a)(1)……………………………………………………………3
    § 1251(a)(2)……………………………………………………………3
    § 1251(a)(3)……………………………………………………………3
    § 1251(a)(7)……………………………………………………………3

33 U.S.C. § 1288……………………………………………………………………3

33 U.S.C. § 1311
    § 1311(a) ………………………………………………………………3
    § 1311(b)(1) ……………………………………………………………3
    §1311(c) ……………………………………………………….……6

33 U.S.C. § 1313……………………………………………………………………3
    § 1313(c)(2)(A) ……………………………………………...…………3, 4
    § 1313(d) …………………………………………………………4, 22, 24
    § 1313(d)(1)(C) …………………………………………………4, 5, 26
    § 1313(d)(2) …………………………………………1, 4, 6, 22, 23, 29
    § 1313 (d)(4)(B) ………………………………………………………4
    § 1313(e). ………………………………………………………………4
    § 1313(e)(3)(C). …………………………………………….…………6

33 U.S.C. § 1342……………………………………………………………........3
    § 1342(b)(1)(B)………. ……………………………………………….3

33 U.S.C. § 1362(11)………. …………………………………….…………3

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - v
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

33 U.S.C. § 1365
     § 1365(a)……………………………………………………………32
     § 1365(a)(2). ……………………………………………1, 2, 29
     § 1365(b). …………………………………………………………2
     § 1365(b)(2). ………………………………………………...…30

33 U.S.C. § 1377(e) …………………………………………………....…8

## **FEDERAL REGULATIONS**

40 C.F.R. § 122.2…………………………………………………………7

40 C.F.R. § 122.4(d)…………………………………………………4, 8

40 C.F.R. § 122.4(i)……………………..………………………………7, 20

40 C.F.R. § 122.6 …………………………………………………….....18

40 C.F.R. § 122.44(d)…………………………………………3, 18, 19
     § 122.44(d)(1)……………………………………………….4, 6
     § 122.44(d)(1)(vii)(B) ………………………………………7, 23
     § 122.44(d)(6)……………………………………………………7

40 C.F.R. §122.46. ………………………………………………………18
     § 122.46(a) …………………………………………………………3

40 C.F.R. § 130.0(b) …………………………………………………3, 4

40 C.F.R. §130.2………………………………………………………14
     § 130.2(d) ……………………………………………………………3
     § 130.2(f). …………………………………………………………5
     § 130.2(g) …………………………………………………………5
     § 130.2(h) …………………………………………………………5
     § 130.2(i) …………………………………………………………5
     § 130.2(j) ……………………………………………...…………4

40 C.F.R. § 130.3 ……………………………………………...………3

40 C.F.R. § 130.5(b)(3) …………………………….…………………6

40 C.F.R. § 130.6(c)(1) …………………………………………6, 7

40 C.F.R. § 130.7…………………………………………………………7
     § 130.7(a) …………………………………………………………6
     § 130.7(b)(4) ……………………………………...………………5
     § 130.7(c)(1) …………………………………………4, 5, 26

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - vi
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

§ 130.7(d) ……………………………………………...………6, 23, 29
§ 130.7(d)(1) ……………………………………………...………4
§ 130.7(d)(2). ………………………………………………………6, 23

40 C.F.R. § 130.10
§ 130.10(b)(2) ……………………………………………………4
§ 130.10(b)(3). …………………………………………...………6, 23
§ 130.10(d) ………………………………………………..………4

40 C.F.R. § 131.3(i) ……………………………………….…………4

40 C.F.R. § 131.6. …………………………………………………4

40 C.F.R. § 135.2 (b)…………………………………………………30

40 C.F.R. § 135.3…………………………………………………30
§ 135.3(b) ………………………….………………………..………2

Fed.R.Civ.P. 56…………………………………………….…………2

EPA, 54 Fed.Reg. 23868, 23879 (June 2, 1989)…………………………19

## WASHINGTON STATE REGULATIONS

WAC 173-220-130(b)………………… ………………………..18, 19

## OTHER

Flynn, Roger. *New Life for Impaired Waters: Realizing the Goal to 'Restore' the Nation's Waters Under the Clean Water Act*, 10 Wyo. L.R. 35 (2010)…7

Houck, Oliver. *The Clean Water Act TMDL Program: Law, Policy, and Implementation* (2nd ed., 2002) ……………………………….…6, 13

Spokane Tribe of Indians Water Quality Standards (Mar. 7, 2003), § 6. ……….8

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

# I.    INTRODUCTION AND SUMMARY

The Spokane River is more severely contaminated with toxic polychlorinated biphenyls ("PCBs") than any other waterway in the State of Washington – so contaminated that the Washington Department of Health has characterized consumption of fish from the river as a public health hazard, and the Spokane Tribe of Indians' fishing rights in the river are impaired as a result.  Intervenor Washington Department of Ecology ("Ecology") prepared a plan designed to bring the PCB levels in the Spokane River to within the water quality standard, known as a "Total Maximum Daily Load" ("TMDL"), under section 303(d) of the Clean Water Act ("CWA"), based upon more than 25 years of data and studies.  However, instead of finalizing and submitting the TMDL to defendant Environmental Protection Agency ("EPA") for approval as contemplated by the CWA, Ecology determined that the TMDL is not needed, changed the name of the report and omitted crucial "wasteload allocations" that would require significant reductions in PCB discharges for a small, highly-interested group of municipal and major industrial polluters.  In announcing to EPA and the world its intention to forgo submission of a Spokane River PCB TMDL, Ecology triggered the requirement under section 303(d)(2) of the CWA that EPA itself adopt a TMDL.[1]  Environmental group plaintiffs bring this action under the CWA citizen suit provision, 33 U.S.C. § 1365(a)(2), to compel EPA to perform this nondiscretionary duty.  The Court should grant summary judgment to Plaintiffs and order EPA to finalize a TMDL to force PCB discharge reductions and restore the Spokane River to attainment of state and tribal water quality standards as the CWA demands.

---

[1] 33 U.S.C. § 1313(d)(2).

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 1
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

## II.    APPLICABLE LAW

### A.    Standard of review

Summary judgment is properly granted where there is "no genuine issue of material fact."[2]

### B.    Clean Water Act citizen suits

The Clean Water Act citizen suit provision authorizes lawsuits against the Administrator of EPA when she is alleged to have failed to perform any act or duty under the CWA that is not discretionary.[3]  The Ninth Circuit treats citizen enforcement actions "liberally, because they perform an important public function…. [C]itizens should be unconstrained to bring these actions and the courts should not hesitate to consider them."[4]

Citizen suit plaintiffs must provide sixty days' notice of their intent to sue before commencing an action.[5]  The notice must identify the nondiscretionary duty and describe with reasonable specificity the action not taken constituting the alleged failure to act.[6]  Post-complaint violations do not require additional notice if they are of the same type as those violations alleged in the notice initially provided.[7]

### C.    Clean Water Act Section 303 and Total Maximum Daily Loads

With the enactment of the CWA in 1972, Congress set important goals for restoration of the chemical integrity of the nation's waters to ensure "water quality which provides for the

---

[2] Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 – 248 (1986).
[3] 33 U.S.C. § 1365(a)(2).  Because defendant EPA's Region 10 office in Seattle is where the asserted omissions took place, venue in the Western District of Washington is appropriate.  28 U.S.C. § 1391(e).
[4] *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987).
[5] 33 U.S.C. § 1365(b).
[6] 40 C.F.R. § 135.3(b); *Waterkeepers Northern California v. AG Industrial Mfg. Inc.*, 375 F.3d 913, 920 (9th Cir. 2004) (purpose of notice requirement is to inform recipient what it is doing wrong and allow opportunity to correct the problem).
[7] *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 953 (9th Cir. 2002) (plaintiff may pursue violations not described in the notice letter if such "violations originated from the same source [as those identified in the notice letter], were of the same nature, and were easily identifiable"); *Public Interest Research Group v. Hercules, Inc.*, 50 F.3d 1239, 1250 – 1252 (3rd Cir. 1995).

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 2
No. 11-1759RSL

protection and propagation of fish, shellfish, and wildlife and provides for recreation in and on the water."[8]  The 1972 Act simultaneously shifted the regulatory focus from the health of the receiving waters to the control of pollutant discharges.[9]  Under the CWA, pollutant sources are either (1) "point sources," which are prohibited unless authorized under the National Pollutant Discharge Elimination System ("NPDES") in which effluent limitations[10] and other conditions are imposed via permits issued for terms not to exceed five years,[11] or (2) "nonpoint sources," which are not directly regulated by the CWA but addressed through state laws and  planning incentives.[12]  Effluent limitations in NPDES permits must reflect specified levels of treatment technology unless more stringent limitations are needed to achieve the desired quality of receiving waters, as set forth in water quality standards and TMDLs, discussed below.[13]

While the CWA refocused water pollution control on the entities that directly pipe pollutants into waterbodies, it retained the broader goal of attaining acceptable water quality within receiving waters.[14]  Section 303, entitled "Water Quality Standards and Implementation Plans," is the primary CWA provision addressing receiving water quality.[15]  Under Section 303, states must establish water quality standards, subject to EPA approval, that protect the desired conditions and uses of every river and stream, including fishing for fish that are safe to eat.[16]

---

[8] 33 U.S.C. § 1251(a)(2); *see also*, 33 U.S.C. §§ 1251(a)(1) ("It is the national goal that the discharge of pollutants into the navigable waters be eliminated by 1985") and 1251(a)(3) ("It is the national policy that the discharge of toxic pollutants in toxic amounts be prohibited"); *and see*, *Monongahela Power Co. v. Marsh*, 809 F.2d 41, 45 – 46 (D.C. Cir. 1987) (With its passage, the CWA "marked the ascendancy of water-quality control to the status of a major national priority.")

[9] *Or. Natural Desert Ass'n v. Dombeck*, 172 F.3d 1092, 1096 (9th Cir. 1998).

[10] "Effluent limitation" means "any restriction … on quantities, rates and concentrations of chemical physical, biological, and other constituents" discharged from point sources.  33 U.S.C. § 1362(11); *see EPA v. California ex rel. State Water Resources Control Board*, 426 U.S. 200, 204 – 205 (1976).

[11] 33 U.S.C. § 1342(b)(1)(B); 40 C.F.R. § 122.46(a).

[12] 33 U.S.C. §§ 1251(a)(7), 1288, 1311(a), and 1342; *Or. Natural Desert Ass'n*, 172 F.3d at 1096 – 1097.

[13] 33 U.S.C. § 1311(b)(1); 40 C.F.R. § 122.44(d).

[14] *Pronsolino v. Nastri*, 291 F.3d 1123, 1126 (9th Cir. 2002).

[15] 33 U.S.C. § 1313.

[16] 33 U.S.C. § 1313(c)(2)(A); 40 C.F.R. §§ 130.0(b), 130.2(d) and 130.3.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 3
No. 11-1759RSL

"Water quality standards are retained as a supplementary basis for effluent limitations, however, so that numerous point sources, despite individual compliance with effluent limitations, may be further regulated to prevent water quality from falling below acceptable levels."[17]

Water quality standards comprise designated uses, numeric and narrative water quality criteria, and antidegradation requirements.[18] The three components are independent and separately enforceable requirements of federal law.[19] Where effluent limitations cannot ensure that a point source discharge complies with water quality standards, federal law prohibits the issuance of an NPDES permit.[20]

Section 303 also requires states, such as Washington, to identify waterbodies that fail to meet state water quality standards, and to implement a planning process for restoration to standards.[21] For 303(d)-listing purposes, waterbodies are divided into geographical "segments," and listed separately for individual pollutants of concern ("waterbody segment/pollutant").[22] Each state must periodically submit a list of these impaired "water quality limited segments," commonly known as its "303(d) list," which EPA must review and approve or disapprove.[23]

For each 303(d)-listed waterbody segment/pollutant, the state must develop a "total maximum daily loads" or "TMDL" intended to restore standards compliance.[24] The state must prepare TMDLs according to a "priority ranking" that must include

---

[17] *EPA v. California ex. rel. State Water Res. Control Bd.*, 426 U.S. at 205 n.12; *see also* 40 C.F.R. § 130.0(b) ("Water quality standards (WQS) are the State's goals for individual water bodies and provide the legal basis for control decisions under the Act.")
[18] 33 U.S.C. § 1313(c)(2)(A) and (d)(4)(B); 40 C.F.R. §§ 131.3(i) and 131.6.
[19] *PUD No. 1 of Jefferson County v. Wash. Dep't of Ecology*, 511 U.S. 700, 714 - 715 (1994).
[20] 40 C.F.R. § 122.4(d); *see also* 40 C.F.R. § 122.44(d)(1).
[21] 33 U.S.C. § 1313(d) and (e).  *See,* AR 47 (Guidance for Water Quality-based Decisions: The TMDL Process, EPA, 1991 ("EPA TMDL Guidance")) at 960 – 990.
[22] AR 26 at 370; AR 27 at 380 – 381.
[23] 33 U.S.C. § 1313(d)(2); 40 C.F.R. §§ 130.2(j) and 130.10(b)(2) and (d).
[24] 33 U.S.C. § 1313(d)(1)(C); 40 C.F.R. § 130.7(c)(1) and (d)(1); *Pronsolino*, 291 F.3d at 1127; *Friends of Pinto Creek v. EPA*, 504 F.3d 1007, 1011(9th Cir. 2007).

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 4
No. 11-1759RSL

all listed water quality-limited segments still requiring TMDLs, taking into account the severity of the pollution and the uses to be made of such waters and shall identify the pollutants causing or expected to cause violations of the applicable water quality standards. The priority ranking shall specifically include the identification of waters targeted for TMDL development in the next two years.[25]

"A TMDL defines the specified maximum amount of a pollutant which can be discharged or 'loaded' into the waters at issue from all combined sources."[26] TMDL development first requires a determination of the receiving water's "loading capacity," which is "the greatest amount of pollutant loading that a water can receive without violating water quality standards."[27] The TMDL then establishes "load allocations" and "wasteload allocations," the portions of the loading capacity attributed to nonpoint and point sources, respectively.[28] A TMDL, then, is the sum of load allocations to nonpoint sources, and wasteload allocations to point sources, with "a margin of safety which takes into account any lack of knowledge concerning the relationship between effluent limitations and water quality," necessarily subject to substantial agency discretion.[29] The TMDL's assignment of load and wasteload allocations not only accommodates scientific uncertainty, but is also an inherently political decision about the mix of greater and

---

[25] 40 C.F.R. § 130.7(b)(4); *see also* AR 47 (EPA TMDL Guidance) at 963 ("… priority ranking should result in the identification of targeted waterbodies for which immediate TMDL development should be undertaken") and 971 – 972 (identifying factors that states should consider in targeting high priority waters for TMDL development); 33 U.S.C. § 1313(d)(1)(C).

[26] *Pronsolino*, 291 F.3d at 1127 – 1128 (citation omitted); *Conservation Law Found. v. EPA*, 2013 U.S. Dist. LEXIS 123731, *8 (D. Mass. 2013) (characterizing a TMDL as a "pollution budget," representing a calculation of the maximum amount of a pollutant that a water body can receive and still meet water quality standards).

[27] 40 C.F.R. § 130.2(f).

[28] 40 C.F.R. § 130.2(g) and (h). A pollutant "load" from a particular source is generally calculated by multiplying the pollutant concentration by the discharge volume and an appropriate conversion factor. It is a measure of pollutant mass rather than concentration.

[29] 33 U.S.C. § 1313(d)(1)(C); 40 C.F.R. §§ 130.2(i) and 130.7(c)(1); *Natural Resources Defense Council v. Muszynski*, 268 F.3d 91, 101 – 102 (2001); *Anacostia Riverkeeper v. Jackson,* 798 F.Supp.2d 210, 251 – 253 (D.D.C. 2011); *Dioxin/Organchlorine Center v. Rasmussen*, 1993 U.S. Dist. LEXIS 15595, *12 - *17 (W.D. Wash. 1993).

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    lesser loading reductions required of various dischargers. [30]

2           The state must submit a proposed TMDL to EPA for review, and EPA has thirty days to

3    approve or disapprove it. [31]  If EPA disapproves a state's TMDL, EPA has thirty days to establish

4    its own TMDL. [32]  These short timelines indicate "the intent of Congress that TMDLs be

5    established promptly." [33]  As Judge Dwyer explained, "[t]he role of TMDLs in the CWA strategy

6    for improving water quality confirms that they were to be developed quickly." [34]

7           EPA-approved TMDLs become part of the state's continuing planning process and water

8    quality management plans required under Section 303. [35]  TMDLs are the primary mechanism for

9    reducing point source pollution by requiring more stringent effluent limits in NPDES permits

10   than those mandated by the existing (pre-TMDL) level of treatment technology. [36]  As the

11   Eleventh Circuit explained:

12
13           The theory is that individual discharge permits will be adjusted and other
             measures taken so that the sum of that pollutant in the waterbody is reduced to the
14           level specified by the TMDL.  As should be apparent, TMDLs are central to the
             [CWA's] water-quality scheme because … they tie together point-source and
15           nonpoint-source pollution issues in a manner that addresses the whole health of
16
17
18
19

20   ─────────────────────────
     [30] O. Houck, *The Clean Water Act TMDL Program: Law, Policy, and Implementation* 59 (2nd ed., 2002); *Friends of
21   the Earth v. EPA*, 346 F.Supp.2d 182, 203 (D.D.C. 2004), *rev'd on other grounds, Friends of the Earth v. EPA*, 446
     F.3d 140 (D.C. Cir. 2006) (assignment of wasteload allocations to individual point sources is a "political judgment
22   of who bears the regulatory cost of compliance").
     [31] 33 U.S.C. § 1313(d)(2); 40 C.F.R. §§ 130.7(d) and 130.10(b)(3).
     [32] 33 U.S.C. § 1313(d)(2); 40 C.F.R. 130.7(d)(2).
23   [33] *Alaska Center for the Environment v. Reilly*, 762 F.Supp. 1422, 1427 (W.D. Wash. 1991), *affd.* 20 F.3d 981 (9th
     Cir. 1994) (quoting *Scott v. City of Hammond*, 741 F.2d 992, 998 (7th Cir. 1984));
24   [34] *Idaho Sportsmen's Coalition v. Browner*, 951 F.Supp. 962, 967 (W.D. Wash. 1996); *see also*, AR 47 at 988-989
     (EPA TMDL Guidance: "[i]f a State chooses not to develop the needed TMDLs for appropriate pollutants on a
25   timely basis or, if the TMDLs are unacceptable to EPA, EPA has a role under the Act to develop the TMDLs in
     cooperation with the State"); AR 32 at 447 (settlement agreement provision for EPA to "take all steps necessary to
26   ensure completion" of TMDLs for 1996 303(d) listed waters if Ecology fails to meet the agreed schedule); *see also,
     Kingman Park Civic Ass'n v. EPA*, 84 F.Supp.2d 1, 2 (D.D.C. 1999).
27   [35] 33 U.S.C. § 1313(e)(3)(C); 40 C.F.R. §§ 130.5(b)(3), and 130.7(a); *Pronsolino*, 291 F.3d at 1128 –
     1129; *Sierra Club v. Meiburg*, 296 F.3d 1021, 1025 - 1026 (11th Cir. 2002)
28   [36] 33 U.S.C. §1311(c); 40 C.F.R. §§ 122.44(d)(1) and 130.7(a); *Meiburg*, 296 F.3d at 1025 – 1026; *Pronsolino*, 291
29   F.3d at 1129.

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

the water.[37]

Two key regulations implement TMDLs through the NPDES permit scheme.  First, 40 C.F.R. § 122.44(d)(1)(vii)(B) requires consistency between permit effluent limitations and approved wasteload allocations.[38]  Second, 40 C.F.R. § 122.4(i) specifically prohibits NPDES permit issuance to a "new source" or "new discharger"[39] that would contribute to a violation of water quality standards unless a TMDL is in place with "sufficient remaining pollutant load allocations to allow for the [new] discharge," along with appropriate compliance schedules for existing dischargers.[40]

## D.    Standing

In the CWA citizen suit context, the Supreme Court has explained:

to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.  An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.[41]

---

[37] *Meiburg*, 296 F.3d at 1025 (quotation marks omitted); *see also* EPA TMDL Guidance, AR 47 at 973 ("The TMDL process is a rational method for weighing the competing pollution concerns and developing an integrated pollution reduction strategy for point and nonpoint sources.")

[38] "When developing water quality-based effluent limits under this paragraph the permitting authority shall ensure that:  Effluent limits developed to protect a narrative water quality criterion, a numeric water quality criterion, or both, are consistent with the assumptions and requirements of any available wasteload allocation for the discharge prepared by the State and approved by EPA pursuant to 40 CFR 130.7."  40 C.F.R. § 122.44(d)(1)(vii)(B).  *See also* 40 C.F.R. § 122.44(d)(6) (requiring NPDES effluent limitations to ensure consistency with an approved water quality management plan, which must incorporate TMDLs under 40 C.F.R. § 130.6(c)(1)).

[39] "New source" and "new discharger" are defined at 40 C.F.R. § 122.2.

[40] *See, Friends of Pinto Creek*, at 1011 – 1014; R. Flynn, *New Life for Impaired Waters: Realizing the Goal to 'Restore' the Nation's Waters Under the Clean Water Act*, 10 Wyo. L.R. 35 (2010).

[41] *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000) (citations omitted*); see also Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147 - 1151 (9th Cir. 2000); and *Alaska Center for the Environment v. Reilly*, 20 F.3d 981, 984 - 986 (9th Cir. 1994).

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 7
No. 11-1759RSL

### III.    FACTS

A.    **PCBs**

Polychlorinated biphenyls ("PCBs") are industrial chemicals first commercially produced in 1929.[42] PCBs were designed to be stable and resist degradation, making them extremely persistent in the environment where they accumulate in the lipids (fats) of fish and other animals.[43] They are considered by Washington State to be persistent, bioaccumulative, and toxic - a "PBT".[44] Low level exposure can affect the human immune system, and exposure in the womb may cause learning deficits.[45]

Water quality standards for PCBs relevant to this case are two sets of human health-based criteria established by Washington State and the Spokane Tribe of Indians, respectively.[46] The state's PCB criteria of 170 picograms per liter (pg/l) for the water column and 5.3 nanograms per gram (ng/g) for fish tissue come from the National Toxics Rule and are based on carcinogenic and non-cancer risks from human consumption of fish, the predominant exposure pathway.[47] The Spokane Tribe's human health based PCB water quality criteria are 3.37 pg/l for ambient water and 0.1 ng/g for fish tissue.[48] The Tribal criteria are substantially lower (i.e., more protective) because Tribal members eat more fish and their derivation uses a more accurate (and higher) fish tissue consumption rate than did the National Toxics Rule,.[49]

---

[42] AR 15 at 91.

[43] Id. at 92 - 93.

[44] AR 14A at 487; AR Supp. 7 at 2983 – 2984.

[45] AR 14A at 487.

[46] The Spokane Tribe was qualified by EPA for "treatment as a state" status under the CWA, 33 U.S.C. § 1377(e), in 2002, and EPA approved its water quality standards soon thereafter. AR Supp. 10 at 3028. NPDES permits issued by Ecology and EPA, for dischargers to the Spokane River in Washington and Idaho respectively, must ensure compliance with the Tribe's water quality standards. 40 C.F.R. § 122.4(d).

[47] AR 15 at 83 - 84. A pictogram per liter is a one part per quadrillion. A nanogram per gram is one part per billion.

[48] AR 15 at 83. AR Supp. 10 at 3028 – 3029; Spokane Tribe of Indians Water Quality Standards (Mar. 7, 2003), § 6.

[49] AR 15 at 83 and 85 The adequacy of the National Toxic Rule's fish consumption rate for Washington State is a matter of current controversy. *E.g.*, July 16, 2012, "Open Letter to Interested Parties," T. Sturdevant, Director,

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 8
No. 11-1759RSL

**B.    Spokane River water quality and PCB contamination**

From its origin at Lake Coeur d'Alene, the Spokane River flows into Washington at the Idaho border, westward through the City of Spokane and then the reservation of the Spokane Tribe, to its confluence with the Columbia River.[50]  The river has for years presented and continues to face a variety of serious pollution problems; a TMDL for dissolved zinc, lead, and cadmium was developed in 1998, and a dissolved oxygen TMDL was finalized in 2010.[51]  In addition, multiple segments of the Spokane River are on Washington's 303(d) lists as impaired for temperature, dissolved gas, fecal coliform bacteria, dioxin, and PCBs.[52]

Fifteen waterbody segments of the Spokane River are on Washington's 2008 303(d) list for exceeding human health water quality criteria for PCBs.[53]  Ecology first documented PCB contamination in Spokane River fish in the early 1980s, and first placed it on the 303(d) list for PCB impairment in 1996.[54]  Over the past thirty years, Ecology and others have conducted extensive PCB water, sediment, and fish tissue monitoring in the Spokane River, and numerous studies have been published.[55]  Ecology's statewide monitoring effort found the Spokane River to be the most seriously PCB-contaminated river in Washington.[56]

Because of the level of PCB contamination, the Washington Department of Health

---

Ecology; and July 23, 2013, "Notice of Violation of Non-discretionary Duty to Propound Washington State Fish Consumption Rate Under Section 303 of the Clean Water Act, 33 U.S.C. § 1313," J. Brimmer.  Plaintiffs request judicial notice of these letters.

[50] AR 15 at 87.

[51] AR 99 at 1942; AR 78 at 1278 - 1279; AR 81 at 1287; AR 101 at 2072 - 2073.  *See also, e.g., Miotke v. City of Spokane*, 101 Wn.2d 307 (1984) (regarding history of conventional pollution issues).

[52] AR 101 at 2072; AR 15 at 82; *see also* AR Supp. 6 (2008 Ecology study comparing toxic pollutant levels in various state waterbodies showing relatively high contamination in Spokane River).

[53] AR 15 at 80; Plaintiffs request judicial notice that these Spokane River segments continue to be included on the current, 2012, 303(d) list.  *See* Department of Ecology water quality assessment web page at http://apps.ecy.wa.gov/wats/Default.aspx.

[54] AR 15 at 80; AR Supp. 1.

[55] AR 15 at 94; AR 14A at 492 – 495.

[56] AR Supp. 6 at 2812, 2827 and 2836.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 9
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

("WDOH") has issued Spokane River fish consumption advisories, starting in 2003.[57]  The WDOH advisories vary by river stretch and fish species, ranging in stringency up to an "*all species - do not eat*" warning in place between the City of Spokane and the Idaho border.[58]  WDOH has concluded that exposure to PCBs through ingestion of fish caught in the Spokane River constitutes a *human health hazard*.[59]  The Spokane Tribe considers the danger to human health presented by fish consumption to be an impairment of its fishing rights in the Spokane River.[60]  PCB contamination also threatens members of the general public who enjoy fishing and water activities on the Spokane River.[61]

PCB contamination increases as the river flows westward.[62]  The primary sources of PCBs in the river include effluents from municipal, industrial, and stormwater point source dischargers, and contamination originating in Idaho and the tributary Little Spokane River.[63]  Estimated PCB loadings from five of the six[64] most significant NPDES-permitted point sources on the river downstream of the Idaho state line are as follows:  Liberty Lake Sewer & Water District ("Liberty Lake STP") (2.9 milligrams per day (mg/d)), City of Spokane's Riverside Park Water Reclamation Facility ("Spokane Riverside STP") (194 mg/d), Kaiser Aluminum Fabricated Products, LLC (65 mg/d), Inland Empire Paper (45 mg/d), and City of Spokane

---

[57] AR 15 at 97.  The Spokane Regional Health District started advising people of PCB-based concerns over Spokane River fish in 1994.  AR Supp. 4 at 2777.

[58] AR 15 at 97; AR Supp. 5.

[59] AR Supp. 7 at 2950 – 2951.

[60] AR 81 at 1285; AR 85 at 1298 – 1299 (Spokane Tribe letter to EPA stating that PCB pollution affects "the very ability of the Tribe to exercise its fishing rights within the Spokane River.  The Tribe has paramount fishing rights within the lower Spokane River and portions of the Columbia River, which could provide a significant food source for the Tribe, if not for the PCBs that make the fish hazardous to eat.")

[61] Declaration of Gunnar Holmquist, M.D. ("Holmquist Dec.") § 9; *e.g.*, R. Landers, "Spokane River is year-round attraction for local fly fisher," The Spokesman-Review, Feb. 21, 2010, which Plaintiffs request the Court to judicially notice.

[62] AR 15 at 161 - 162.

[63] AR 15 at 155.

[64] The sixth NPDES permittee is the new Spokane County facility discussed *infra*.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 10
No. 11-1759RSL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

stormwater (691 mg/d).[65]  Loadings from Idaho and the Little Spokane River are estimated at 477 and 97 mg/d, respectively.[66]

Point source contributors of pollutants to the river upstream in Idaho are directly regulated by EPA, and include the City of Coeur d'Alene, Hayden Area Regional Sewer Board, and the City of Post Falls.[67]  To address resulting regulatory complications in circumstances like those here, EPA and Ecology have agreed that "[w]here Washington is engaged in a TMDL that has cross border issues EPA will provide the leadership for bringing those issues to resolution."[68]

## C.    Prioritization of the Spokane River in Ecology's TMDL schedules

In 1991, environmental groups unrelated to Plaintiffs sued EPA over Washington's 303(d) listing and TMDL processes.[69]  The lawsuit was resolved by a consent decree, later amended by a settlement agreement in 1997.[70]  The 1997 settlement agreement incorporates a memorandum of agreement between EPA and Ecology under which Ecology committed to a specified schedule to submit to EPA proposed TMDLs for the polluted waterbodies identified in Washington's 1996 303(d) list.[71]  The schedule called for Ecology to submit TMDLs to EPA for all 1996 303(d)-listed waters in the Spokane watershed in 1998, 2001, and 2006, with the final TMDLs by 2011.[72]

Accordingly, Ecology identified the Spokane River PCB TMDL as a priority each year for several consecutive years.  This is evidenced by the Ecology Environmental Assessment

---

[65] AR 15 at 156 - 157; AR 104 at 2348; AR 96 at 1752; AR 92 at 1509.
[66] AR 15 at 160 - 163.
[67] AR 50; AR 51; AR 57; AR 58; AR 101 at 2071.
[68] AR 46 at 924; *see also* AR 58 (discussing need to coordinate PCB-related NPDES conditions between EPA-regulated Idaho permittees and Ecology-regulated Washington permitees).
[69] AR 31.
[70] AR 31, AR 32.
[71] AR 32 at 441; AR 34 at 461.
[72] AR 32 at 441 (also, under the settlement agreement schedule, TMDLs for all waters on the 1996 303(d) list were to be completed "over a 15-year period ending December 31, 2013"); AR 33; AR 34 at 461.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 11
No. 11-1759RSL

Program's project lists for 2000, where the "Spokane River PCB Investigation" first appears as a high priority work item to be done for Ecology's Eastern Regional Office, through 2010.[73]  In its 2008 Section 303(d) submission to EPA, Ecology again placed the Spokane River in the highest priority group for TMDL development.[74]  Prioritization of the Spokane River PCB TMDL makes sense as the PCB-based fish consumption advisories in effect since 1996 demonstrate the risk to human health posed by this severe water quality problem.[75]

Under the the settlement agreement, Ecology has developed and EPA has approved several hundred other TMDLs, including several for other pollutants in the Spokane River.[76]

### D.    The 2006 draft Spokane River PCB TMDL

After five years of development, Ecology issued for public comment a completed draft Spokane River PCB TMDL and sent it to EPA for review and comment.[77]  The draft TMDL included a PCB load reduction scenario "based on meeting the Spokane Tribe water criterion for PCBs (3.37 pg/l)," which would require load reductions of at least 99 percent both overall and in municipal, industrial, and stormwater discharges, to eventually meet the criterion in the river.[78] James Bellatty, Ecology's Water Quality Program Manager in Spokane, characterized this scenario as "a very challenging picture in terms of our ability to meet the downstream Spokane

---

[73] AR 105 at 2422; AR 106 at 2431 and 2434; AR 107; AR 108 at 2448; AR 109 at 2462 – 2463; AR 110 at 2475 – 2476; AR 111 at 2479; AR 112; AR 113 at 2493; AR 114; AR 115 at 2508; AR 116; AR 117 at 2524; AR 118; AR 119 at 2539; AR 120; AR 121 at 2552; AR 122; AR 123 at 2571; AR 124 at 2590.  In the development of TMDLs, the Environmental Assessment Program ("EAP") performs the technical analysis, including monitoring, data-gathering, modeling, and other analysis necessary to produce a TMDL.  AR 24 at 302.  The authors of the draft TMDL and the Spokane River PCB Source Assessment 2003 – 2007, which the draft TMDL became (as discussed *infra*), are members of the EAP.  AR 90 at 1321, AR 15 at 65.
[74] AR 22 at 264.
[75] AR Supp. 8 at 2996; AR 15 at 94; AR 34 at 465 (Ecology/EPA MOA identifying risks to public health as a factor to be given the "greatest weight in determining priorities"); AR 15 at 97; AR Supp. 7 at 2950 – 2951; AR Supp. 5 at 2779.
[76] AR 16; AR 17.
[77] AR 14A at 503; AR 48; AR 90.
[78] AR 90 at 1331.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 12
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Tribe water quality standards."[79]

To develop this loading scenario, Ecology evaluated years of studies, including numerous investigations of PCBs in Spokane River fish tissue, sediments, surface water, and point source effluents.[80] Ecology also used data from a study it conducted in 2003 – 2004 for the TMDL, including testing of PCB levels in the water column, NPDES-permitted discharges, sediments, and fish tissue.[81] Ecology then quantified the sources of PCBs to the river from the primary sources: industrial, municipal, and stormwater effluents, the Spokane River crossing into Washington from Idaho, and the Little Spokane River.[82] Ecology's modeling concluded that instream PCB loadings must be reduced by 95 percent or more at each location evaluated for the river to meet the Tribe's PCB criteria at the reservation's boundary.[83] This led to the draft load allocations and waste load allocations in the TMDL shared with EPA for each of the consequential sources according to agency discretion.[84]

For NPDES-permitted municipal and industrial sources, the wasteload allocations are the equivalent of discharge PCB concentrations of 5.32 pg/l, somewhat over the Spokane Tribal criterion of 3.37 pg/L.[85] These sources, Liberty Lake STP, Spokane Riverside STP, Kaiser Aluminum, and Inland Empire Paper, have current effluent concentrations in the range of 1,000 to 2,600 pg/l, and adherence to the recommended wasteload allocations, which would be incorporated into NPDES permits as effluent limitations,[86] would require PCB loading

---

[79] AR 49

[80] AR 90 at 1339 – 1347.

[81] AR 90 at 1353 – 1394.

[82] AR 90 at 1395 – 1402.

[83] AR 90 at 1402 – 1411.

[84] AR 90 at 1415; O. Houck, *The Clean Water Act TMDL Program: Law, Policy, and Implementation* 59; *Friends of the Earth*, 346 F.Supp.2d at 203.

[85] AR 49 at 1019.

[86] AR 15 at 156; AR 24 at 305 (Ecology's 2006 TMDL Workload Assessment explaining that, for TMDLs generally, in theory, for "the point source part" … "we just turn the wasteload allocation into a permit limit.")

PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT - 13
No. 11-1759RSL

1    reductions of more than 99 percent.[87]  The draft TMDL included all of the elements required by

2    EPA of a TMDL.[88]

3            In its review of the draft TMDL, EPA's concerns focused not on the technical soundness

4    of the document, but on the anticipated pushback from the NPDES-permitted sources that would

5    be subject to likely costly and challenging PCB load reduction requirements, as well as what the

6    TMDL would mean for EPA's direct regulation of Spokane River dischargers in Idaho.[89]  For its

7    part, before finalizing the TMDL, Ecology decided to collect additional PCB monitoring data in

8    2007 to confirm its findings.[90]  Consistent with its longstanding and repeated designation of the

9    Spokane River PCB TMDL as a priority, Ecology planned to finalize the TMDL by late 2007.[91]

10           **E.    Ecology's decision that no Spokane River PCB TMDL is necessary**

11           Throughout 2007 and 2008, although the estimated completion date was delayed,

12   Ecology and EPA continued to plan for finalization of the Spokane River PCB TMDL.[92]  This

13   included completion of the additional PCB stormwater and fish tissue data collection that

14   Ecology wanted for confirmation.[93]  Ecology amended the draft TMDL with the data.[94]

15           In early 2009, Ecology's Director decided that the PCB TMDL should be held back until

16   the contentious Spokane River dissolved oxygen TMDL was finalized and approved.[95]  At that

17   point, Ecology Manager Bellatty noted that plaintiff Sierra Club "continually ask[s] us about

---

[87] AR 90 at 1396 (Table 28) and 1415 (Table 37).
[88] 40 C.F.R. §130.2; *see also* AR Supp. 8, and AR 34 at 468.
[89] AR 50 (e.g., "Of course the discharge permit holders have already been roughed up in recent years over the phosphorus/DO TMDL. … Since the reality of near-term implementation is that there's a lot more that can be done about phosphorus than PCBs, I think we should let this TMDL be on the low burner until the phosphorus/DO TMDL gets finalized."); AR 51 at 1024; AR 56 at 1035; AR 57.
[90] AR 54.
[91] AR 53; AR 55.
[92] AR 57; AR 59; AR 60 at 1062; AR 61 at 1064
[93] AR 62 at 1066; AR 15 at 94.
[94] AR 66 at 1078; AR 77 at 1277.
[95] AR 64 at 1071; AR 18 at 226; AR 132 at 2672.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 14
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

where we are with the PCB TMDL and we really don't know."[96]  But, by the end of 2009,

Ecology had begun to consider shelving the PCB TMDL.[97]

In 2010, Ecology decided to convert its completed draft Spokane River PCB TMDL into

a non-TMDL by changing the name of the document and "how it describes load reductions to

reflect the fact this is not a TMDL."[98]  As the manager of Ecology's toxics studies unit asked

Eastern Regional Office staff responsible for the Spokane River:

> One question that has come up concerns the use of the TMDL label.  We are
> thinking about changing the title to 'Spokane River PCB Source Assessment'.  If
> we remove the TMDL from the title it would also make sense to remove some of
> the standardized language in the report that discusses what a TMDL is and the
> process.
>
> So our question to you in [Eastern Regional Office] is do you want to call this a
> TMDL or something else?[99]

The answer to this manager's question is evident from his note in a later transmission

email:

> Attached is the Spokane River PCB technical report for your review.  This was formerly
> called the Spokane River PCB TMDL technical report.  We are now calling it the
> 'Spokane River PCB Source Assessment.'[100]

Ecology formally issued the *Spokane River PCB Source Assessment 2003 – 2007*

("*Source Assessment*") in April 2011.[101]  This document is virtually the same as the 2006 draft

TMDL except for reformatting, the omission of boilerplate language about TMDLs, the addition

of the supplemental monitoring data collected in 2007, and the deletion of the crucial wasteload

---

[96] AR 64 at 1071.
[97] AR 70 at 1261.
[98] AR 75 at 1269 ("We proposed changing the name to Spokane River PCB Source Assessment."); AR 82 at 1293 ("Attached is the revised PCB source assessment.  The major changes since we last saw this are mostly in the Recommendations section to line up with our toxics reduction strategy and in Table 44 and Figure 19 in how it describes load reductions to reflect the fact this is not a TMDL.").
[99] AR 74.
[100] AR 77 at 1277.
[101] AR 15.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 15
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1  allocations and load allocations.[102]  The *Source Assessment*'s evaluation of and conclusions

2  about sources of PCBs and the overall loading reductions needed to attain compliance with the

3  Spokane Tribe's water quality criteria are nearly identical to those in the draft TMDL.[103]

4  However, as a report rather than a TMDL, these loading reductions are not binding on the

5  agencies for use in NPDES permits.

6          Shortly thereafter, in May 2011, Ecology released the *Spokane River Toxics Reduction*

7  *Strategy*, setting forth Ecology's "strategy or 'road map,' for reducing and removing toxic

8  contamination in water, water sediments and soil in the Spokane River watershed."[104]  In this

9  formal publication, Ecology described its decision that it need not finalize the Spokane River

10  PCB TMDL and explained its future plans in that regard:

13          A draft Spokane River PCB TMDL was issued for public comment in June 2006
14      but was not completed because of the need for more data, including more accurate
        stormwater data, updated fish tissue sampling results, and the addition of new
15      Spokane Tribe water quality standards for PCBs based on updated fish
        consumption rates.  The draft TMDL was revised with this updated information in
16      2009 and issued as the Spokane River Source Assessment Report in 2011.

17          In addition to the new information, the report contains a review of previous
18      studies, a discussion of PCB concentrations from the Idaho border to the mouth of
        the river from 2003 through 2007, an assessment of reductions necessary to
19      reduce PCBs from current levels, and general recommendations various
        organizations can take and are taking to reduce PCBs.

21          **Ecology is not currently planning to develop a PCB TMDL with wasteload**
22      **allocations, but this is still a potential tool for the future.**  Setting wasteload
        allocations through a TMDL to accomplish that would set a target well below the
23      'background' PCB concentrations observed in remote bodies of water with no
        obvious source of contamination other than aerial deposition.
24

25          In part because it would establish an impossible near-term target, and based on its
26      experience with the Spokane River Dissolved Oxygen TMDL, which took 12
        years to complete, Ecology is opting to proceed directly to implementing

27
_____
28  [102] AR 15 and AR 90.
    [103] AR 15 at 163 and 164; AR 90 at 1401 and 1403
29  [104] AR 14A at 485.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 16
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

measures to reduce all toxics to the Spokane River.  Those measures are described in this strategy.  **Such a *straight-to-implementation* plan is a recent strategy being adopted by EPA and Ecology to address the many bodies of water that are on the list of polluted waters [called the 303(d) list] through tools other than TMDLs**.  Ecology plans to develop a straight-to-implementation plan for Spokane River toxics in 2012.[105]

EPA and Ecology communications confirm that Ecology abandoned the effort to finalize the Spokane River PCB TMDL because it did not want to face opposition to PCB wasteload allocations from Spokane River NPDES permittees similar to that generated by the dissolved oxygen TMDL, hoping to avoid "a protracted political and legal struggle that may take a decade to resolve."[106]  One EPA staff person sarcastically opened his review of the draft TMDL with mock enthusiasm: "This is going to be soooo much fun." [107]  Another complained that implementation through NPDES permits would be "U-G-L-Y" and "a hard sell."[108]

Separately, Ecology adopted guidance for what it calls "straight-to-implementation" plans ("STI"), which it considers "an alternative to the TMDL process."[109]  According to its own 2011 guidance, Ecology will "use STI instead of a TMDL" "only to address nonpoint pollution sources" where there are no individual NPDES permittees discharging the pollutant of concern, and where other criteria are met.[110]  Because several individual NPDES permittees discharge PCBs to the Spokane River, under the terms of Ecology's own guidance, the STI approach is not appropriate for Spokane River PCBs.[111]  In any event, no "STI plan" for PCBs in the Spokane River has been developed or adopted.

---

[105] AR 14A at 503 (bold added, italics in original).  A later version of *Spokane River Toxics Reduction Strategy*, issued after the start of this lawsuit, includes an edited version of these paragraphs  in which Ecology continues to assert that it "is not currently planning to develop a PCB TMDL."  AR 42 at 705 – 706.
[106] AR 80; *see also* AR 78 at 1278 - 1279; AR 79 at 1282; AR 81 at 1290; and AR 86 at 1305.
[107] AR 50 at 1021.
[108] AR 57 at 11038.
[109] AR 44 at 753.
[110] AR 44 at 785.
[111] AR 15 at 156; AR 90 at 1343 - 1345.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 17
No. 11-1759RSL

1

### F.    Issuance of NPDES permits for PCB discharges to the Spokane River

2

Meanwhile, the five-year terms of the Ecology-issued NPDES permits for the Spokane

3

River industrial and municipal PCB point sources had expired:[112]  Liberty Lake STP (issued

4

1998, expired 2003),[113] Spokane Riverside STP (issued 2000, expired 2005),[114] Kaiser

5

Aluminum (issued 1997, expired 2002),[115] and Inland Empire Paper (issued 1997, expired

6

2002).[116]

7

8

One reason for Ecology's delay in reissuing these permits was uncertainty about

9

appropriate conditions to control PCBs in the discharges.  Under NPDES permitting regulations,

10

these reissued permits must include water quality-based effluent limitations for PCBs.[117]

11

Ecology had anticipated these PCB effluent limits would be derived from the PCB TMDL's

12

wasteload allocations because a TMDL allocates responsibility for load reductions from sources

13

so that collective reductions will attain instream compliance with water quality standards.[118]

14

15

Only after its 2010 decision to not finalize the Spokane River PCB TMDL did Ecology

16

begin issuing these permits.[119]  During the public comment period, Plaintiffs, the Spokane Tribe,

17

and others objected to the permits' omission of appropriate numeric water quality-based effluent

18

limitations.[120]  Ecology's response to these concerns was twofold.

19

20

21

22

23

---

[112] Though NPDES permit terms may be no longer than five years, permits can remain in effect after their expiration dates.  40 C.F.R. §§ 122.6 and 122.46.

[113] AR 104 at 2340.

[114] AR 101 at 2063.

[115] AR 96 at 1726.

[116] AR 92 at 1509.

[117] 40 C.F.R. § 122.44(d); WAC 173-220-130(b).

[118] AR 104 at 2402.

[119] AR 91 (NPDES permit no. WA-000082-5 for Inland Empire Paper, issued Sept. 29, 2011); AR 95 (NPDES permit no. WA-000089-2 for Kaiser Aluminum, issued June 23, 2011); AR 103 (NPDES permit no. WA-004514-4 for Liberty Lake STP, issued June 23, 2011); AR 101 (NPDES permit no. WA-002447-3 for Spokane Riverside STP, issued May 25, 2011).

[120] AR 81 at 1289; AR 101 at 2143; AR 104 at 2394 – 2395; AR 97 at 1805, 1809 – 1813, 1826 – 1827.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 18
No. 11-1759RSL

First, Ecology asserted in *Catch-22* fashion that it need not incorporate water quality-based effluent limitations consistent with the draft wasteload allocations *precisely because* it had not finalized the TMDL.[121]  Ecology admitted this in the permit fact sheets:

> Ecology has not developed appropriate [water quality-based effluent limitations] for PCBs, so cannot place these in the final permit.  Ecology relies on the TMDL process, which considers all sources of PCB pollution (background, point and nonpoint sources) to set the appropriate [water quality-based effluent limitations].  Ecology will defer the [water quality-based effluent limitations] until Ecology completes the TMDL and assigns a [wasteload allocation] (or other conditions) applicable to the Permittee.[122]

and

> The draft PCB TMDL report assigns a [wasteload allocation] for Kaiser Aluminum of 0.32 mg/day (5.32 pg/L at 15.8 [million gallons per day]).  Since the TMDL is still draft, and has not been approved by the EPA, this [wasteload allocation] will not be included in the proposed permit.[123]

and

> For PCBs, the draft Spokane River PCB TMDL fully describes the analysis for meeting tribal water quality standards.  Since this TMDL is still draft, Ecology will not place the proposed [wasteload allocations] in this permit.[124]

Second, Ecology conditioned the permits to require monitoring and other activities, along with permittee participation in a "Regional Toxics Task Force."[125]  Ecology characterized these conditions as "definitive first steps to bring both State and Tribal waters into compliance with PCB receiving water criteria," and therefore purportedly adequate substitutes for the required water quality-based effluent limitations.[126]

---

[121] This assertion by Ecology contradicts state and federal law, which require inclusion in NPDES permits of water quality-based effluent limits for whatever pollutants present a reasonable potential to cause or contribute to violations of water quality standards even before TMDL development or approval.  40 C.F.R. § 122.44(d); WAC 173-220-130(b); National Pollutant Discharge Elimination System; Surface Water Toxics Control Program, Final Rule, EPA, 54 Fed.Reg. 23868, 23879 (June 2, 1989); *In the Matter of Las Virgenes Municipal Water Dist.*, State of Cal. State Water Res. Control Bd. Order No. WQ 98-11 (Nov. 19, 1998) at 11.

[122] AR 93 at 1645; *see also* AR 104 at 2402 (similar); *and* AR 97 at 1842 (similar).

[123] AR 96 at 1741; *see also* AR 92 at 1521 (similarly addressing draft wasteload allocation for Inland Empire Paper).

[124] AR 97 at 1847; *see also* AR 93 at 1650 (same).

[125] AR 101 at 2147; AR 92 at 1521; AR 93 at 1643; AR 91 at 1482 – 1485, AR 95 at 1695 – 1696, and AR 103 at 2317 – 2319.

[126] AR 97 at 1817; AR 93 at 1645.

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1

2        In late 2011, Ecology issued a first-time NPDES permit to Spokane County for its new

3   Spokane County Regional Water Reclamation Facility ("SCRWRF"), which Plaintiffs

4   challenged before the Washington Pollution Control Hearings Board.[127]  Plaintiffs and intervenor

5   Spokane Tribe, drawing on the Ninth Circuit's *Pinto Creek* decision, had for years contended

6   that the SCRWRF would be a "new discharger" that would contribute to violation of PCB water

7   quality criteria in the river.[128]  As such, 40 C.F.R. § 122.4(i) prohibited the permit's issuance

8   without a TMDL that reserved a wasteload allocation for PCBs in the new discharge.[129]

9
10       The Board found that the SCRWRF is a "new discharger" with reasonable potential to

11  cause or contribute to violations of PCB water quality criteria, but declined to invoke the 40

12  C.F.R. § 122.4(i) prohibition on permit issuance.[130]  The Board's decision to allow the permit

13  appears to be premised on the lack of an approved PCB TMDL.[131]

14       The Board did, however, find flaws in the SCRWRF permit.  Notably, the Board held

15  that the SCRWRF permit provisions addressing PCBs either do not qualify as "effluent

16  limitations" or are inadequate to ensure that the discharge does not contribute to PCB criteria

17  violations.[132]  These rejected provisions are identical or similar to those imposed in the Liberty

18  Lake STP, Spokane Riverside STP, Kaiser Aluminum, and Inland Empire permits, purportedly

19  as a means to control PCB discharges from these facilities.[133]

20

21

22

23

24  _____
    [127] AR 98; AR 99.
25  [128] AR 18 at 226; AR 85 at 1299; AR 100 at 2000 and 2031; AR 85 at 1297 – 1299.
    [129] *Friends of Pinto Creek,* 504 F.3d 1007.
26  [130] *Sierra Club, et al. v. Ecology, et al.*, PCHB No. 11-184 (Findings of Fact, Conclusions of Law, and Order, July
    19, 2013) at 1, 9, 21 – 22; *Sierra Club, et al. v. Ecology, et al.*, PCHB No. 11-184 (Order Granting Partial Summary
27  Judgment, Jan. 8, 2013).
    [131] *Sierra Club*. PCHB No. 11-184 (July 19, 2013)  at 19 – 20.
28  [132] *Id*. at 12 – 15 and 22 – 27.
    [133] Id. at 12; *compare* AR 98 at 1903 – 1905 *to* AR 91 at 1482 – 1485, AR 95 at 1695 – 1696, and AR 103 at 2317 –
29  2319.

PLAINTIFFS' MOTION FOR SUMMARY          Smith & Lowney, p.l.l.c.
JUDGMENT - 20                                     2317 East John Street
No. 11-1759RSL                               Seattle, Washington 98112
                                                  (206) 860-2883

In sum, Ecology took its own failure to finalize the PCB TMDL as permission to issue permits without required water quality-based PCB effluent limits, and to issue a permit to a brand new facility to discharge additional PCBs to the Spokane River contrary to EPA regulations. The Washington Pollution Control Hearings Board found the ineffectual PCB-control conditions that Ecology substituted in the permits to be inadequate as effluent limitations. In addition, also feeling empowered by Ecology's decision not to issue the PCB TMDL and its own acquiescence in this action, EPA is preparing to issue permits to the Idaho dischargers that, in draft form, also do not contain PCB effluent limits.[134]

G.    Plaintiffs' notice and procedural facts

Plaintiffs served their notice of intent to sue by letter dated July 18, 2011.[135] The initial complaint was filed on October 21, 2011.[136]

The Court granted intervention petitions filed by Kaiser Aluminum, Spokane County, the Department of Ecology, and the Spokane Tribe of Indians.[137]

The Court granted in part and denied in part Plaintiffs' motion on the scope of review.[138]

In early December 2012, Plaintiffs submitted various documents to defendant EPA requesting their inclusion in the administrative record and a determination regarding Ecology's constructive submission of the Spokane River PCB TMDL.[139] EPA responded on April 12, 2013, with a letter concluding "that Ecology has not constructively submitted to EPA a PCB TMDL for the Spokane River, and to the extent that such a constructive submission could be

---

[134] AR Supp. 11. Plaintiffs ask the Court to take judicial notice of the draft NPDES permits for the Hayden Area Regional Sewer Board, City of Post Falls, and City of Coeur d'Alene, released for public comment by EPA and posted on its website on or about July 18, 2013 (http://yosemite.epa.gov/r10/water.nsf/NPDES+Permits/Current+ID1319) and included in Attachment 3.
[135] Amended complaint (Dkt. 61) at Exh. 1.
[136] Complaint (Dkt. 1).
[137] Orders (Dkts. 18, 26, 28, 52).
[138] Order (Dkt. 49).
[139] AR docs B and C.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 21
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

considered to have occurred, EPA declines to disapprove such a constructive submission."[140]

# IV.    ARGUMENT

### A.    Ecology's decision to not complete the TMDL triggered EPA's nondiscretionary duty under 33 U.S.C. § 1313(d)(2).

After years of work and prioritization, including the submission to EPA of a complete draft TMDL, Ecology's public announcement of its decision to forgo the Spokane River PCB TMDL constituted a constructive submission of a TMDL to EPA, requiring its action under 33 U.S.C. § 1313(d).  Ecology's unambiguous expression of its intent to not submit a PCB TMDL invoked EPA's nondiscretionary duty under the CWA to approve or disapprove the constructive submission, and, if disapproved, to finalize and adopt a federal TMDL.  To allow Ecology and EPA to avoid completion of the TMDL would thwart the CWA objectives and the requirement that TMDLs be completed promptly.  It would also have real consequences for the Spokane River and those – including Spokane Tribal members and Plaintiffs' members – who want to eat fish taken from the river without risking the effects of PCB contamination on their health. Specifically, the continued and indefinite omission of wasteload allocation-based effluent limits from NPDES permits, which are essential to achieve reductions in PCB discharges by Spokane River point source polluters, damns the river to years more of unacceptably dangerous pollution.

### 1.    Clear and unambiguous expression of a state's intent to submit no TMDL for a particular 303(d) listing constitutes "constructive submission" of the TMDL.

The required development of a TMDL for each 303(d) listed pollutant is a crucial link in the CWA's "implementation chain," leading to attainment of water quality standards.[141]  The state must submit a proposed TMDL to EPA for review, and EPA then has only thirty days to

---

[140] AR doc. A at 4.
[141] *Pronsolino*, 291 F.3d at 1127 – 1129; *Dioxin/Organochlorine Center v. Clarke*, 57 F.3d 1517, 1520 (9th Cir. 1995).

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 22
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

approve or disapprove it.[142]  If EPA disapproves a state's TMDL, EPA has another thirty days to

adopt an acceptable TMDL.[143]  Wasteload allocations from the final TMDL then translate into

effluent limitations in NPDES permits.[144]

   To prevent states from refusing to develop or submit TMDLs and thereby defeating the

CWA scheme to achieve water quality standards, the Seventh Circuit in 1984 first adopted the

"constructive submission" doctrine for EPA's section 303(d) nondiscretionary duties.[145]  In this

seminal case, *Scott v. City of Hammond*, the court evaluated EPA's obligations when multiple

states failed to submit TMDLs for 303(d) listings in Lake Michigan:

> [W]e think the state's inaction here, in view of the short statutory deadlines, may
> have ripened into a refusal to act.  A refusal to act would amount to a
> determination that no TMDL is necessary and none should be provided.  In effect,
> we may have a 'constructive submission' of no TMDLs.  As a matter of law,
> under CWA § 303(d)(2), 33 U.S.C. § 1313(d)(2), a state determination to set no
> TMDLs must be reviewed by the EPA, and the EPA is then required to approve or
> disapprove the submission.  If EPA disapproves, it must set its own TMDLs.  *Id.*
> If the district court determines that the states have made a 'constructive
> submission' of no TMDLs, the failure of the EPA to act would amount to failure
> to perform a nondiscretionary duty.[146]

   *Scott* "was premised on the court's perception that EPA was handcuffed from acting until

a state had made an actual submission," and that viewing "the absence of a submission as a

submission itself" may be necessary to allow EPA to promulgate proper standards when the state

would otherwise thwart the CWA's purposes by withholding a TMDL.[147]

   The constructive submission doctrine has since been considered numerous times to

determine whether a state's *programmatic* failure to submit proposed TMDLs for *any and all* of

its 303(d)-listed waters invokes EPA's nondiscretionary duty to step in an develop and adopt

---

[142] 33 U.S.C. § 1313(d)(2); 40 C.F.R. §§ 130.7(d) and 130.10(b)(3).
[143] 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d)(2).
[144] 40 C.F.R. § 122.44(d)(1)(vii)(B); *Friends of the Earth v. EPA*, 446 F.3d 140, 143 (D.C. Cir. 2006); AR 24 at 305.
[145] *Scott v. City of Hammond*, 741 F.2d 992, 998 (7th Cir. 1984).
[146] Id., 741 F.2d at 997 – 998.
[147] *Northwest Environmental Advocates v. EPA*, 268 F.Supp.2d 1255, 1263 (D. Or. 2003).

TMDLs.[148]  In one such case, Judge Rothstein of this Court followed *Scott,* ruling that Alaska's failure to submit a single TMDL in over ten years constituted constructive submission.[149]  In that case, "common sense and the fact that Congress set out such short time lines" in 33 U.S.C. §1313(d) supported the proposition that EPA's affirmative duties are triggered when a state fails to submit TMDLs.[150]

There are adverse rulings on the "constructive submission" doctrine, but they involve very different facts.  The Ninth Circuit rejected a constructive submission claim in *San Francisco Baykeeper v. Whitman*, 297 F.3d 877 (9th Cir. 2002).  There, plaintiffs contended that because "California was years behind in implementing a TMDL program" EPA's nondiscretionary duty to develop TMDLs "for the entire state" had been activated.[151]  The Ninth Circuit reviewed the body of case law on constructive submission and held that the doctrine "is viable only when the state fails to submit any TMDLs and has no plans to remedy this situation."[152]  The court rejected the plaintiffs' claim because California had submitted some TMDLs and established a schedule for completing the remainder.[153]

The instant case is fundamentally and factually distinct from *San Francisco Baykeeper*. That case addressed *programmatic* constructive submission, in which the plaintiffs complained of a state's overall failure to submit any or an adequate number of TMDLs relative to the

---

[148] *E.g., American Littoral Society v. EPA,* 199 F.Supp.2d 217, 241 – 244 (D.N.J. 2002) (discussing cases); *Sierra Club v. Hankinson*, 939 F.Supp. 865 (N.D. Ga. 1996) (concerning the State of Georgia's submission of only two TMDLs in sixteen years); *Sierra Club, North Star Chapter v. Browner*, 843 F.Supp. 1304 (D. Minn. 1993) (concerning the State of Minnesota's failure to submit more than "a handful" of TMDLs over thirteen years).
[149] *Alaska Center for the Environment*, 762 F.Supp. at 1427.
[150] *Id.*
[151] *San Francisco Baykeeper*, 297 F.3d at 879 and 881.
[152] *Id.*, 297 F.3d at 882 (quotation marks omitted); *see also, American Littoral Society*, 199 F.Supp.2d at 241 – 242 (discussing *San Francisco Baykeeper*).
[153] *San Francisco Baykeeper*, 297 F.3d at 883.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 24
No. 11-1759RSL

universe of 303(d) listings of polluted waterbodies throughout its jurisdiction.[154]  In contrast, Plaintiffs here allege a narrow and specific constructive submission because of Washington's unambiguous decision to abandon and not submit *one particular* TMDL.  This constructive submission then abetted subsequent actions, i.e., issuance of NPDES permits, which benefited the recipients precisely because no TMDL and wasteload allocations were in place.

While the statewide-failure appears to be the most common type of constructive submission claim brought before the courts, three decisions specifically contemplate using the doctrine to address a single TMDL or a single 303(d) listed waterbody.  One of these is *Scott*, the original constructive submission case that concerned only Lake Michigan.[155]  Another is *Hayes v. EPA*, 264 F.3d 1017 (10th Cir. 2001).  *Hayes,* decided shortly after *San Francisco Baykeeper*, is a programmatic claim regarding Oklahoma's failure to submit any TMDLs.[156]  However, in following *San Francisco Baykeeper*, *Hayes* nonetheless returns to *Scott* for the language in which it couches the rule:[157]

> The constructive submission theory that we accept under the Clean Water Act's citizen-suit provision is necessarily a narrow one.  It applies only when the state's actions clearly and unambiguously express a decision to submit no TMDL for a particular impaired waterbody.[158]

Similarly, in the third case, *City of Arcadia v. EPA*, 411 F.3d 1103 (9th Cir. 2005), in which dischargers challenged EPA's approval of a TMDL for the Los Angeles River, the Ninth Circuit paraphrased its *San Francisco Baykeeper* holding in the single-TMDL context:  "The EPA is also under a mandatory duty to establish a TMDL when a State fails over a long period of

---

[154] Given Ecology's generally active TMDL program, a programmatic constructive submission claim would appear to be unviable in Washington State.  *San Francisco Baykeeper*, 297 F.3d at 882 – 883; AR 16; AR 17.
[155] *Scott*, 741 F.2d at 994.
[156] *Hayes*, 264 F.3d at 1022.
[157] *Hayes*, 264 F.3d at 1023 ("The constructive submission theory turns on whether the state has determined not to submit a required TMDL for a given impaired waterbody."  (*citing Scott*, 741 F.2d at 997)).
[158] *Hayes*, 264 F.3d at 1024.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 25
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    time to submit a TMDL; this 'prolonged' failure can amount to the 'constructive submission' of

2    an inadequate TMDL, thus triggering the EPA's duty to issue its own."[159]

3            **2.    Ecology has unambiguously announced that it will not submit the**
              **Spokane River PCB TMDL, and it has no plans to do so.**

4

5            Under the rule for constructive submission of a particular TMDL set forth by these cases,

6    the Court should grant summary judgment to Plaintiffs because in the entirety of the

7    circumstances here Ecology's actions clearly and unambiguously express a decision to submit no

8    TMDL for PCBs in the Spokane River.[160]

9

10           By all measures, Ecology should have completed the Spokane River PCB TMDL by now

11   and incorporated its wasteload allocations into NPDES permits.  Sections of the Spokane River

12   have been included on Washington's 303(d) list for PCB noncompliance since 1996, and the

13   Clean Water Act has required the prompt submission of the PCB TMDL since then.[161]  Under

14   the terms of the 1997 MOA between Ecology and EPA, Ecology was required to complete

15   TMDLs for all waterbodies on the 1996 303(d) list according to a schedule that extended only to

16   2013.[162]  This "TMDL Submittal" schedule placed the Spokane River in the group of

17   waterbodies for which each TMDL was to be submitted in 1998, 2001, 2006, or 2011.[163]  To

18   meet this schedule, Ecology identified the Spokane River PCB TMDL as a priority for its

19   specialized technical staff, first in 2000 and every year thereafter until 2010.[164]  The law requires

20   Ecology to develop TMDLs in accordance with their priority rankings.[165]

21

22

23

24

25   [159] *City of Arcadia*, 411 F.3d at 1105.
26   [160] *Id*.; *Hayes*, 264 F.3d at 1024.
     [161] AR Supp. 1 at 2732; *Alaska Center for the Environment*, 762 F.Supp. at 1427 (*citing Scott*, 741 F.2d at 998).
27   [162] AR 32 at 441.
     [163] AR 33.
28   [164] AR 105 at 2422; AR 106 at 2431 and 2434; AR 107; AR 108 at 2448; AR 109 at 2462 – 2463; AR 110 at 2475 –
     2476; AR 111 at 2479; AR 112; AR 113 at 2493; AR 114; AR 115 at 2508; AR 116; AR 117 at 2524; AR 118; AR
     119 at 2539; AR 120; AR 121 at 2552; AR 122; AR 123 at 2571; AR 124 at 2590.
29   [165] 33 U.S.C. §1313(d)(1)(C); 40 C.F.R. § 130.7(c)(1).

PLAINTIFFS' MOTION FOR SUMMARY          Smith & Lowney, p.l.l.c.
JUDGMENT - 26                                    2317 East John Street
No. 11-1759RSL                              Seattle, Washington 98112
                                                   (206) 860-2883

In 2006 (consistent with the 1997 MOA TMDL submittal schedule[166]), Ecology completed a draft of the TMDL, and shared that draft with EPA and the public for comment.[167] EPA did not deem the draft incomplete or improper in any aspect, and it contains all required elements, including wasteload allocations for point sources and load allocations for non-point sources. Ecology, however, decided that it needed additional stormwater and fish tissue monitoring data to complete the TMDL.[168]

Ecology collected that additional data in 2007 and incorporated it into the draft TMDL.[169] Instead of finalizing the Spokane River PCB TMDL for submission to EPA, Ecology converted its work into a non-TMDL by omitting the wasteload allocations and load allocations, against which it expected stiff opposition from the NPDES permittees, omitting TMDL boilerplate language, and changing the name of the document.[170] This way, Ecology sought to avoid "a protracted political and legal struggle that may take a decade to resolve," and the "U-G-L-Y" "hard sell" that putting wasteload allocation-based effluent limits in NPDES permits would entail.[171] The PCB TMDL was then published in April 2011 as the *Source Assessment*.[172]

Ecology then published a companion document, the *Spokane River Toxics Reduction Strategy*, outlining its plans.[173] This publication unequivocally announced Ecology's decision to forgo completion and submission to EPA of a Spokane River PCB TMDL: "*Ecology is not*

---

[166] AR 33.
[167] AR 14A at 503; AR 48; AR 90; *Sierra Club*, PCHB No. 11-184 (July 19, 2013), at 4 – 5.
[168] AR 54.
[169] AR 66 at 1078; AR 77.
[170] AR 75 at 1269; AR 82 at 1293; AR 74; AR 77 at 1277.
[171] AR 80; AR 57 at 11038; *see also* AR 78 at 1278 - 1279; AR 79 at 1282; AR 81 at 1290; and AR 86 at 1305.
[172] AR 15.
[173] AR 14A.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 27
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    *planning to develop a PCB TMDL with wasteload allocations ....*"[174]  Instead of a TMDL,

2    Ecology announced its plan to adopt a "straight-to-implementation" plan ("STI").[175]  As

3    Ecology's guidance makes clear, STI is an alternative to development of a TMDL: "STI provides

4    a tool to clean up a watershed without having to develop a TMDL."[176]  Ecology has thus publicly

5    declared that a Spokane River PCB TMDL is not needed, and that it does not plan to complete

6    one.  This, particularly following the submission to EPA of a public review draft TMDL in 2006,

7    is the constructive submission of the Spokane River PCB TMDL to EPA.[177]

8

9            With regard to future action, the record reveals that Ecology considers a Spokane River

10   PCB TMDL to be an optional tool perhaps to be used at some future date if the Regional Toxics

11   Task Force fails to make "measurable progress toward meeting applicable water quality criteria

12   for PCBs" on an unspecified timeline.[178]  This formulation appears not only in Ecology's

13   correspondence to EPA and the Spokane River Toxics Reduction Strategy document, but also in

14   the NPDES permit provisions requiring the point source dischargers to participate in the

15   Regional Toxics Task Force. [179]  The formulation always lacks any definition or sense of what

16   would constitute "measurable progress" and what activities or metrics would cause Ecology to

17   reconsider its decision that a Spokane River PCB TMDL "with wasteload allocations" is

18

19

20

21

22

23   _____

[174] AR 14A at 503 (emphasis added).  *See* more extensive quotation at text at footnote 106, *supra*.  *See also*, revised
Spokane River Toxics Reduction Strategy, AR 42 at 706, which states that Ecology "is not currently planning to
develop a PCB TMDL."

24

[175] AR 14A at 503; AR 84; AR 86 at 1305 - 1307

25   [176] AR 44 at 784 (also identifying criteria for circumstances in which Ecology "may use STI in lieu of a TMDL
….").  As noted *infra*, the Spokane River does not qualify for a PCB STI under Ecology's STI guidance, and no STI
plan has yet been adopted.  AR 90 at 1343 - 1345.

26

[177] *City of Arcadia*, 411 F.3d at 1105 – 1106 (*citing San Francisco Baykeeper*, 297 F.3d at 880 – 884); *Hayes*, 264
F.3d at 1024.

27

[178] AR 1 at 2; *see also* AR 42 at 706.

28   [179] AR 1 at 2; AR 14A at 503; AR 98 at 1903 – 1905; AR 91 at 1482 – 1485, AR 95 at 1695 – 1696, and AR 103 at
2317 – 2319; *see also* AR 132 at 2670.

29

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1  unnecessary.[180]  Indeed, the Pollution Control Hearings Board pointedly faulted the permit

2  language as lacking an objective standard for meeting task force goals and any specified dates

3  for their achievement, and directed that the Task Force requirement be subordinate to remand

4  conditions requiring imposition of effluent limits.[181]  Instead of completing the TMDL and

5  assigning wasteload allocations, Ecology has through these "frail" permit conditions set up a task

6  force controlled by the NPDES dischargers, to develop a plan with no comprehensible goals,

7  activities, or deadlines.[182]  Further, in describing its future plans to EPA and in the permits,

8  Ecology does *not* commit to preparing a TMDL *even if* no "measurable progress" is made – it

9  explicitly retains its asserted option to "determine an alternative to ensure water quality standards

10 are met," instead of a TMDL.[183]  In sum, Ecology has made it clear that it will not adopt a PCB

11 TMDL for the Spokane River in any reasonable or measureable time frame.  This cannot

12 constitute a plan to "remedy this situation" of no TMDL for Spokane River PCBs.[184]

13

14         **B.**    **EPA is liable for failing to perform its nondiscretionary duty.**

15

16         There is no dispute that EPA has not approved or disapproved the documents, statements,

17 and plans constituting Ecology's constructive submission.[185]  Nor has EPA itself undertaken to

18 finalize a Spokane River PCB TMDL.  Thus, EPA has failed to perform its nondiscretionary

19 duty required by law.[186]  It is liable for this failure under the CWA citizen suit provision.[187]

20

21

22

23

24

25

26

27

28

29

---

[180] AR 1 at 2; AR 14A at 503; AR 98 at 1903 – 1905; AR 91 at 1482 – 1485, AR 95 at 1695 – 1696, and AR 103 at 2317 – 2319; *see also* AR 132 at 2670.
[181] *Sierra Club*, PCHB No. 11-184 (July 19, 2013) at 15 and 26.
[182] *Sierra Club*, PCHB No. 11-184 (July 19, 2013) at 14, 25, and 26
[183] AR 1 at 2; AR 98 at 1905; AR 91 at 1484; AR 95 at 1696; AR 103 at 2319; *see also* AR 99 at 1970 (PCB TMDL is merely an "option" if the task force is not "successful").
[184] *San Francisco Baykeeper*, 298 F.3d at 882;
[185] AR document A.
[186] 33 U.S.C. § 1313(d)(2); 40 C.F.R. §§ 130.7(d).
[187] 33 U.S.C. § 1365(a)(2).

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 29
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1

**C.    Plaintiffs' notice of intent to sue is sufficient.**

2

3    Plaintiffs' July 18, 2011, notice of intent to sue satisfies statutory and regulatory

4    requirements.  It adequately describes EPA's legal failures, was served in the required manner on

5    the necessary recipients, fully identifies Plaintiffs and their counsel, and was served more than

6    sixty days before the filing of this lawsuit.[188]

7

**D.    Plaintiffs have standing to sue.**

8

9    Plaintiffs have standing to sue on behalf of their members who would have standing to

10    sue in their own right, the interests at stake are germane to Plaintiffs' organizational purposes of

11    environmental protection, and neither the claim asserted nor the relief requested requires the

12    participation of Plaintiffs' individual members.[189]

13

14    To support their standing, Plaintiffs submit the declarations of two of their members,

15    John Osborn and Gunnar Holmquist, both medical doctors who live and work in Spokane.[190]

16    Both have suffered "injury in fact," the first requirement for an individual's standing, because

17    they have aesthetic, recreational, and professional interests in the Spokane River about which

18    they have reasonable concerns of impairment due to EPA's failure to develop a PCB TMDL.[191]

19

20    Osborn lives on the Spokane River gorge, in view of the river, and frequently walks

21    along the river.[192]  He would like to fish in the Spokane River and eat his catch, and to swim in

22    the river, but he is afraid of the PCB contamination in the river and so refrains from these

23

24

25

26    [188] Amended complaint (Dkt. 61) at Exh. 1; 33 U.S.C. §1365(b)(2); 40 C.F.R. §§ 135.2(b) and 135.3; *Waterkeepers Northern California.*, 375 F.3d at 920

27    [189] *Friends of the Earth*, 528 U.S. at 180.

    [190] Declaration of John Osborn, M.D., ¶¶ 1 - 2; Holmquist, Dec., ¶¶ 1 – 2.

28    [191] *Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1147, 1151 (9th Cir. 2000); *Friends of the Earth*, 528 U.S. at 183-84.

29    [192] Osborn Dec. ¶ 3.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 30
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

activities.[193]  He has been incredibly active in efforts to protect and restore the Spokane River,

having spent "in excess of 10,000 hours" volunteering for the sake of the river.[194]

Holmquist's Spokane home of 19 years is located directly adjacent to the Spokane

River.[195]  He frequently walks up and then floats back down the section of the river at his home,

sometimes with his teenage son.[196]  He has educated himself about his community's toxic

pollution issues and is familiar with the river's PCB contamination problem.[197]  As a result, he

worries about the effects of this time in the river on his son's health and his own, as well as that

of his dogs that drink from the river.[198]  It is possible to fish and harvest crayfish from the

Spokane River from his home, and Holmquist has friends who fly fish from his property.[199]  He

would like to share a meal of his friends' catch, and to harvest and eat crayfish that he could

catch near his home, but he will not eat anything from the river because he fears the health

effects of PCB pollution.[200]  As a family doctor, Holmquist feels obligated to warn his patients

about the dangers of Spokane River fish consumption, and is angry about this and worries about

the effects of PCB contamination on the health of his patients and the Spokane community.[201]

These injuries satisfy the second prong of the standing requirement because they are

"fairly traceable" to the lack of a PCB TMDL and EPA's failure to adopt one.[202]  As Osborn

explains, the lack of a TMDL is a large part of why the NPDES-permitted polluters are not being

forced to reduce their PCB loadings to meet numeric effluent limitations that are protective of

---

[193] Id., ¶¶ 3 – 4.
[194] Id., ¶¶ 5 – 10.
[195] Holmquist Dec., ¶ 3.
[196] Id., ¶ 5.
[197] Id., ¶ 4.
[198] Id., ¶¶ 5 and 6.
[199] Id., ¶¶ 7 – 8.
[200] Id., ¶¶ 7 – 8.
[201] Id., ¶ 9.
[202] *Natural Resources Defense Council v. Southwest Marine, Inc.*, 236 F.3d 985, 994 - 995 (9th Cir. 2000).

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 31
No. 11-1759RSL

1
2

human health.[203]  In essence, the lack of a TMDL is delaying reductions of PCB loading to the river and contributing to the continuation of these individuals' injuries.

3
4
5
6

The third standing prong, redressability, is satisfied by Plaintiffs' allegations of ongoing violation and request for injunctive relief in the form of an order directing EPA to finalize and adopt a Spokane River PCB TMDL.[204]

7

### E.    The Court should order EPA to prepare the TMDL.

8
9
10
11
12

Under the CWA citizen suit provision, the Court has broad discretion in ordering injunctive relief.[205]  To implement the CWA, the Court should order EPA to adopt a Spokane River PCB TMDL within 90 days because the work has already been done to prepare a technically sound TMDL.

13
14
15
16
17
18
19
20

To obtain a permanent injunction, a plaintiff must show (1) that it has suffered an irreparable injury, (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury, (3) that a remedy in equity is warranted, considering the balance of hardships between the plaintiff and defendant, and (4) that the public interest would not be disserved by a permanent injunction.[206]  The Supreme Court has explained that "[e]nvironmental injury, by its nature, can seldom be adequately remedied by money damages and is often permanent or at least of long duration, i.e., irreparable.  If such injury is sufficiently likely,

21
22
23
24
25
26
27
28
29

---

[203] Osborn Dec., ¶ 10.
[204] *Natural Resources Defense Council*, 236 F.3d at 994 – 995; Osborn Dec., ¶ 11; Holmquist Dec., ¶ 10; Amended complaint (Dkt. 61) at 12.
[205] 33 U.S.C. § 1365(a); *Natural Resources Defense Council*, 236 F.3d at 999 – 1000; *Alaska Center for the Environment*, 20 F.3d at 986 – 987; *Rosemere Neighborhood Ass'n v. Clark County*, 2011 U.S. Dist. LEXIS 148973, *12 (W.D. Wash. 2011) (*citing Weinberger v. Romero-Barcelo*, 456 U.S. 305, 320 (1982)).
[206] *Western Watersheds Project v. Abbey*, 719 F.3d 1035, 1054 (9th Cir. 2013) (quotation marks and citations omitted).

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 32
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1   therefore, the balance of harms will usually favor the issuance of an injunction to protect the

2   environment."[207]

3         The injury Plaintiffs suffer is the lack of a TMDL for PCBs in the Spokane River; that is,

4   the omission of the "link in an implementation chain" to the end of attaining the CWA's goals,

5   which is "central to the [CWA's] water-quality scheme because … [TMDLs] tie together point-

6   source and nonpoint source pollution issues in a manner that addresses the whole health of the

7   water."[208]  Because there is no TMDL, there are no PCB wasteload allocations for the Spokane

8   River NPDES permittees and, thus, no wasteload allocation-consistent water quality-based

9   effluent limitations in the NPDES permits issued to Washington and Idaho Spokane River

10  dischargers.  As a result, the PCB sources are not being required to reduce their PCB

11  contributions to the river to levels needed to restore the river to compliance.[209] As a result, it is

12  not only likely but probable that dangerous PCB levels in the river and its fish will persist for

13  years.  The result of EPA's inaction to remedy the state's failure constitutes irreparable injury for

14  which there is no adequate remedy at law.[210]

15        The balance of hardships also favors an order requiring EPA to adopt the TMDL.  As is

16  "usual," the mere likelihood of irreparable environmental harm favors an injunction.[211]  The

17  harm to the plaintiffs if no injunction is issued will be an extended period of irreparable injury

18  from toxic pollution in the river.  The harms to the defendants if an injunction is issued comprise

19  the expenditure of agency resources to satisfy CWA requirements and, for the defendant-

20  intervenor dischargers, the expenditure of resources to comply with tighter NPDES permit limits

[207] *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 544 – 545 (1987).
[208] *Pronsolino*, 291 F.3d at 1129; *Meiberg*, 296 F.3d at 1025 (internal quotation marks omitted).
[209] *See* notes 116 through 132, *supra*, and accompanying text.
[210] *Amoco Prod. Co.*, 480 U.S. at 544 – 545; *Idaho Watersheds Project v. Hahn*, 307 F.3d 815, 833 (9th Cir. 2002) ("Environmental injury of 'long duration,' here ongoing for at least fifteen years and expected for at least another six years until the required studies are completed, is 'irreparable.'"  (*citing Amoco Prod. Co.*, 480 U.S. at 545)).
[211] *Amoco Prod. Co.*, 480 U.S. at 545; *Rosemere Neighborhood Ass'n*, 2011 U.S. Dist. LEXIS at *20 - *21.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 33
No. 11-1759RSL

on PCB discharges as the CWA requires.  Notably, Ecology and EPA have formally agreed that EPA's leadership is appropriate when a TMDL presents "cross border issues," such as those here involving PCBs moving down the Spokane River from Idaho into Washington and then onto the Spokane Indian Reservation.[212]  Further, under the terms of the 1997 settlement agreement, EPA expressly agreed to "take all steps necessary to ensure that TMDLs for all [303(d)-designations] on the 1996 Section 303(d) list are completed by June 30, 2013, … through establishment of TMDLs or approval of the TMDLs submitted by [Washington]."[213]

Finally, an order directing EPA to promptly adopt a Spokane River PCB TMDL is in the public interest.  First, the adoption of a TMDL is an important implementation step towards attainment of the national goals for water quality set forth in the CWA.[214]  By Congress' design of the crucial water quality planning requirements of Section 303, implementation of the TMDL is essential "to restore and maintain the chemical, physical, and biological integrity" of the Spokane River – the objective of the CWA.[215]  Second, it is EPA's duty under the law to adopt the TMDL, and it is in the public interest to convey to the public the importance of having government agencies fulfill their legal obligations and comply with the law.[216]

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for summary judgment and order EPA to adopt a TMDL for PCBs in the Spokane River within 90 days.

---

[212] AR 46 at 924.
[213] AR 32 at 447.
[214] *Pronsolino*, 291 F.3d at 1129; *Meiberg*, 296 F.3d at 1025; 33 U.S.C. § 1251(a).
[215] 33 U.S.C. § 1251(a).
[216] *Sierra Club v. U.S. Army Corps of Engineers*, 645 F.3d 978, 997 (8th Cir. 2011); *Rosemere Neighborhood Ass'n*, 2011 U.S. Dist. LEXIS at *23.

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 34
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

RESPECTFULLY SUBMITTED this 20th day of September, 2013.

Smith & Lowney, pllc

By: s/Richard A. Smith
Richard A. Smith, WSBA #21788
Attorneys for Plaintiff
2317 E. John St.,
Seattle, WA 98112
Tel: (206) 860-2124
Fax: (206) 860-4187
E-mail: rasmithwa@igc.org

PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT - 35
No. 11-1759RSL