Honorable Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| SIERRA CLUB; and CENTER FOR ENVIRONMENTAL LAW AND POLICY, | No. 2: 11-cv-01759-RSL |
| Plaintiffs, and | SPOKANE TRIBE OF INDIANS' MOTION FOR SUMMARY JUDGMENT |
| SPOKANE TRIBE OF INDIANS, | NOTE ON MOTION CALENDAR: |
| Plaintiff-Intervenor, | February 11, 2014 |
| v. | (see order on briefing schedule (Dkt. 74)) |
| DENNIS McLERRAN; GINA McCARTHY and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY | |
| Defendants, and | |
| SPOKANE COUNTY: KAISER ALUMINUM WASHINGTON LLC; and STATE OF WASHINGTON DEPARTMENT OF ECOLOGY, | |
| Defendant-Intervenors. | |

SPOKANE TRIBE OF INDIANS  
MOTION FOR SUMMARY JUDGMENT -1  
No. C11-1759RSL

**OFFICE OF THE SPOKANE TRIBAL ATTORNEY**  
P.O. Box 100  
Wellpinit, WA 99040  
(509) 953-1908

**Table of Contents**

Table of Authorities………………………………………………………………………………..3-4

Introduction and Summary…………………………………………………………………………..5

I. Facts involved in the Tribe's Claims...………………………………………………………5-8

II. Legal Standards…………………………………………………………………………..8-11

    A. Clean Water Act ……………………………………………………………….…......8-9

    B. Trust Responsibility…………………………………………………………………....9-10

    C. Administrative Procedures Act...……………………………………………………….10-11

III. Argument……………………………………………………………………………….......11

    A. The Tribe has standing…………………………………………………………………11-12

    B. EPA is violating the Clean Water Act and its trust responsibility by failing to perform its nondiscretionary duty under 33 U.S.C. § 1313(d)(2)……………………………..12-15

    C. EPA violated the APA…………………………………………………………………….15-16

IV. Conclusion………...……………………………………………………………………...…….16

SPOKANE TRIBE OF INDIANS  
MOTION FOR SUMMARY JUDGMENT -2  
No. C11-1759RSL

**OFFICE OF THE SPOKANE TRIBAL ATTORNEY**  
**P.O. Box 100**  
**Wellpinit, WA 99040**  
**(509) 953-1908**

...

## TABLE OF AUTHORITIES

**CASES**

*City of Albuquerque v. Browner*
97 F.3d 415 (10th Cir. 1996)……………………………………………………………………...9

*City of Arcadia v. United States Environmental Protection Agency*
411 F.3d 1103 (9th Cir. 2005)……………………………………………………………………..9

*HRI, Inc. v. EPA*
198 F.3d 1224 (10th Cir. 2000)……………………………………………...………………10, 12

*Idaho Sportsmen's Coalition v. Browner*
951 F.Supp. 962 (W.D.Wash. 1996)……………………………………….........10, 11, 13, 14

*MATCH–E–BE–NASH–SHE–WISH BAND OF POTTAWATOMI INDIANS v. Patchak*
132 S.Ct. 2199 (2012)……………………………………………………………………………11

*Montana v. Blackfeet Tribe*
471 U.S. 759 (1985)……………………………………………………………………………10, 12

*Montana v. Environmental Protection Agency*
137 F. 3d 1135 (9th Cir. 1998)……………………………………………………………………9

*Morongo Band of Mission Indians v. FAA*
161 F. 3d 569 (9th Cir. 1998)……………………………………………………………………12

*Nance v. Environmental protection Agency*
645 F.2d 701 (9th Cir. 1981)…………………………………………………………………….10

*Navajo Nation v. Department of Health & Human Services, Secretary*
325 F.3d 1133 (9th Cir. 2003)(en banc)……………………………………………………...10 at FN 4

*Northern Pac. Ry. Co. v. Wismer*
246 U.S. 283 (1918)……………………………………………………………………………….5

*NW Sea Farms, Inc. v. United States Army Corps of Eng'rs*
931 F. Supp. 1515 (W.D. Wash. 1996)………………………………….9, 10 at FN 4, 15 at FN 6

*Parravano v. Babbitt*
70 F.3d 539 (9th Cir. 1995)…………………………………………………….9, 10, 12, 15, 16

*San Francisco Baykeeper v. Whitman*
297 F.3d 877 (9th Cir. 2002)…………………………………………………………………….14

*Spokane Tribe of Indians v. United States*
163 Ct.Cl. 58, 5 (1963)……………………………………………………………………………6

*United States v. Anderson*
591 F.Supp. 1 (E.D. Wash. 1982)…………………………………………………………………6

*United States v. Anderson*
736 F.2d 1358 (9th Cir. 1984)…………………………………………………………………….6

**STATUTES**

5 U.S.C. § 706………………………………………………………………...……………15, 16

16 U.S.C. § 835d……………………………………………………………………...……………6

33 U.S.C. § 1251(a)……………………………………………………………………...…………12

33 U.S.C. § 1313…………………………………………………………………………...…………9

33 U.S.C. § 1313(d)……………………………………………………………………………12, 14

33 U.S.C. § 1313(d)(2)…………………………………………………………………………12, 14

33 U.S.C. § 1377(e)…………………………………………………………………...…………8, 9, 12

**REGULATIONS**

40 C.F.R. § 122.44(d)(1)(vii)(B)……………………………………………………………9, 12, 14

40 C.F.R. § 122.4(d)……………………………………………………………………………...…9

40 C.F.R. § 130.7(c)(1)…………………………………………………………………………12, 14

40 C.F.R. § 130.7(d)(1)…………………………………………………………………………12, 14

**OTHER**

President Hayes, Executive Order, January 18, 1881, 1880 WL 32483 (Exec. Ord.)…………….5

1984 EPA Indian Policy, available at http://www.epa.gov/tp/pdf/indian-policy-84.pdf (last visited August 28, 2013)……………………………………………………………………...10 at FN 3

The Indian Trust Responsibility: Protecting Tribal Lands and Resources Through Claims of Injunctive Relief Against Federal Agencies, Mary Christina Wood, 39 TULSA L. REV 355, 362 (Winter 2003)……………………………………………………………….10 at FN 2, 16 at FN 6

SPOKANE TRIBE OF INDIANS
MOTION FOR SUMMARY JUDGMENT -4
No. C11-1759RSL

**OFFICE OF THE SPOKANE TRIBAL ATTORNEY**
**P.O. Box 100**
**Wellpinit, WA 99040**
**(509) 953-1908**

Preliminarily, the parties in this case agreed to truncated page limits for all of the Intervenors to limit redundancy in briefing while allowing the parties to present their arguments to the Court in an efficient manner. The Spokane Tribe ("Tribe") hereby incorporates by reference the entirety of Sierra Club's and CELP's Motion for Summary Judgment and hereby joins in that Motion. (Dkt. 81). Herein, the Tribe seeks to supplement, not repeat arguments advanced by Sierra Club and CELP, and to raise arguments relevant to the Tribe's specific claims and legal standards that it brought in its complaint in intervention, and also moves for summary judgment on these additional claims.

In summary, the Environmental Protection Agency's ("EPA") failure to act under the Clean Water Act ("CWA" or "Act") violates the mandates of the Act, and in addition the Administrative Procedures Act ("APA") because EPA's inaction results in a failure to protect the Tribe's water quality standards, the Tribe's trust resources, and leaves generations of Tribal members unable to safely exercise their fishing rights that are guaranteed by Executive Order and statute. The Tribe and its members' use of the Spokane River and its resources have been and remain substantially harmed by EPA's failure to act.

**I. Facts involved in the Tribe's Claims**

The Tribe's Reservation was established in August of 1877 after the Tribe was forced from its land by the United States government. *Northern Pac. Ry. Co. v. Wismer*, 246 U.S. 283, 288 (1918). The Tribe's Reservations' borders are the East Bank of Chamokane Creek, the South Bank of the Spokane River, the West Bank of the Columbia River and the Northern Border is the 48th parallel. 1880 WL 32483 (Exec.Ord.). The borders of the Reservation were set in this fashion to include the entirety of the water bodies bordering it to ensure that the Tribe could access "fishing areas and to fish for food" which is one of the primary purposes of the

SPOKANE TRIBE OF INDIANS  
MOTION FOR SUMMARY JUDGMENT -5  
No. C11-1759RSL

**OFFICE OF THE SPOKANE TRIBAL ATTORNEY**  
P.O. Box 100  
Wellpinit, WA 99040  
(509) 953-1908

Reservation.  *See United States v. Anderson*, 591 F.Supp. 1, 5 (E.D. Wash. 1982), *affirmed in part, reversed in part on other grounds by United States v. Anderson* , 736 F.2d 1358 (9th Cir. 1984).  The Tribe has unquantified water rights with a priority date of 1877 within the Spokane River, which also include a right to water of a quality that can sustain fish and other aquatic life. *See id*.  Additionally, the Tribe's ancestral lands include the entirety of the Spokane River as it flows through what is now Washington State.  *Spokane Tribe of Indians v. United States*, 163 Ct.Cl. 58, 5 (1963).

In addition to these rights and interests, the Tribe was granted "paramount use" of a portion of Lake Roosevelt for fishing, hunting, and boating when Grand Coulee Dam inundated a portion of the Tribe's reservation.  16 U.S.C. § 835d.  Lake Roosevelt encompasses portions of the Spokane River, and the Columbia River.  (AR 15 at 76).

The Tribe's membership lives within the Reservation and throughout the region. (AR Supp. 10 at ¶ 17).  Many members exercise their fishing rights within the portion of the Spokane River that is contained within the Reservation, but also recreate and fish throughout their ancestral lands, including all portions of the Spokane River.  (AR Supp. 10 at ¶¶ 16, 17)  The Tribe's membership utilizes the surface and ground waters of the Reservation, including the Spokane River, for ceremonial and subsistence purposes.  (AR Supp. 10 at ¶ 16, AR 15 at 80). The Tribe operates several campgrounds on the banks of the Spokane River, and operates a Marina and Resort at the confluence of the Spokane and Columbia Rivers. (AR Supp. 10 at ¶ 16).

The Tribe applied for and was granted treatment in the same manner as a state status ("TAS") in 2002 under the CWA, and its first water quality standards ("WQS") were approved by EPA in April 2003.  (AR Supp. 10 at ¶ 8-9).  The Tribe obtained TAS to help improve the

SPOKANE TRIBE OF INDIANS  
MOTION FOR SUMMARY JUDGMENT -6  
No. C11-1759RSL

**OFFICE OF THE SPOKANE TRIBAL ATTORNEY**  
 P.O. Box 100  
 Wellpinit, WA 99040  
 (509) 953-1908

quality of the Tribe's waters for resident fish, cultural and subsistence use, but also to help prepare the Tribe's water for the eventual return of anadromous fish once fish passage is achieved at Chief Joseph and Grand Coulee Dams. (AR Supp. 10 at ¶ 12).

Within the Tribe's current WQS, the fish consumption rate ("FCR") is set at 86.3 grams/per day, and results in a surface water quality standard of 3.37 pg/l for PCBs. (AR Supp. 10 at ¶ 10). Ecology explains the Tribe's standards in this way:

> The Spokane Tribe human health PCB water quality criterion of 3.37 pg/l (parts per quadrillion) was used as the basis for calculating necessary PCB load reductions. The criterion is equivalent to 0.1 ng/g (parts per billion) in edible fish tissue. Although this criterion only applies to the Spokane Arm and lower half of the Little Falls reservoir, it cannot reasonably be met within these bounds unless PCB concentrations in upstream reaches are reduced to levels near the criterion. Washington State's human health criteria for PCBs is 170 pg/l (5.3 ng/g in fish tissue), the difference primarily being due to assumptions about human consumption rates of fish.

(AR 15 at 77). Washington's FCR is currently set at the outdated 6.5 grams/per day (AR 15 at 85) which is much less protective than the Tribe's 86.3 grams/per day or Oregon's newly EPA approved and adopted 175 grams/per day. (AR Supp. 10 at ¶ 14). FCRs are designed to protect the human consumption of fish at certain levels, and the varying rates from low to high indicate the level of protection for fish consumers. (*See* AR Supp. 8 at 3000(discussing the importance of fish tissue levels in the context of PCB TMDLs)).

The Washington State Department of Ecology ("Ecology") described the Spokane River's PCB problem as:

> Total PCB concentrations in water increased with successive reaches moving downstream from the Idaho border (106 pg/l, parts per quadrillion) to lower Lake Spokane (formerly Long Lake; 399 pg/l), with a corresponding eight-fold increase in loads (477 – 3,664 mg/day), on average. The Washington State PCB human health criterion for surface water is 170 pg/l. Although PCB concentrations in Spokane River fish are generally much lower than historical levels, fish in most areas did not meet the state's human health criterion in edible tissue (5.3 ng/g, parts per billion).

(AR 15 at 73, AR 90 at 1331). Long Lake Dam is 1.4 river miles from the Tribe's eastern border. (AR 15 at 88). The portion of the Spokane River that flows across the Reservation does not meet the Tribe's water quality standards. (AR Supp. 10 at ¶ 13). Ecology states that the Tribe's standards "cannot reasonably be met within these bounds unless PCB concentrations in upstream reaches are reduced to levels near the criterion." (AR 15 at 77, AR 90 at 1402). In the Draft PCB TMDL, it was determined that between a 95-99% reduction in upstream PCB discharges was necessary to meet the Tribe's water quality standards for PCBs. (AR 90 at 1331).

Since the early 1980s, Washington has known about the Spokane River's PCB problem. (AR 15 at 80). The River's PCB problem has been extensively studied. (AR 15 at 94).[1] The Spokane River has the highest dissolved levels of PCBs in the State. (AR Supp. 6 at 2812-2816, 2827). In 2011 the Washington State Department of Health ("DOH"), concluded that eating fish at recreational levels from the Spokane River (42 grams per day)[2] caused a "significant impact on lifetime cancer risk." (AR Supp. 7 at 2950). EPA officials have been notified, and are aware of the need to meet the Tribe's water quality standards in a PCB TMDL. (AR 2; AR 48; AR 81 at 1288-90; AR 85 at 1299).

## II. Legal Standards

### A. Clean Water Act

In 1987 Congress amended the Clean Water Act, and authorized the Administrator of EPA to treat Indian Tribes as States for certain listed sections of the Act. 33 U.S.C. § 1377(e).

---

[1] In a recent opinion piece, an Ecology official stated, "[t]he Spokane River is one of the most studied rivers in our state." *Available at* http://www.spokesman.com/stories/2013/aug/24/cleanup-how-far-how-fast/ (last visited September 16, 2013). Pursuant to FRE 201, the Tribe requests judicial notice of this recent article.

[2] 42 grams per day is less than half the Tribe's EPA approved fish consumption rate of 86.3 grams per day, and much less than the 142 grams per day EPA recommends for subsistence use. (AR 15 at 86)

SPOKANE TRIBE OF INDIANS  
MOTION FOR SUMMARY JUDGMENT -8  
No. C11-1759RSL

**OFFICE OF THE SPOKANE TRIBAL ATTORNEY**  
P.O. Box 100  
Wellpinit, WA 99040  
(509) 953-1908

Tribes granted treatment in the same manner as a state status ("TAS") can adopt water quality standards under Section 1313, and take advantage of other benefits under the Act. *Id*. Tribes adopted water quality standards can be more stringent than federal and state standards, and can be enforced by EPA upon upstream dischargers. *City of Albuquerque v. Browner*, 97 F.3d 415, 423-24 (10th Cir. 1996); *see also Montana v. Environmental Protection Agency*, 137 F. 3d 1135, 1140-41 (9th Cir. 1998). Further, Tribes' standards are put through the same public and EPA review requirements as state standards under the Act. *City of Albuquerque,* 97 F.3d at 425-26.

Regarding Total Maximum Daily Loads ("TMDL"), "[t]he EPA is also under a mandatory duty to establish a TMDL when a State fails over a long period of time to submit a TMDL; this "prolonged" failure can amount to the "constructive submission" of an inadequate TMDL, thus triggering the EPA's duty to issue its own." *City of Arcadia v. United States Environmental Protection Agency*, 411 F.3d 1103, 1105 (9th Cir. 2005). TMDLs are a component of the CWA that when prepared and adopted dictate waste load allocations ("WLA") that are in turn used to develop limits in NPDES permits for the pollutant of concern in the waterbody. 40 C.F.R. § 122.44(d)(1)(vii)(B). Additionally, NPDES permits cannot be issued unless they ensure compliance with the water quality requirements of all affected States. 40 C.F.R. § 122.4(d).

**B. Trust Responsibility**

The federal government is the trustee of Indian Tribes' rights, including its fishing rights. *Parravano v. Babbitt*, 70 F.3d 539, 546 (9th Cir. 1995); *see also NW Sea Farms, Inc. v. United States Army Corps of Eng'rs*, 931 F. Supp. 1515, 1519-20(W.D. Wash. 1996). This trust

SPOKANE TRIBE OF INDIANS  
MOTION FOR SUMMARY JUDGMENT -9  
No. C11-1759RSL

OFFICE OF THE SPOKANE TRIBAL ATTORNEY  
P.O. Box 100  
Wellpinit, WA 99040  
(509) 953-1908

responsibility extends "to the federal government as a whole," including EPA. *See id.*[3] Additionally, any agency action that can impact tribal rights and interests is subject to the "United States' fiduciary responsibilities toward the Indian tribes." *Nance v. Environmental Protection Agency*, 645 F.2d 701, 711 (9th Cir. 1981); *id.* Furthermore, the Indian law canon of statutory construction, derived from the trust relationship, requires that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Montana v. Blackfeet Tribe,* 471 U.S. 759, 766 (1985). "The trust relationship and its application to all federal agencies that may deal with Indians necessarily requires the application of a similar canon of construction to the interpretation of federal regulations." *HRI, Inc. v. EPA*, 198 F.3d 1224, 1245 (10th Cir. 2000).[4] One commentator stated this principal succinctly with this statement, "the agency is bound by the trust responsibility to use its discretion within the statutory regime to protect tribal interests unless doing so conflicts with the actual statutory language."[5]

**C. Administrative Procedures Act**

**1. Standard:** "[u]nder the APA, the court may compel agency action unlawfully withheld, or unreasonably delayed, and a discretionary act may be set aside if found to be

---

[3] *See generally* 1984 EPA Indian Policy, available at http://www.epa.gov/tp/pdf/indian-policy-84.pdf (last visited August 28, 2013). Pursuant to FRE 201, the Tribe requests that the Court take judicial notice of EPA's 1984 Indian Policy.
[4] In the Ninth Circuit, it remains an open question as to the level of deference given by the court to agency interpretation involving statutes that benefit Indians. *See Navajo Nation v. Department of Health & Human Services, Secretary*, 325 F.3d 1133, 1136 FN 4 (9th Cir. 2003)(en banc).
[5] The Indian Trust Responsibility: Protecting Tribal Lands and Resources Through Claims of Injunctive Relief Against Federal Agencies, Mary Christina Wood, 39 TULSA L. REV 355, 362 (Winter 2003)( *citing Nw. Sea Farms v. U.S. Army Corps of Eng'rs, 931 F. Supp. 1515 (W.D. Wash. 1996)* (upholding the Corps' refusal of a permit for a fish farm because it could interfere with treaty fisheries. The Court stated, "[it] this fiduciary duty, rather than any express regulatory provision, which mandates that the Corps take treaty rights into consideration." *Id. at 1520*).

arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Idaho Sportsmen's Coalition v. Browner*, 951 F.Supp. 962, 967 (W.D.Wash. 1996)(internal citations omitted).

**2. Standing:** "a person suing under the APA must satisfy not only Article III's standing requirements, but an additional test: The interest he asserts must be "arguably within the zone of interests to be protected or regulated by the statute." *MATCH–E–BE–NASH–SHE–WISH BAND OF POTTAWATOMI INDIANS v. Patchak*, 132 S.Ct. 2199, 2210 (2012). The prudential standing test "is not meant to be especially demanding." *Id*. The test keeps with Congress's "evident intent when enacting the APA to make agency action presumptively reviewable." *Id* (internal quotations omitted).

**III. Argument**

**A. The Tribe has standing.**

The Tribe has standing under the APA and under the CWA standard as discussed in detail in the Sierra Club's and CELP's brief. The Tribe's water quality standards for PCBs are being violated. (AR Supp. 10 at ¶ 13). These violations are directly caused by the discharges of PCBs upstream from the Reservation. (AR 15 at 77, AR 90 at 1402). The Tribe's membership fish for food throughout the Spokane River on the Reservation and off, (AR Supp. 10 at ¶¶ 16, 17), and this subjects them to a "significant impact on lifetime cancer risk." (AR Supp. 7 at 2950; *see also* AR Supp. 3; AR Supp. 4; AR Supp. 5).

The lack of a PCB TMDL for the Spokane River as required under the CWA leaves the Tribe unable to protect its waters, its members, and its rights because without the ever important wasteload allocations that are part of a legal TMDL, there will not be any enforceable means to reduce the discharge of PCBs into the River (i.e. wasteload allocations with which numeric

SPOKANE TRIBE OF INDIANS
MOTION FOR SUMMARY JUDGMENT -11
No. C11-1759RSL

**OFFICE OF THE SPOKANE TRIBAL ATTORNEY**
P.O. Box 100
Wellpinit, WA 99040
(509) 953-1908

effluent limitations in NPDES permits for the River's dischargers must be consistent).  *See* 33 U.S.C. § 1313(d); 40 C.F.R. § 122.44(d)(1)(vii)(B); 40 C.F.R. § 130.7(c)(1)& (d)(1).

The Tribe's rights, interests, and continued injury are directly within the "zone of interests to be protected or regulated by the" Clean Water Act.  *See* 33 U.S.C. § 1251(a).  The Tribes rights and interests in the Spokane River have been injured and continue to be injured by EPA's failure to act, and this Court is able to fashion a remedy that will address this ongoing violation of the Clean Water Act and EPA's trust responsibility.

> **B. EPA is violating the Clean Water Act, and its trust responsibility by failing to perform its nondiscretionary duty under 33 U.S.C. § 1313(d)(2).**

The Clean Water Act was amended in 1987 to provide Indian Tribes with the benefit and ability to be treated in the same manner as states for certain purposes under the Act which in turn triggers the mandatory use of the Indian cannon of construction requiring that any ambiguity in the statute be in interpreted to the benefit of the Tribe.  *See Montana v. Blackfeet Tribe*, 471 U.S. 759, 766; 33 U.S.C. § 1377; *Parravano*, 70 F.3d at 544; *see also HRI, Inc. v. EPA*, 198 F.3d 1224, 1245 (applying the Indian cannon of construction in construing the Safe Drinking Water Act "SDWA" which contains similar treatment as a state provisions); *Morongo Band of Mission Indians v. FAA*, 161 F. 3d 569, 573 (9th Cir. 1998)(not applying the Indian law cannon of construction because the statutes in question "were not designed to benefit Indians").  As part of its trust responsibility to the Tribe, EPA must use its discretion to protect the Tribe's interests.[6]

Here, any ambiguity in what constitutes a constructive submission under section 1313(d)(2) of the Act must be construed and interpreted to the benefit of the Tribe.  The State listed the Spokane River on the 303d list for PCB pollution in 1996.  (AR 90 at 1334; AR Supp.

---

[6] *See* FN 2.

SPOKANE TRIBE OF INDIANS  
MOTION FOR SUMMARY JUDGMENT -12  
No. C11-1759RSL

**OFFICE OF THE SPOKANE TRIBAL ATTORNEY**  
P.O. Box 100  
Wellpinit, WA 99040  
(509) 953-1908

1 at 2732). The record shows that Ecology currently has no intention of preparing a PCB TMDL for the Spokane River, (AR 14A at 503), and even if it did begin today, in Ecology's staff's professional opinion it would take twelve-(12) years to finalize a PCB TMDL for the Spokane River. (AR 132 at 2675-76, 2672).[7] This would amount to almost thirty-(30) or more years from the date of the initial 303d listing to the date of a completed PCB TMDL for the Spokane River. (AR 90 at 1334; AR Supp. 1 at 2732). As Ecology and EPA fully understand, the Tribe's standards "<u>cannot reasonably be met within these bounds unless PCB concentrations in upstream reaches are reduced to levels near the criterion</u>." (AR 15 at 77, AR 90 at 1402(emphasis added)). To be clear, the Tribe's standards, just like Oregon's, (AR Supp. 10 at ¶ 14), are directly tied to a PCB level that allows for the safe consumption of fish in subsistence quantities, and if its standards are not met, its members cannot safely exercise their fishing rights.

Unfortunately, due to political pressure, (AR Supp. 10 at ¶¶ 23-24; AR 50; AR 56; AR 57), Ecology and EPA have decided to try to achieve 95-99% PCB pollution reductions, (AR 90 at 1402; AR 15 at 73), through the voluntary efforts of the polluters constituting the Spokane River Regional Toxics Task Force ("Task Force"), instead of through enforceable wasteload allocation-based effluent limitations in the permits as the Act demands. (AR 4; AR 7; AR Supp. 11; AR Supp. 9). This move by Ecology and EPA will by their own admission delay a PCB TMDL indefinitely. (AR A at 3-4).

"Congress prescribed early deadlines for the TMDL process" and those deadlines could be interpreted to mean "months and few years, not decades." *Idaho Sportsmen's Coalition v. Browner*, 951 F.Supp. 962, 967 (W.D.Wash.1996)(finding a TMDL schedule over 25 years to be

---

[7] This delay is blamed on the lack of data. (AR A at 4). This reasoning ignores that **"Congress says ignorance is no excuse for inaction. Just add a margin of safety to compensate for the lack of knowledge and keep moving."** *Idaho Sportsmen Coalition*, 951 F.Supp at 966 (emphasis added).

SPOKANE TRIBE OF INDIANS  **OFFICE OF THE SPOKANE TRIBAL ATTORNEY**
MOTION FOR SUMMARY JUDGMENT -13  **P.O. Box 100**
No. C11-1759RSL  **Wellpinit, WA 99040**
  **(509) 953-1908**

arbitrary and capricious, an abuse of discretion, and contrary to law).   Further, in *Idaho Sportsmen's Coalition*, EPA had set an extremely slow TMDL schedule relying on the proposition that "monitoring and evaluation" would result in massive delisting of Idaho water bodies from the 303d list.  *Id*.  In that case, the court stated that EPA and the state could not "treat hoped-for results of state programs as a substitute for CWA compliance." *Id*.

In this case, EPA and Ecology are utilizing the Task Force as a substitute for a legally enforceable PCB TMDL.  (AR 4 at 14). "The goal of the Task Force will be to develop a comprehensive plan to bring the Spokane River into compliance with applicable water quality standards for PCBs," (AR 4 at 14), which is essentially the same requirement as TMDLs, but <u>without</u> the regulatory enforcement mechanisms (i.e. wasteload allocations with which numeric effluent limitations in NPDES permits for the River's dischargers must be consistent).  *See* 33 U.S.C. § 1313(d); 40 C.F.R. § 122.44(d)(1)(vii)(B); 40 C.F.R. § 130.7(c)(1)& (d)(1).  Ecology and EPA hope that this will result in 95%-99% reductions in PCBs, (AR 90 at 1402; AR 15 at 73), even though the Task Force's eventual plan will be unenforceable under the Act. (AR Supp. 9; AR Supp. 11).

Additionally, as the Ninth Circuit noted in a case challenging the entire TMDL program in California, as opposed to one concerning the constructive submission of a single TMDL as is the case here, "EPA has issued guidelines, however, suggesting that states allocate between **eight and thirteen years** from the time of initial listing to the development of TMDLs, in order of priority for all waters within their borders." *San Francisco Baykeeper v. Whitman*, 297 F.3d 877, 885 (9th Cir. 2002)(emphasis added).  Here, Ecology by its own admission will not complete a PCB TMDL on the Spokane River, for at least twelve-(12) years after it decides to do so, if ever, which will be at a minimum, almost thirty-(30) years from the initial listing of the Spokane River

SPOKANE TRIBE OF INDIANS  
MOTION FOR SUMMARY JUDGMENT -14  
No. C11-1759RSL

OFFICE OF THE SPOKANE TRIBAL ATTORNEY  
P.O. Box 100  
Wellpinit, WA 99040  
(509) 953-1908

for PCBs in 1996. (AR 90 at 1334; AR 132 at 2675-76, 2672); *see also* FN 5. Ecology's and EPA's delay will leave generations of Tribal members unable to safely exercise their fishing rights, and leave the Tribe unable to achieve its EPA approved water quality standards because without the enforceable waste load allocations that come with a PCB TMDL there will be no corresponding enforceable PCB limits for the dischargers along the Spokane River.

Sierra Club's and CELP's briefing clearly demonstrates that Ecology's actions have amounted to a constructive submission of a PCB TMDL without the added nuance of federal Indian law. However, the Tribe's impacted downstream water quality standards and negatively impacted fishing rights tip the scales even further in support of a determination that Ecology has constructively submitted a Spokane River PCB TMDL, triggering EPA's non-discretionary duty to act.

**C. EPA violated the APA.**

In addition to the Clean Water Act claim, Region 10's April 12, 2013 letter stating its reasons for not viewing Ecology's actions as a constructive submission constitutes final agency action that is arbitrary and capricious, an abuse of discretion, and contrary to law. As argued above, EPA has failed to perform its non-discretionary duty of reviewing and either approving or disapproving Ecology's constructive submittal of a PCB TMDL for the Spokane River under the Clean Water Act which violates 5 U.S.C. Section 706. Additionally, the April 12, 2013 determination by EPA is not in accordance with the Act, but it is also "not in accordance with the law," the federal common law trust responsibility which attaches to all EPA action.[8]

---

[8] *The Indian Trust Responsibility: Protecting Tribal Lands and Resources Through Claims of Injunctive Relief Against Federal Agencies, Mary Christina Wood, 39 Tulsa L. Rev 355, 364-365 (Winter 2003)*(discussing the important difference between Tucker Act claims and APA claims); see *also NW Sea Farms*, 931 Supp. at 1520("It is this fiduciary duty rather than any express

MOTION FOR SUMMARY JUDGMENT -15  P.O. Box 100
No. C11-1759RSL  Wellpinit, WA 99040
(509) 953-1908

As the Court in *Parravano* stated in discussing fishing rights granted by Executive Order, "federally reserved fishing rights are accompanied by a corresponding duty on the part of the government to preserve those rights." 70 F.3d at 547 (the case involved interpreting the Magnuson Act under the 5 U.S.C. § 706(2)(A) standard). Here, EPA's decision to not view Ecology's prolonged delay in developing a PCB TMDL and by requesting that the Idaho NPDES permit holders participate in the Task Force, (AR Supp. 11), instead of developing a PCB TMDL fails to preserve and protect the Tribe's fishing rights. The Tribe's water quality standards are not being met, (AR Supp. 10 at ¶ 13), fish throughout the Spokane River pose a health hazard when eaten, including an increased cancer risk. (AR Supp. 7 at 2950-51). Accordingly, it is arbitrary and capricious, an abuse of discretion, and contrary to law for EPA to ignore its trust responsibility, and fail to exercise its Clean Water Act authority with respect to Ecology's constructive submission of a PCB TMDL for the Spokane River as demonstrated and articulated in its April 12, 2013 determination.

**V. Conclusion**

If EPA is not ordered to prepare the Clean Water Act required PCB TMDL, the harm to the Tribe's water quality, Tribal members' health, and fishing rights will continue indefinitely. For the above-reasons and those discussed at length in Sierra Club's and CELP's motion, (Dkt. 81), the Court should grant the Plaintiffs' which the Tribe joins in and the Tribe's motion for summary judgment, and order the injunctive relief explained in detail in Sierra Club's and CELP's motion. This Court should order the EPA to adopt a Spokane River PCB TMDL within 90 days.

---

regulatory provision, which mandates that the Corps take treaty rights into consideration").

SPOKANE TRIBE OF INDIANS  
MOTION FOR SUMMARY JUDGMENT -16  
No. C11-1759RSL

**OFFICE OF THE SPOKANE TRIBAL ATTORNEY**  
P.O. Box 100  
Wellpinit, WA 99040  
(509) 953-1908

Respectfully submitted this 20th day of September 2013.

        SCOTT WHEAT
        General Legal Counsel
        Office of the Spokane Tribal Attorney
        Spokane Tribe of Indians

        /S/ Ted C. Knight
        Ted C Knight, WSBA #39683
        Contract Attorney
        Office of the Spokane Tribal Attorney
        Spokane Tribe of Indians
        PO Box 100
        Wellpinit, WA 99040
        Phone (509) 953-1908
        tedk@spokanetribe.com

        Attorneys for the Spokane Tribe of Indians

SPOKANE TRIBE OF INDIANS    OFFICE OF THE SPOKANE TRIBAL ATTORNEY
MOTION FOR SUMMARY JUDGMENT -17    P.O. Box 100
No. C11-1759RSL    Wellpinit, WA 99040
    (509) 953-1908

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing filing was electronically filed with the Clerk of the Court on September 20, 2013, using the Court's electronic filing system, which will send notification of said filing to the attorneys of record that have, as required, registered with the Court's system.

/S/Ted Knight
Ted Knight, WSBA #39683
Contract Attorney
Office of the Spokane Tribal Attorney
Spokane Tribe of Indians
PO Box 100
Wellpinit, WA 99040
Phone (509) 953-1908
tedk@spokanetribe.com

SPOKANE TRIBE OF INDIANS
MOTION FOR SUMMARY JUDGMENT -18
No. C11-1759RSL

OFFICE OF THE SPOKANE TRIBAL ATTORNEY
P.O. Box 100
Wellpinit, WA 99040
(509) 953-1908