HON. ROBERT S. LASNIK

Richard A. Smith
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SIERRA CLUB; and CENTER FOR
ENVIRONMENTAL LAW AND
POLICY,

    Plaintiffs,

  and

THE SPOKANE TRIBE OF INDIANS,

    Plaintiff-Intervenor,

  v.

DENNIS McLERRAN; GINA
McCARTHY, and UNITED STATES
ENVIRONMENTAL PROTECTION
AGENCY,

    Defendants,

  and

SPOKANE COUNTY; KAISER
ALUMINUM OF WASHINGTON LLC;
and STATE OF WASHINGTON
DEPARTMENT OF ECOLOGY,

    Defendant-Intervenors.
_____

No. 11-1759RSL

PLAINTIFFS' REPLY AND RESPONSE
ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT (Dkts. 81, 91,
93, 95, and 97)

1

**TABLE OF CONTENTS**

I.      Introduction…………………………………………….……………1

II.     Contemporaneous Record Facts Show Constructive
        Submission of the Spokane PCB TMDL……………….…………….………2

        A.      The exceptional circumstances here show that Ecology
                constructively submitted a Spokane River PCB TMDL by
                clearly and unambiguously expressing its decision to submit
                no TMDL…………………………………………...…………………2

        B.      Ecology's asserted "commitment" to prepare a TMDL at
                an uncertain future time is illusory and contained in Ecology's
                post-hoc rationales, amounting to no commitment at all……..……….5

        C.      The 2006 draft Spokane River PCB TMDL was released
                for public and EPA review……………………………..…………7

        D.      The Court should heavily discount Ecology's post-hoc
                explanation that it abandoned the TMDL effort because
                of scientific uncertainty……………………………………………11
                i.      The real reason Ecology decided to submit no
                        TMDL was to avoid struggle with the Spokane
                        River dischargers……………………………………....…11
                ii.     The primary evidence for Ecology's asserted
                        "scientific uncertainty" motive for TMDL
                        abandonment is Ecology's post-hoc statement
                        that the Court should severely discount………………………11
                iii.    Lack of a complete understanding of TMDL
                        sources is no reason to forgo the TMDL……..…………….13

        E.      Ecology's issuance of NPDES permits to Spokane River
                dischargers further evinces Ecology's intent…………………………16

III.    The Constructive Submission Doctrine is Available…………………………17
                i.      Plaintiffs' claim is available under the
                        constructive submission jurisprudence………………………..18
                ii.     Plaintiffs' requested relief will not interfere
                        with state discretion and priorities……………………………19
                iii.    The CWA prohibits both the state and EPA
                        from shirking their mandatory duties to promulgate
                        a TMDL……………………………………………………20

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - i
No. 11-1759RSL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

IV.    Plaintiffs' Claim is Proper Under the Clean Water Act…………………………22

V.    Standard of Review……………………………………………………………..23

    A.    The Court should not defer to EPA's position on
         Ecology's constructive  submission of the Spokane
         River PCB TMDL……………………………………………………23

    B.    The Court should not defer to EPA's April 12, 2013
         determination………………………………………………………24

VI    Injunctive Relief……………………………………………………………...26

VII.    Conclusion……………………………………………………………….....28

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1

## TABLE OF AUTHORITIES

2

3

### CASES

4

*Ala. Ctr. for the Env't v. Browner,*
20 F.3d 981 (9th Cir. 1994) ……………………………………………...20, 27

5

6

*Ala. Ctr. for the Env't v. Reilly,*
762 F. Supp. 1422, (W.D. Wash. 1991)……………………. …………..……...26

7

8

*Anacostia Riverkeeper, Inc. v. Jackson,*
798 F.Supp.2d 210  (D.D.C. 2011)……………………………..……16

9

10

*Auer v. Robbins*, 519 U.S. 452 (1997)…………..…………………………6

11

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988)………………….25

12

*Browner v. Evans*, 257 F.3d 1058 (9th Cir. 2001)……………….……….23

13

14

*Canadian Commercial Corp. v. Department of the Air Force,*
442 F.Supp.2d 15 (D.D.C. 2006)……………………………………..………6

15

16

*Chevron, U.S.A., Inc. v. Natural Res. Defense Council,*
467 U.S. 837 (1984)…………………………………………………………24

17

*City of Arcadia v. U.S. Envt'l Protection Agency,*
411 F.3d 1103 (9th Cir. 2005) ……………………………………7, 18, 22

18

19

*City of Arcadia v. State Water Res. Control Bd.,*
135 Cal. App. 4th 1392,(Cal. App. 4th Dist. 2006)………………..……15

20

21

*Dioxin/Organochlorine Ctr. v. Clarke,*
57 F.3d 1517 (9th Cir. 1995)……………………………………15, 27

22

23

*Dioxin/Organochlorine Ctr. v. Rasmussen*, No.
1993 U.S. Dist. LEXIS 15595 (W.D. Wash. 1993)………………….......15

24

25

*Earth Island Inst. v. Brown,* 865 F.Supp. 1364 (N.D. Cal. 1994)…….....…..25

26

*Espinosa v. United Student Aid Funds,*
553 F.3d 1193 (9th Cir.2008)……………………………………………19

27

28

*Fed. Labor Relations Auth. v. U.S. Dept. of the Navy,*
966 F.2d 747 (3rd Cir. 1992)…………………………………………..25

29

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - iii
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

*Fed. Power Comm'n v. Florida Power & Light Co.*,
404 U.S. 453 (1972)……………………………………………..………24

*Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1998)….………23

*Friends of the Earth v. U.S. Envtl. Prot. Agency*,
346 F.Supp.2d 182 (D.C. Cir 2004)………………...………..………15

*Friends of the Earth v. U.S. Envtl. Prot. Agency*,
446 F.3d 140 (D.C. Cir. 2006)…………………………... ……………15

*Hayes v. Whitman*, 264 F.3d 1017 (10th Cir. 2001)…..…2, 18, 19, 20 ,22, 24

*Idaho Sportsmen's Coalition v. Browner*,
951 F.Supp. 962 (W.D. Wash. 1996)………………………………2, 21

*In re Am. Rivers and Idaho Rivers United*,
372 F.3d 413 (D.C. Cir. 2004)………………………….………………23

*Inst. for Wildlife Prot. v. Norton*,
174 Fed. Appx. 363 (9th Cir. 2006)……………………………………24

*Kingman Park Civic Ass'n v. U.S. Envtl. Prot. Agency*,
84 F.Supp.2d 1 (D.D.C. 1999)…………………………..…………20, 21, 22

*Natural Res. Def. Council v. Fox*,
93 F.Supp.2d 531 (S.D. N.Y. 2000)………………………..……..20, 22, 24

*Natural Res. Def. Council v. Muszynski*,
268 F.3d 91 (2nd Cir. 2001)………………………………………………15

*Or. Natural Res. Council v. U. S. Forest Service*,
834 F.2d 842 (9th Cir. 1987)………………………………………………22

*Pronsolino v. Marcus*, 91 F.Supp.2d 1337 (N.D. Cal. 2000)……………….7

*Pronsolino v. Nastri*, 291 F.3d 1123 (9th Cir. 2002)……....7, 16, 21, 22, 28

*San Francisco Baykeeper v. Cargill Salt Div.*,
481 F.3d 700 (9th Cir. 2007)………………………………………………24

*San Francisco Baykeeper v. Whitman*,
297 F.3d 877 (9th Cir. 2001)………………….…..…..7, 18, 19, 20, 22, 23, 24

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - iv
No. 11-1759RSL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

*Scott v. City of Hammond, Indiana*,
741 F.2d 992 (7th Cir. 1984)…………………………..……………2, 19, 20

*Selkirk Conservation Alliance v. Forsgren*,
336 F.3d 944 (9th Cir. 2003)………………………………………...……24

*Sierra Club v. U.S. Envir. Prot. Agency*,
346 F.3d 955 (9th Cir. 2003)………………………………………………24

*Sierra Club v. Meiberg*, 296 F3d 1021 (11th Cir. 2002)…………….21, 28

*WaterKeepers N. Cal. v. AG Indus. Mfg. Inc.*,
375 F.3d 913 (9th Cir. 2004)………………………………………….25

**FEDERAL STATUTES**

5 U.S.C. § 704…………………………………………………………..22

5 U.S.C. § 706
    § 706(1)………………………………………………………..23
    § 706(2)………………………………………………………..23

33 U.S.C. § 303(d)………………………………………………………14

33 U.S.C. § 1313
    § 1313(d)………………………………………………………26
    § 1313(d)(1)(C)…………………………………………..……13
    § 1313(d)(2)……………………...……2, 18, 20, 21, 22, 23, 24, 24, 25, 26

33 U.S.C. § 1365
    § 1365(a)…………………………………….……………..22, 26, 18
    § 1365(a)(2)…………………………………….……………22, 23

**FEDERAL REGULATIONS**

40 C.F.R. §122.
    § 122.44(d)(1)(ii) …………………………………………….27.
    § 122.44(d)(1)(iii)……………………………………….……27
    §122.44(d)(1)(vii)(B)…………………………..………………16, 27

40 C.F.R. § 130
    § 130.2(g)……………………………………………………13
    § 130.2(i)……………………………………………………..26
    §130.7(c)……………………………………………………..26

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - v
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

**WASHINGTON REGULATIONS**

WAC 173-201A-510(4)… …………………………………….……………17

**OTHER**

O. Houck, *The Clean Water Act TMDL Program: Law, Policy, and Implementation* (2nd ed., 2002)…………………………14-15

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - vi
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

# I.    INTRODUCTION

It is hard to imagine a more clear-cut case of a state expressing its intent to not submit a particular Total Maximum Daily Load ("TMDL"), or Clean Water Act-mandated cleanup plan, than that now before the Court.  The State of Washington Department of Ecology spent years working on the Spokane River PCB TMDL as a priority project because of the severity of this pollution problem.  When its draft TMDL showed that the handful of major polluters regulated by the CWA's National Pollutant Discharge Elimination System ("NPDES") permits would have to tackle the challenging and expensive task of reducing their PCB discharges by more than 99 percent, Ecology and EPA feared their resistance and the political and legal battle that would likely follow the TMDL's adoption, much like the ten-year one entailed by the dissolved oxygen TMDL that constrained and inflamed these same dischargers.  Ecology then decided to substitute a process-heavy cooperative effort with the polluters for the TMDL, despite the CWA's requirement in 33 U.S.C. §1313(d)(2).  The Court should find that Ecology's actions constitute the constructive submission of the PCB TMDL, and order EPA to execute its nondiscretionary duty under § 1313(d)(2) to establish it promptly to avoid a result that thwarts the water quality standards-attainment mechanisms and goals of the CWA.

In this combined reply and response brief on the parties' cross-motions for summary judgment, plaintiffs Sierra Club and Center for Environmental Law & Policy focus on the facts establishing the constructive submission to EPA of no Spokane River PCB TMDL, the availability under the law of constructive submission doctrine, the proper categorization of Plaintiffs' claim as a CWA citizen suit (as opposed to an Administrative Procedure Act claim), the standard of review, and injunctive relief.  The application of the constructive submission doctrine here is needed to implement the CWA and supported by reasoning in the case law.  The

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 1
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

appropriate standard of review entails no deference to agency positions and has the Court

determine whether EPA's nondiscretionary duty has been triggered.  As no party opposed

Plaintiffs' motion on grounds of inadequate notice or standing, Plaintiffs rely on the discussion

of these issues included in its opening brief and do not revisit them here.

## II.    CONTEMPORANEOUS RECORD FACTS SHOW CONSTRUCTIVE SUBMISSION OF THE SPOKANE RIVER PCB TMDL

### A.    The exceptional circumstances here show that Ecology constructively submitted a Spokane River PCB TMDL by clearly and unambiguously expressing its decision to submit no TMDL.

The question presented is not (as EPA and the defendant-intervenors would have it)

whether Ecology's de-prioritization of the Spokane River PCB TMDL is appropriate or

challengeable; it is whether Ecology's actions and statements amount to a clear and

unambiguous expression of intent to submit no TMDL, thereby constituting "constructive

submission."[1]  If the Court finds that Ecology has made such an expression, EPA's

nondiscretionary duties (not Ecology's) under 33 U.S.C. § 1313(d)(2) have been triggered and

EPA must promptly act as that subsection mandates.[2]

The story of Ecology's actions and statements here is extraordinary, just as is the PCB

contamination problem in the Spokane River, and these amount to a clear and unambiguous

statement of abandonment of its efforts to finalize this TMDL.  By coming right to the brink of

submitting the TMDL it prepared, and then pulling it back and announcing a decision to

substitute another process and plan for the toxic cleanup, Ecology has made plain its decision not

---

[1] *Hayes v. Whitman*, 264 F.3d 1017, 1023 – 1024 (10th Cir. 2001); *Scott v. City of Hammond, Indiana*, 741 F.2d 992, 996-97 (7th Cir. 1984).
[2] *E.g., Idaho Sportsmen's Coalition v. Browner*, 951 F.Supp. 962, 966 – 968 (W.D. Wash. 1996).

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 2
No. 11-1759RSL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

1  to submit the TMDL for EPA's formal review.  Indeed, it is hard to imagine a realistic scenario

2  in which the state agency's actions more clearly evince intent to submit no TMDL.

3         In sum, based on information and studies contained in approximately 35 separate reports

4  published by Ecology starting in 1984, sections of the river have continuously been on

5  Washington's "303(d) list" of impaired waterbodies since 1996.[3]  The Spokane River reigns as

6  the most severely PCB-contaminated waterway in the state, and, as a result, has been subject to

7  Spokane County and Washington Department of Health fish consumption advisories since 1994

8  and 2003, respectively, because it constitutes a "public health hazard."[4]  The PCB contamination

9  impairs use of the river for fish harvest in all three jurisdictions it traverses, Idaho, Washington,

10 and the Reservation of the Spokane Tribe of Indians, and prevents Tribal members from

11 enjoying their fishing rights.[5]

12        In 1997, EPA and Ecology agreed that Ecology would complete TMDLs for all 1996

13 303(d) listings by 2013.[6]  Consistent with the seriousness of the pollution problem and the

14 agencies' agreement, Ecology included work on the TMDL as a task for its Environmental

15 Assessment Program every year from 2001 through 2010.[7]  And, among the various tasks

16 assigned to the Program, this work was consistently designated as a priority.

17        Upon releasing a draft Spokane River PCB TMDL in 2006, complete with proposed

18 waste load allocations that would have meant severe restrictions on PCB concentrations and

19 loadings from the small but influential group of NPDES-permitted dischargers on the river (and,

---

[3] AR 14A at 492 – 495; AR Supp. 1 at 2732; AR 15 at 80.
[4] AR 15 at 97; AR Supp. 5; AR Supp. 7 at 2950 – 2951; AR Supp. 4 at 2777; AR Supp. 6 at 2812, 2816, 2821, 2823, 2827, 2836.
[5] AR 81 at 1285; AR 85 at 1298 – 1299.
[6] AR 32 at 441; AR 33; AR 34 at 460.
[7] AR 105 at 2420 and 2422; AR 106 at 2431 and 2434; AR 107; AR 108 at 2448; AR 109 at 2462 – 2463; AR 110 at 2475 – 2476; AR 111 at 2479; AR 112; AR 113 at 2493; AR 114; AR 115 at 2508; AR 116; AR 117 at 2524; AR 118; AR 119 at 2539; AR 120; AR 121 at 2552; AR 122; AR 123 at 2571; AR 124 at 2590.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 3
No. 11-1759RSL

SMITH & LOWNEY, P.L.L.C.
2317 EAST JOHN STREET
SEATTLE, WASHINGTON 98112
(206) 860-2883

presumably, substantial costs for their additional pollution control measures), Ecology decided that the TMDL needed only additional stormwater and fish tissue sampling information for completion.[8]  Ecology then collected and inserted this information into the draft TMDL document.[9]

In 2010 - 2011, Ecology abandoned its effort to finalize and submit the TMDL.[10]  It was weary from its ten- or twelve-year struggle with these same NPDES-permitted dischargers over the Spokane River dissolved oxygen TMDL, which Ecology finalized in 2009 and EPA approved in 2010, and wanted to avoid "a protracted political and legal struggle that may take a decade to resolve."[11]  Through a name change and minor editing to remove the waste load allocations anticipated to be offensive to the dischargers, as well as other TMDL linguistic trappings, the draft TMDL was converted into the *Spokane River PCB Source Assessment 2003 – 2007*, and formally issued in April 2011 ("*Source Assessment*").[12]

A companion document, the original version of the *Spokane River Toxics Reduction Strategy*, issued a month later, provides the clearest (non-post-hoc) statement of Ecology's intent with regard to the TMDL, and the reasons for it.[13]  Here, Ecology explains the history of the Spokane River PCB TMDL effort, including the issuance of the 2006 draft for public comment, and the collection and addition of the stormwater and fish tissue data, concluding that "[t]he draft TMDL was revised with this updated information in 2009 and **issued as the Spokane River Source Assessment Report in 2011.**"[14]  Ecology continued, explaining this change in the

---

[8] AR 14A at 503;AR 53; AR 54; AR 55.
[9] AR 14A at 503; AR 77.
[10] AR 14A at 503; AR 74; AR 75 at 1269; AR 77; AR 82 at 1293.
[11] AR 14A at 503; AR 80.
[12] AR 15; AR 14A at 503; AR 70; AR 74; AR 75 at 1269; AR 77; AR 82.
[13] AR 14A.
[14] AR 14A at 503 (emphasis added)..

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 4
No. 11-1759RSL

document and implying that the *Source Assessment* is a TMDL, but without the wasteload

allocations that so concerned the regulated Spokane River dischargers:

> Ecology is not currently planning to develop a PCB TMDL with wasteload
> allocations, but this is still a potential tool for the future.  Setting wasteload
> allocations through a TMDL to accomplish that would set a target well below the
> 'background' PCB concentrations observed in remote bodies of water with no
> obvious source of contamination other than aerial deposition.

> In part because it would establish an impossible near-term target, and based on its
> experience with the Spokane River Dissolved Oxygen TMDL, which took 12
> years to complete, Ecology is opting to proceed directly to implementing
> measures to reduce all toxics to the Spokane River.  Those measures are described
> in this strategy.  Such a *straight-to-implementation* plan is a recent strategy being
> adopted by EPA and Ecology to address the many bodies of water that are on the
> list of polluted waters [called the 303(d) list] through tools other than TMDLs.
> Ecology plans to develop a straight-to-implementation plan for Spokane River
> toxics in 2012.[15]

Ecology's characterization of its efforts as a "straight-to-implementation" plan is relevant

because examination of Ecology's contemporaneously published straight-to-implementation

policy further confirms that Ecology considers these efforts to be "an alternative to the TMDL

process," i.e., a decision to do something else and not to submit a TMDL.[16]

**B.    Ecology's asserted "commitment" to prepare a TMDL at an uncertain future time is illusory and contained in Ecology's post-hoc rationales, amounting to no commitment at all.**

Ecology's various statements to the effect that a TMDL "is still a potential tool for the

future" cannot overcome the conclusion that Ecology has clearly and unambiguously expressed

its intent to submit no TMDL.  First, for support of the proposition that Ecology has committed

to preparing a TMDL in some future circumstance, Defendants rely primarily on post-hoc

rationalizations found in two documents generated by Ecology after its March 28, 2012,

---

[15] AR 14A at 503.
[16] AR 44 at 753, 755.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 5
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    intervention in this lawsuit and obviously tailored to aid its litigation position.[17]  A "post hoc

2    rationalization" is simply defined as one that "seek[s] to defend past agency action against

3    attack."[18]

4         These documents containing Ecology's post-hoc rationales are (1) a self-serving letter

5    from Ecology's Water Quality Program Director to EPA, dated May 25, 2012 (AR 1), and (2) an

6    August 2012 revised version of the *Spokane River Toxics Reduction Strategy* (AR 42[19]).  The

7    May 25, 2012, letter purports to respond to one from EPA "expressing EPA's commitment to the

8    Spokane River Regional Toxics Task Force," which called for no response, and appears to be

9    entirely gratuitous besides supporting the agencies' position taken for this litigation.[20]  The

10   changes to the TMDL-discussion section of the *Spokane River Toxics Reduction Strategy* made

11   in August 2012 appear also to be a wordsmith's attempt to make that key document's description

12   of Ecology's activities around the PCB TMDL less damaging to the agencies' litigation

13   position.[21]

14        Second, Ecology always waffles in these statements.  It either characterizes adoption of

15   the TMDL as merely an option that continues to be available, or sets out such vague criteria for

16   its possible future decision to adopt the TMDL so as to leave the statements virtually

17   meaningless.  Ecology's May 25, 2012, letter to EPA, for example, asserts that:

18
19            if Ecology determines that the [Spokane River Regional Toxics] Task Force is failing to
             make measurable progress toward meeting applicable water quality criteria for PCBs,
20            Ecology would be obligated to proceed with development of a TMDL in the Spokane

---

[17] Order (Dkt. 28); EPA Brief at 17:20 – 24, 19:14 – 16, 32:4 – 7, 36:10 – 15; Ecology Brief at 10.
[18] *See Auer v. Robbins*, 519 U.S. 452, 462 (1997); *Canadian Commercial Corp. v. Dept. of the Air Force*, 442 F. Supp. 2d 15, 27 (D.D.C. 2006).
[19] EPA mistakenly cites this as administrative record document number 44 in some parts of its brief.
[20] AR 1; AR 7 (EPA's letter).
[21] *Compare* AR 14A at 503 *to* AR 42 at 705 – 706.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 6
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    River for PCBs *or determine an alternative to ensure water quality standards are met*.

2    Ecology remains committed to proceeding with a TMDL should it be necessary.[22]

3    Indeed, this contradicts well-established CWA law that the mere inclusion of the river on the

4    303(d) list for PCBs makes a TMDL "necessary."[23]

5        Nor do any of these statements provide any date or timeline on which Ecology will re-

6    commence work on the TMDL.  Furthermore, the only substantive criterion ever provided is the

7    failure of the Regional Toxics Task Force to make "measurable progress toward meeting

8    applicable water quality criteria for PCBs."[24]  Not only is there no definition of "measurable

9    progress," but this formulation means that Ecology intends to stick with its alternative, non-

10   TMDL approach so long as it can point to anything constituting the Task Force's "measurable

11   progress" no matter how insignificant, or how distant attainment of PCB water quality criteria

12   continues to be.[25]  This certainly constitutes no "plan[] to remedy the situation" of no TMDL.[26]

14

15   **C.    The 2006 draft Spokane River PCB TMDL was released for public and EPA review.**

16

17       Plaintiffs believe that EPA and Ecology are factually mistaken to assert that the 2006

18   draft Spokane River PCB TMDL was not released by Ecology to the public and EPA for review

19   and comment.  The issue is relevant to Plaintiffs' claim primarily in that stakeholder and public

20   review of and input to the draft in 2006 supports Plaintiff's narrative of the exceptional factual

21

22   circumstances amounting to an expression of intent to submit no TMDL, i.e., that Ecology was

23

24   ─────────────────

[22] AR 1 at 2 (emphasis added).

25   [23] *City of Arcadia v. U.S. Envtl. Prot. Agency*, 411 F.3d 1103, 1105 (9th Cir. 2005); *Pronsolino v. Nastri*, 291 F.3d

26   1123, 1127 (9th Cir. 2002) (states "must establish" TMDLs for 303(d)-listed waters), *cert den.,* 539 U.S. 926 (2003);  *Pronsolino v. Marcus*, 91 F. Supp. 2d 1337, 1346 (N.D. Cal. 2000) ("the sole import of placing a river or

27   water on a Section 303(d) list was that it would trigger the TMDL requirement"), *aff'd*, *Pronsolino,* 291 F.3d at 1123.

[24] AR 1 at 2.

28   [25] AR 132 at 2670:12 – 20.

[26] *San Francisco Baykeeper v. Whitman*, 297 F.3d 877, 882 (9th Cir. 2002).

29   PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 7
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

very far along in its submission effort before it pulled the plug on formal TMDL submission and turned to something else to substitute for the TMDL.

First, official Ecology publications stating plainly that the draft TMDL was issued for public comment in June 2006 are the only formal documents in the administrative record directly addressing the question.[27]  As discovery under the Rules would likely have clarified the issue, and discovery was successfully opposed in this case by the defendants and defendant-intervenors, Plaintiffs respectfully suggest that it is appropriate to rely on these statements in the record rather than on Ecology's extra-record declaration and EPA's unsupported footnote disputing them.[28]  Indeed, given that Ecology never formally submitted the TMDL, there is no reason that EPA's administrative record would include information about Ecology's public involvement efforts around the draft TMDL.

Second, other evidence in the record establishes that EPA reviewed and commented on the draft TMDL in 2006.  By email exchange dated March 14, 2006, Ecology and EPA managers discussed that Larry Gadbois would be EPA's lead on the TMDL, and that Ecology should send the draft to him.[29]  An internal Ecology email message of April 4, 2006, reports on an Ecology meeting about the TMDL with EPA and Idaho regulators:  "**Larry Gadbois (EPA) attended our meeting and reviewed/commented on the draft technical report**."[30]  The next day, Gadbois emailed his report on the TMDL and the agencies' meeting to his EPA supervisors, providing details from the draft TMDL and his assessment.[31]  Notably, this summary includes no criticism of the technical soundness of the draft TMDL's analysis or conclusion, but instead

---

[27] AR 14A at 503; AR 42 at 705.
[28] Order (Dkt. 49).
[29] AR 48 at 1016.
[30] AR 49 at 1019 (emphasis added).
[31] AR 50 at 1021 – 1022.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 8
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1
2
3
4
5
6
7
8

focuses on a desire to avoid "a new firestorm" over the substantial PCB discharge reductions it prescribes, as the Spokane River's regulated polluters have "already been roughed up in recent years over the phosphorus/[dissolved oxygen] TMDL."[32]  Anticipating resistance to the TMDL's tight wasteload allocations from the dischargers who would be subject to them, Gabois warned his managers that "[t]his is going to be soooo much fun."[33]  There is also a 2009 email message from Ecology manager Jim Bellatty:  "We have had several 'false starts' with the PCB TMDL, *including a big media event*."[34]

9
10
11

Third, Plaintiffs request that the Court judicially notice or supplement the administrative record[35] with the four documents submitted with this brief:

12
13
14

1)    Ecology Publication No. 06-10-046, dated June 2006, entitled *Focus on Spokane River Studies* (Ex. A), states in its first paragraph that the draft Spokane River PCB TMDL "was released in June 2006"[36];

15
16
17
18
19
20

2)    Ecology Publication No. 06-10-043, dated June 2006, entitled *Frequently Asked Questions about Spokane River PCBs Study* (Ex. B), is an explanatory document that appears to have accompanied a public release of the draft TMDL, which states that "Ecology is sharing the PCB TMDL study" and "will meet with dischargers, Spokane Tribal members, the [EPA] and the state of Idaho to discuss the results."[37];

21
22
23
24

3)    *Spokane River and PCBs, Sierra Club Initial Comments on the Spokane River PCB Cleanup Study,* June 2006 (Ex. C), describes the contents of the draft TMDL and shows that the public (or at least plaintiff Sierra Club) reviewed and commented on it; and

25
26
27
28
29

---

[32] *Id.* at 1021.
[33] *Id.*
[34] AR 64 at 1071 (italics added).
[35] The Court has discretion in this case to allow supplementation of the record.  Order (Dkt. 49) at 5.
[36] Ex. A at 1.
[37] Ex. B at 2 and 7

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 9
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1

2

      4)      November 13, 2007, letter by the Center for Justice to Ecology on behalf of the Sierra Club regarding "Comments on Draft Spokane River NPDES Permits" (Ex. D), which discusses the contents of the draft TMDL and, in footnote 1 on page 3, provides a website address where Ecology had made the draft TMDL available to the public.[38]

      Contrary to EPA's assertion (EPA Brief at 32:20), the picture presented by these documents indicates that Ecology went at least a substantial part of the way toward fulfilling the public participation requirements for TMDL submittal.  These requirements are set forth in the 1997 memorandum of agreement between Ecology and EPA.[39]  In sum, to satisfy the public participation requirements, Ecology must make all the information used to develop the TMDL available, compile and maintain a list of interested parties, notify interested parties before establishing the TMDL (including a timetable for decision-making, issues under consideration, alternative courses of action, how to access documents, and who to contact for more information), and conduct "public consultation" (which "may take many forms including, for example, public hearings, public meetings, advisory groups, ad hoc committees, task forces, or workshops").[40]  Between the contents of the June 2006 "focus" and "frequently asked questions" documents, the reports of meetings with interested parties, and the public availability of the draft TMDL and supporting studies, Ecology made substantial strides towards satisfying these requirements.[41]

---

[38] Ex. D at 3 – 4.
[39] AR 34 at 466.
[40] *Id.*
[41] Exs. A, B, and C; Ex. D at 3 – 4; AR 49 at 1019; AR 90 at 1320.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 10
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

**D.    The Court should heavily discount Ecology's post-hoc explanation that it abandoned the TMDL effort because of scientific uncertainty.**

**i.    The real reason Ecology decided to submit no TMDL was to avoid struggle with the Spokane River dischargers.**

The record of documents generated during the period from release of the draft TMDL (June 2006) through implementation of Ecology's decision to abandon the effort and forgo the TMDL in favor of an alternative approach (mid-2011) show that the reason for Ecology's decision was a desire to avoid having to face opposition from the NPDES-permitted dischargers on the river (intervenor-defendants Spokane County and Kaiser Aluminum, Inland Empire Paper, and the Cities of Spokane and Liberty Lake).[42]  EPA shared this desire.[43]  In this period, the agencies were just reaching the end of a decade of adversarial processes with these same dischargers over the Spokane River dissolved oxygen TMDL, which similarly required substantial pollution discharge reductions and associated resource expenditures by these dischargers.[44]  Ecology and EPA feared that progressing with the PCB TMDL would result in another, similar lengthy and intensive struggle.

**ii.    The primary evidence for Ecology's asserted "scientific uncertainty" motive for TMDL abandonment is Ecology's post-hoc statement that the Court should severely discount.**

Ecology and EPA would now have the Court believe that a primary reason for abandonment of the PCB TMDL effort was scientific uncertainty about the sources of substantial

---

[42] AR 14A at 503; AR 64 at 1071; AR 78 at 1278 ("It took 10 plus years and was our most costly TMDL …."); AR 79 at 1282; AR 80 (draft of a section of the *Spokane River Toxics Reduction Strategy* explains "Ecology is not interested in a protracted political and legal struggle that may take a decade to resolve"); AR 84 (straight-to-implementation "is a legitimate option for PCBs that we would like to pursue based on our experience with the [dissolved oxygen] TMDL").

[43] AR 50 ("the discharge permit holders have already been roughted up in recent years over the phosphorus/[dissolved oxygen] TMDL"); AR 56 at 1036; AR 57 at 11037.

[44] AR 64 at 1071; AR 92 at 1515 – 1521; AR 96 at 1734 - 1735 and 1737 – 1741; AR 97 at 1827 (Idaho dischargers challenge TMDL) and 1843 (describing discharger obligations generally); AR 99 at 1954 – 1957.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 11
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

portions of the PCB loading in the Spokane River. They rely chiefly on a single document to support this assertion; the transcript of the March 27, 2013, testimony of Ecology manager Jim Bellatty given before the Washington Pollution Control Hearings Board in its hearing on Plaintiffs' challenge to the NPDES permit for the new Spokane County sewage treatment plant.[45] The Court should see through this – the cited portions of the transcript report post-hoc Ecology statements obviously intended to assist Ecology's litigation position. The scientific uncertainty basis Bellatty provides for Ecology's decision to forgo TMDL submission is generally absent from the pre-lawsuit documentary trail. Indeed, in 2006, when considering the draft PCB TMDL, Ecology identified only the need for additional stormwater and fish tissue PCB data for the TMDL's completion.[46] And then it collected this data and added it to the TMDL.[47]

As discussed previously, presumably with the assistance of counsel, Ecology has concocted documents with statements intended to assist its litigation position since its intervention in this lawsuit. Bellatty's testimony before the Board (AR 132), elicited by the government attorney also representing Ecology here almost exactly one year after it intervened in this case, was manifestly developed with the assistance of counsel and almost certainly designed to assist it in this case rather than the one before the Board in which it was offered. In the Board proceeding, at least in Plaintiffs' view, the validity of the data in the *Source Assessment* was the key issue, and the reasons that Ecology did not submit the TMDL as final and the identification of additional information that Ecology would ideally have to include in the TMDL were not particularly relevant to the Board's consideration of the issues before it. This, along with a desire to avoid subjecting the Board to additional testimony about matters only at

---

[45] AR 132; EPA Brief at 17 and 32 – 33; Ecology Brief at 4 – 5.
[46] AR 14A at 503;AR 53; AR 54; AR 55.
[47] AR 14A at 503; AR 77.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 12
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    best marginally important to the Board's consideration, informed Plaintiffs' on-the-spot strategic

2    decision not to cross-examine Bellatty about the asserted scientific uncertainty reason for

3    abandonment of the TMDL effort during the Board hearing.

4            While a more free-ranging cross-examination of Bellatty would certainly have elicited

5    much useful information about the underlying facts in this case, upon urging of EPA and the

6    defendant-intervenors, the Court declined to allow the discovery procedures in this case, where

7    that cross-examination would have been appropriate.[48]  Plaintiffs respectfully request that the

8    Court take this into consideration in determining whether and how much to weigh Bellatty's

9    post-hoc, self-serving testimony.

10           iii.    **Lack of a complete understanding of TMDL sources is no reason to
                     forgo the TMDL anyway.**

11           In any event, the existence of significant "data gaps" does not constitute a legitimate

12    reason for abandonment or rejection of a TMDL.  That substantial questions and uncertainty

13    remain after 30 years of Ecology studies of the Spokane River PCB problem is no reason to

14    forgo adoption of a TMDL – the CWA-mandated clean-up plan.  It seems likely that Ecology

15    will never have an entirely complete understanding of the PCB problem or the PCB sources,

16    which it and EPA suggest should forever excuse them from adopting this TMDL.

17           The CWA specifically instructs how this type of scientific uncertainty is to be addressed

18    in TMDLs, requiring that a TMDL include "a margin of safety which takes into account any lack

19    of knowledge concerning the relationship between effluent limitations and water quality."[49]  In

---

[48] Order (Dkt. 49).

[49] 33 U.S.C. § 1313(d)(1)(C); *see also,* 40 C.F.R. § 130.2(g) (defining "load allocation" and stating "Load allocations are *best estimates* of the loading, which may range from *reasonably accurate estimates* to gross allotments, *depending on the availability of data* and appropriate techniques for predicting the loading.  Wherever possible, natural and nonpoint source loads should be distinguished.") (emphasis added); and *id.* at § 130.7(c)(1)(i) ("Site specific information should be used *whenever possible*.") (emphasis added).

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 13
No. 11-1759RSL

1    other words, a lack of understanding about how wasteload allocation-based effluent limits on

2    polluters will achieve compliance with water quality (due to uncertainty about where all the

3    pollution is coming from, or "any lack of knowledge") is not a reason to forgo a TMDL – it is

4    instead to be accommodated by the inclusion of a margin of safety in the determination of the

5    wasteload allocations.

6        As Professor Houck's TMDL book explains:

7

8        The Achilles' heel of water quality standards-based regulation has always been
        the difficulty of ascribing and quantifying environmental effects for particular
9        discharge sources.  There is always another possible source, or another possible
        reason, that the fish in Lake Pontchartrain are dying.  There is always an arguable
10        threshold level for pollutants that may not harm fish, or for oxygen levels below 5
        milligrams per liter.  And when we come to more complex biological impacts
11        such as the fate and effects of nutrients, particularly those effects hundreds of
        miles downstream, we are beyond any pretense of precise mathematics for cause
12        and effect decisions.  The question is whether we are also, for these same reasons,
        beyond the reach of law.
13

14        We should not be.  [33 U.S.C. § 303(d)] itself speaks directly to the issue in
        requiring a margin of safety in its TMDLs in order to accommodate the
15        uncertainty of its underlying science.  Other major provisions of the CWA and the
        Clean Air Act [], hazardous waste laws, and wildlife and endangered species laws
16        as well – require similar, 'best guess' judgment when we are at the far edge of
        science and decisions need to be made.  Reviewing courts have been generally
17        quite tolerant of the mix of science and best guesswork that composes most risk-
        based environmental decisions.  'Good science' – a catch phrase of the 1990s –
18        does not mean precision; it means the best science can do at the time.

19

20        This said, legal challenges will arise over the degree of science necessary to
        support load calculations and their allocations to particular sources.  As those
21        challenges mount, it will be important first to distinguish between the allocations
        and the calculations themselves.  Allocation of loadings to particular sources in
22        the TMDL process is entirely political, as it is in the analogous state
        implementation plan process of the CAA; the mix of reductions from point and
23        nonpoint sources a state may choose to meet its ambient standards is a matter for
        the state to legislate, negotiate, or otherwise determine.  As for the underlying
24        calculations, it is reasonable that they be rationally derived from the best available
        data; it is unrealistic to require more.  Indeed, it would be fatal.
25

26

27

28

29    PLAINTIFFS' REPLY AND RESPONSE ON
    CROSS MOTIONS FOR SUMMARY
    JUDGMENT - 14
    No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Courts may understand.  In one significant challenge to TMDL calculations, involving dioxin loadings on the Lower Columbia River, EPA's numbers were upheld over a variety of objections to the methods by which they were derived.  If the courts continue to respect the limits of science and its role in TMDL decisionmaking, as Congress did, and as the Lower Columbia court did, the process will move forward toward its abatement goals.  If, on the other hand, courts begin to require the hypertechnical, isolated, cause-and-effect kinds of proof that are emerging from cases in hazardous waste regulation and toxic torts, TMDLs will never get off the ground.  Science, in this area of the law, will never deliver precision.[50]

Case law also shows that scientific uncertainty is acceptable in TMDLs.[51]

EPA's 2011 *PCB TMDL Handbook* (AR Supp. 8) even provides guidance on how to address uncertainty on the question of PCB sources, which is apparently a common issue.  It describes three possible approaches to developing PCB TMDLs, ranging from non-modeling approaches that depend on simplistic assumptions to more complicated modeling that still produce only estimates.[52]  The *Handbook* even discusses the precise uncertainty present here – the incompleteness of source identification – by telling states that they should just use the best available data.[53]  Indeed, according to the *Handbook,* a state need not even identify PCB contributions from air sources or air source categories.[54]  And, "[w]here discharge data on particular sources or source categories is not available when developing the TMDL, follow-up

---

[50] O. Houck, *The Clean Water Act TMDL Program: Law, Policy, and Implementation* 58 - 59 (2nd ed., 2002) (excerpts attached to Plaintiffs' motion, Dkt. 81-12, p. 32).
[51] *Natural Res. Def. Council v. Muszynski*, 268 F.3d 91, 101- 103 (2nd Cir. 2001); *Friends of the Earth v. EPA*, 346 F. Supp. 2d 182, 196 – 200 (D.D.C. 2004), *rev'd on other grounds, Friends of the Earth v. U.S. Envtl. Prot. Agency,* 446 F.3d 140 (D.C. Cir. 2006); *Dioxin/Organochlorine Ctr. v. Rasmussen*, No. C93-33D, 1993 U.S. Dist. LEXIS 15595, *12 – 17 (W.D. Wash. 1993), *aff'd, Dioxin/Organochlorine Ctr. v. Clarke*, 57 F.3d 1517 (9th Cir. 1995); *City of Arcadia v. State Water Res. Control Bd.*, 135 Cal. App. 4th 1392, 1411 – 1413 (Cal. App. 4th Dist. 2006).
[52] AR Supp. 8 at 2997.
[53] *Id*. at 2998 ("Although a comprehensive source assessment can be challenging, states are encouraged to consider the best available data in identifying PCB sources, and to describe how PCB sources were identified.") and 3004 ("Where source-specific data are not available, states are encouraged to develop representative estimates for loadings for each source category or land use.").
[54] *Id*. at 3015.

PLAINTIFFS' REPLY AND RESPONSE ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 15
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

monitoring by those sources is encouraged."[55]  It is acceptable for a TMDL to "acknowledge that reducing NPDES permitted point source discharges alone will not be sufficient to achieve" water quality standards.[56]

      **E.**    **Ecology's issuance of NPDES permits to Spokane River dischargers further evinces Ecology's intent.**

      While it certainly is true that the individual NPDES permits that Ecology issued in 2010 and 2011 to Spokane River dischargers Kaiser Aluminum, Inland Empire Paper, and the sewage treatment plants operated by the City and County of Spokane, and the City of Liberty Lake, are not directly at issue in this case, Ecology's actions and statements in issuing these permits supports Plaintiffs' assertion that Ecology has clearly expressed intent to forgo the Spokane River PCB TMDL.

      First, it is important to understand that if the TMDL had been finalized and adopted before issuance of these permits, the effluent limitations for PCBs that they contain would have been "consistent with the assumptions and requirements of" the wasteload allocations that the TMDL specified for them.[57]  Thus, the process for Ecology's determination of appropriate PCB effluent limitations would have focused on the numeric loading limits provided by the allocations, based in the draft on allowing these permittees to discharge PCBs only at 5.32 picograms per liter ("pg/l"), and the permits would presumably also include interim effluent limitations and compliance schedules to allow the polluters time to figure out and implement the

---

[55] *Id*. at 3013.
[56] *Id*. at 3005.
[57] 40 C.F.R. §122.44(d)(1)(vii)(B); *Pronsolino*, 291 F.3d at 1132; *Anacostia Riverkeeper, Inc. v. Jackson*, 798 F.Supp.2d 210, 216 – 217 (D.D.C. 2011); AR 24 at 305.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 16
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

technological means to attain the 99 + percent PCB discharge reductions these effluent limitations would require.[58]

Ecology and EPA anticipated that the probable technological challenges and expense of making these PCB-concentration reductions in the discharges would lead these permittees to oppose the PCB TMDL, as they had the dissolved oxygen TMDL, to avoid inclusion of TMDL-based effluent limitations in their NPDES permits.[59]  By abandoning the PCB TMDL, Ecology could issue these permits without the TMDL-based PCB effluent limitations, and use an asserted lack of information to include only narrative PCB effluent limitations virtually identical to those the Washington Pollution Control Hearings Board found insufficient in the Spokane County sewage treatment plant permit.[60]  This evidences the benefit, in terms of conflict avoidance, that Ecology intended to achieve by forgoing the TMDL.

## III.    THE CONSTRUCTIVE SUBMISSION DOCTRINE IS AVAILABLE

The Court should reject EPA's argument that the constructive submission doctrine cannot apply to a claim concerning a state's failure to promulgate a *single TMDL* for three reasons. First, the cases cited by the parties do not foreclose Plaintiffs' claim but rather demonstrate its viability.  Second, application of the construction submission theory in the single TMDL context under these exceptional circumstances does not interfere with state discretion to prioritize TMDL development.  Third, the strong language and policies in the CWA demand that states and EPA not evade promulgation of any TMDL through judicially-sanctioned loopholes.

---

[58] AR 49 at 1019; AR 90 at 1413 - 1415; AR 56 at 1036; WAC 173-201A-510(4).
[59] AR 14A at 503; AR 50 at 1021 ("soooo much fun") and 1022 ("So this not, I repeat NOT! going to be a quick TMDL."); AR 56 at 1036 ("Based on the reductions needed, it will be a hard sell."); AR 57 at 11037 ("U-G-L-Y"); AR 80 ("protracted political and legal struggle").
[60] *Sierra Club, et al. v. Ecology, et al.*, PCHB No. 11-184 (Findings of Fact, Conclusions of Law, and Order, July 19, 2013) at 12 -15 and 22 – 27;AR 91 at 1482 – 1485; AR 92 at 1521; AR 93 at 1643, 1645, and 1650; AR 95 at 1695 – 1696; AR 96 at 1741; AR 97 at 1817, 1842, and 1847; AR 101 at 2147; AR 103 at 2317 – 2319; AR 104 at 2402; *see also,* Plfs' motion (Dkt. 81) at 19.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 17
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

i.    **Plaintiffs' claim is available under the constructive submission jurisprudence.**

To prevail on their claim, Plaintiffs "must prove that EPA has a nondiscretionary duty" to establish a TMDL for the Spokane River.[61]  Under section 303(d) of the CWA, EPA has a nondiscretionary duty to approve or disapprove a TMDL submitted by a state within 30 days; where EPA disapproves a TMDL, the agency must promptly promulgate its own.[62]  EPA's nondiscretionary duty arises not only where a state submits an inadequate TMDL but also where a state fails to submit a TMDL.[63]  The crux of the parties' dispute is whether EPA's duty to act can arise where a state fails to submit only a particular TMDL.

EPA bases its argument that the constructive submission doctrine is not available in the single TMDL context on the Ninth Circuit's decision in *San Francisco Baykeeper.*[64]  In that case, the Ninth Circuit addressed a claim and specific facts that are readily distinguishable from those in this case, resulting in a decision that does not create binding precedent foreclosing Plaintiffs' theory here.  In *San Francisco Baykeeper*, the plaintiff argued "that California's failings under the CWA [] triggered a duty on the part of the EPA to *establish TMDLs for the entire state.*"[65]  The Ninth Circuit held that because the state "submitted at least eighteen TMDLs and [] established a schedule for completing its remaining TMDLs," the state had not "clearly and unambiguously decided not to submit any TMDLs."[66]  As such, the Ninth Circuit was not presented with and did not decide the question of whether a claim seeking to compel EPA to

---

[61] *See San Francisco Baykeeper*, 297 F.3d at 881 (citing 33 U.S.C. § 1365(a)(2)).

[62] 33 U.S.C. § 1313(d)(2).

[63] *See City of Arcadia*, 411 F.3d at 1105-06 ("EPA is also under a mandatory duty to establish a TMDL when a State fails over a long period of time to submit a TMDL; this 'prolonged' failure can amount to the 'constructive submission' of an inadequate TMDL, thus triggering the EPA's duty to issue its own.") (citing *San Francisco Baykeeyer,* 297 F.3d at 880-84).

[64] EPA Br. at 24-27.

[65] 297 F.3d at 881 (emphasis added).

[66] *Id.* at 883 (citing *Hayes* 264 F.3d at 1024).

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 18
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

issue a single TMDL where a state refuses to submit that particular TMDL is viable.  Given that the claim pressed in this case was not presented to the Ninth Circuit in *San Francisco Baykeeper*, any discussion about a claim in the single TMDL context is dicta and not binding on the outcome of this case.[67]  Accordingly, *San Francisco Baykeeper* does not bar Plaintiffs' claim, and neither does any other case cited.

Furthermore, EPA concedes, as it must, that some of the cases the agency relies on use language that suggest a constructive submission can arise in the single TMDL context.  For example, *Hayes* explained that the "constructive-submission theory . . . applies only when the state's actions clearly and unambiguously express a decision to submit no TMDL for a particular impaired waterbody."[68]  Case law suggests that the failure to submit a single TMDL can constitute a constructive submission.[69]

EPA concludes its argument with a reference to the lack of precedent compelling EPA to act where a state has failed to submit a single, particular TMDL; the dearth of case law on this issue does not mean that the theory is unavailable to the Plaintiffs but rather highlights that this case presents a novel question unconstrained by binding case law.

### ii. Plaintiffs' requested relief will not interfere with state discretion and priorities.

EPA's longwinded argument about how Plaintiffs' claim interferes with state discretion and prioritization of resources is a smoke screen.[70]  Ecology has not placed the Spokane River TMDL at the back of the line while it focuses on higher priority TMDLs.  Rather, through its

---

[67] *See Espinosa v. United Student Aid Funds*, 553 F.3d 1193, 1199 n.3 (9th Cir. 2008) ("Anything [a prior case] has to say as to matters not presented in that case is, in any event, dicta and thus not binding on us.")
[68] *Hayes,* 264 F.3d at 1024; *and see* EPA Br. at 26 (admitting that *Hayes* discusses constructive submission in the singular).
[69] *See, Scott*, 741 F.2d at 994 (constructive submission of TMDL for Lake Michigan).
[70] EPA Br. at 25-26.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 19
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    actions and words Ecology has boldly expressed its intention to ignore its mandatory duty to

2    issue a TMDL for the Spokane River.  This expression constitutes an affirmative determination

3    not to submit a required TMDL, which equates to a constructive submission.[71]  Further, Plaintiffs

4    are not challenging the timeliness or substantive adequacy of a state's TMDL submission but

5    rather EPA's failure to act given the state's complete refusal to issue a TMDL for a particular

6    river.[72]  Given the facts of this case, EPA's attempt to cast Plaintiffs' claim as an interference

7    with state discretion is merely a ploy to distract the Court and should be rejected.  Because the

8    limited circumstances of this case do not require the Court to interfere with and re-organize a

9    state's order of priorities for establishing TMDLs, a ruling for the Plaintiffs would not flood the

10   courthouse doors as EPA's hyperbole suggests.

11

12         **iii.    The CWA prohibits both the state and EPA from shirking their mandatory
                     duties to promulgate a TMDL.**

13

14         The purpose of the 33 U.S.C. §1313(d)(2) constructive submission doctrine, from its start

15   in *Scott v. City of Hammond*, 741 F.2d 992 (7th Cir. 1984), has been the liberal interpretation of

16   the CWA to achieve its objectives, particularly to disallow a "state's refusal to act to defeat the

17   intent of Congress that TMDL's be established promptly."[73]  In exceptional circumstances such

18   as these where a state refuses to act and the availability of a constructive submission claim to

19   force EPA to take up the TMDL itself is the only means available to remedy the permanent

20   failure to have a TMDL, such a result would subvert the intent and design of the CWA to

---

[71] *Id.* at 1023 ("The constructive-submission theory turns on whether the state has determined not to submit a required TMDL for a given impaired waterbody.")
[72] See *Hayes*, 264 F.3d at 1024 (the "constructive-submission theory is not designed to challenge the timeliness or adequacy of the state's TMDL submissions").
[73] *San Francisco Baykeeper*, 297 F.3d at 882 (quoting *Scott*, 741 F.2d at 998); *and see Ala. Ctr. for the Env't v. Browner*, 20 F.3d 981, 983 – 984 (9th Cir. 1994); *Fox*, 93 F.Supp.2d at 542; *Kingman Park Civic Ass'n v. U.S. Envtl. Prot. Agency*, 84 F.Supp.2d 1, 6-8 (D.D.C. 1999) ("Where a state has made a decision that would otherwise trigger EPA review, the state may not evade such review by simply refusing to reduce its decision to a formal submission.").

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 20
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

achieve vital national goals.[74]  It is implausible that Congress would wish to allow "a state to immunize itself from the CWA's important TMDL provisions through the simple expedient of refusing to submit TMDL calculations to EPA."[75]

A ruling that a constructive submission cannot occur where a state willfully and intentionally determines not to issue a particular TMDL would create a major loophole in section 303(d), allowing both the state and EPA to forever avoid promulgating any particular TMDL. Under EPA's reasoning, once a state has promulgated a sufficient number of TMDLs, the state may sit back on its heels in perpetuity and refuse to issue any TMDL it likes without the risk that EPA or citizens could eventually force its development.  This loophole would undermine the plain language and policies behind section 303(d), which demonstrate strong congressional intent that issuance of a TMDL by either the state, or EPA where the state's actions are inadequate, is mandatory.[76]  Indeed, Congress's decisions not to trust TMDL issuance solely to the states and not to provide any state with a second bite at the apple where EPA determines the state's submission was inadequate show that Congress placed a high priority on the timely issuance of adequate TMDLs.  Further, the statute's tight timeline for EPA to fulfill the agency's non-discretionary duties to review and adopt-if-inadequate evince the sense of urgency Congress placed on issuance of TMDLs once water-quality limited waters are identified.[77]

In sum, what the CWA requires to clean up waters that do not meet state water quality standards (i.e., 303(d)-listed waters) is the adoption of a TMDL; it does not allow for the state

---

[74] *See Prosolino*, 291 F.3d at 1129; *and see Sierra Club v. Meiberg*, 296 F.3d 1021, 1025 (11th Cir. 2002) ("TMDLs are central to the [CWA's] water quality scheme").
[75] *Kingman Park*, 84 F.Supp.2d at 6.
[76] *See* 33 U.S.C. § 1313(d)(2) ("Each State *shall submit* to the Administrator . . . [a TMDL]. . . . The Administrator *shall* either approve or disapprove such [TMDL] not later than thirty days after the date of submission.") (emphasis added).
[77] *See Idaho Sportsmen's Coalition*, 951 F.Supp. at 967 ("The role of TMDLs in the CWA strategy for improving water quality confirms that they were to be developed quickly.").

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 21
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

and/or EPA to substitute some other process or type of clean-up plan, nor to develop a loophole to forever evade issuance of a TMDL.[78]

## IV.    PLAINTIFFS' CLAIM IS PROPER UNDER THE CLEAN WATER ACT

Plaintiffs claim that EPA has failed to perform its non-discretionary TMDL-review and – adoption duty under 33 U.S.C. § 1313(d)(2) upon Ecology's constructive submission of no TMDL for PCBs in the Spokane River.  This "failure of the Administrator to perform any act or duty under [the CWA] which is not discretionary with the Administrator" gives rise to a claim under the CWA citizen suit provision.[79]  The key question for the Court in reviewing this claim is whether "the state's actions clearly and unambiguously express a decision to submit no TMDL for a particular impaired waterbody," in this case for PCBs in the Spokane River.[80]  If the Court finds such "expression" by the state, it should grant declaratory and other appropriate relief to the Plaintiffs under 33 U.S.C. § 1365(a)(2).  If the Court cannot find such "expression," there is no constructive submission and no non-discretionary duty, in which case Plaintiff's CWA citizen suit claim would have to fail.

The availability of relief under the CWA citizen suit provision provides an "other adequate remedy in a court," thus precluding Administrative Procedure Act ("APA") judicial review of any purported EPA final agency action electing to find that there has been no constructive submission.[81]  Indeed, this has been the explicit basis for dismissal of APA claims asserted in constructive submission cases where CWA citizen suit claims have also been made.[82]

---

[78] 33 U.S.C. § 1313(d)(2); *e.g., City of Arcadia*, 411 F.3d at1105; *Pronsolino*, 291 F.3d at 1127-28.
[79] 33 U.S.C. § 1365(a)(2); *Hayes*, 264 F.3d at1022 – 1023; *San Francisco Baykeeper*, 297 F.3d at881.
[80] *Hayes*, 264 F.3d at 1024; *see also San Francisco Baykeeper*, 297 F.3d at 881 – 883.
[81] 5 U.S.C. § 704.
[82] *Hayes*, 264 F.3d at 1025 ("Because review of Plaintiffs' claim *is* available under the [CWA], it is not subject to review under the APA.") (emphasis in original); *Fox*, 93 F. Supp. 2d at560; *Kingman Park*, 84 F. Supp. 2d at9; *see also Or. Natural Res. Council v. U. S. Forest Service*, 834 F.2d 842, 851 (9th Cir. 1987) ("Where plaintiffs may

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 22
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1   Nor is an APA claim to "compel agency action … unreasonably delayed," under 5 U.S.C. §

2   706(1), available for a constructive submission claim.[83]

### V.    STANDARD OF REVIEW

**A.    The Court should not defer to EPA's position on Ecology's constructive submission of the Spokane River PCB TMDL.**

While the CWA provides no standard of review for a 33 U.S.C. § 1365(a)(2) citizen suit claim like this one, the appropriate APA standard of review to import is that for agency action "unlawfully withheld or unreasonably delayed," under 5 U.S.C. § 706(1), rather than that applied to a challenge to agency action actually taken, under 5 U.S.C. § 706(2), as EPA asserts.[84]  Under this standard, the Court – not the agency – first determines whether the agency has a duty to act before evaluating whether there has been an unreasonable delay.[85]

In this case, since 33 U.S.C. § 1313(d)(2) specifically limits EPA's time to respond to a state's TMDL submission, the only question is whether Ecology has constructively submitted the TMDL, thus triggering EPA's obligation under that subsection.[86]  This question is for the Court to decide without deference to EPA's take on the issue.[87]  This aligns with the general principle that a federal court, not EPA or a delegated state, determines whether the facts presented give rise to liability

---

[83] otherwise proceed under the citizen suit provision, they should not be allowed to bypass the explicit requirements of the [CWA] … through resort to … the APA.").
[83] *San Francisco Baykeeper*, 297 F.3d at 885 – 886.
[84] EPA Brief at 8, 21 – 23.
[85] *In re Am. Rivers and Idaho Rivers United*, 372 F.3d 413, 417 – 418 (D.C. Cir. 2004); *Browner v. Evans*, 257 F.3d 1058, 1067 – 1068 (9th Cir. 2001) (considering claim of unreasonable delay only after concluding that Secretary of Commerce had duty to act).
[86] *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1998) ("when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts … must compel the agency to act").
[87] *E.g., Evans*, 257 F.3d at 1067 – 1068; *Forest Guardians,* 174 F.3d at 1186.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 23
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1   in CWA citizen suits.[88]  This key question is of the type that the Court is accustomed to and has a

2   duty to answer.[89]  No scientific or technical analysis is needed for the Court to determine

3   whether Ecology has expressed such a decision.

4        EPA's assertion that Ecology has not constructively submitted a TMDL and, thus, that

5   EPA has no non-discretionary duty under CWA section 303(d)(2) to act upon that submission is

6   not entitled to deference because the CWA unambiguously requires specific agency action of

7

8   EPA whenever a TMDL is submitted.[90]

9        Additionally, the Court need not defer to EPA's factual assertion regarding constructive

10  submission because it is contradicted by the facts in this case and is therefore unreasonable.[91]

11

12  **B.    The Court should not defer to EPA's April 12, 2013, determination.**

13       While Plaintiffs do *not* contend that the Court's consideration of EPA's April 12, 2013,

14  letter (setting forth EPA's reasoning and conclusion that Ecology had not made a constructive

15

16  submission of no TMDL for Spokane River PCBs) is prohibited, this letter is plainly a post-hoc

17  rationale offered in service of EPA's litigation position that warrants no deference.[92]  There is no

18

19

20

21  [88] *San Francisco Baykeeper v. Cargill Salt Div.*, 481 F.3d 700, 706 (9th Cir. 2007) (holding that "a court may, in
entertaining a citizen suit, decide whether a discharge . . . violates the CWA even though the regulating agency

22  determined that the discharge was not subject to the requirement of a permit").
[89] *Hayes*, 264 F.3d at 1024.

23  [90] *Chevron, U.S.A., Inc. v. Natural Res. Defense Council*, 467 U.S. 837, 842 – 843 (1984); *Fox*, 93 F. Supp. 2d at
559; 33 U.S.C. § 1313(d)(2).

24  [91] *See Selkirk Conservation Alliance v. Forsgren,* 336 F.3d 944, 954 (9th Cir. 2003) (factual conclusions are entitled
to deference "so long as the agency's decision is based on a reasoned evaluation of the relevant factors"); *Sierra*

25  *Club v. U.S. Envir. Prot. Agency*, 346 F.3d 955, 961 (9th Cir. 2003) ("While our deference to the agency is
significant, we may not defer to an agency decision that 'is without substantial basis in fact.'") (quoting *Fed. Power*

26  *Commc'n v. Florida Power & Light Co*., 404 U.S. 453, 463 (1972)); *Inst. for Wildlife Prot. v. Norton*, 174 Fed.
Appx. 363, 366-67 (9th Cir. 2006) (the deference accorded to an agency's determination of scientific disputes is

27  bounded and no deference is warranted when the agency crosses the boundary).
[92] *San Francisco Baykeeper*, 297 F.3d at 886 (allowing consideration of a "post hoc staff memorandum" along with

28  the administrative record).

29  PLAINTIFFS' REPLY AND RESPONSE ON
    CROSS MOTIONS FOR SUMMARY
    JUDGMENT - 24
    No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

reason here to depart from the general rule that "litigation-inspired" post-hoc rationales are not entitled to deference.[93]

There is no reason for the Court to treat the April 12, 2013, letter – undoubtedly written with assistance of counsel as a means to advance EPA's litigation position – differently from EPA's litigation briefs.  Plaintiffs first told EPA of their claim regarding the constructive submission by letter dated July 18, 2011.[94]  During the more than three-month period between that letter and the filing of the complaint on October 21, 2011, EPA provided no response whatsoever to Plaintiffs' allegations.  EPA declined to avail itself of the opportunity to correct the violation, or to otherwise explain itself, during the mandatory pre-suit notice period, which is the purpose of the notice period.[95]

In resolving Plaintiffs' motion on the scope of review, the Court issued a November 6, 2012, order requiring Plaintiffs to confer with EPA regarding supplementation of the administrative record.[96]  In early December 2012, Plaintiffs did just that by requesting that EPA and its counsel include various documents in the administrative record.[97]  For good measure as an overture to settlement discussions, Plaintiffs' letters also asked EPA to find a constructive submission and perform its 33 U.S.C. § 1313(d)(2) duty to approve or disapprove the TMDL.[98]  In its April 12, 2013, letter, EPA explained the basis for its assertion that there has been no

---

[93] *U.S. Dept. of the Navy*, 966 F.2d at 775  (citing *Bowen*, 488 U.S. at212); *Earth Island Inst.,* 865 F.Supp. at 1374 – 1375.
[94] Complaint (Dkt. 1) at Ex. 1.
[95] *WaterKeepers N. Cal. v. AG Indus. Mfg.*, *Inc.,* 375 F.3d 913, 916 - 917 (9th Cir. 2004).
[96] Order (Dkt. 49) at 7.
[97] AR B and C; Exs. E and F.  Plaintiffs request judicial notice of or supplementation of the record with these documents.
[98] AR B and C.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 25
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1
2

constructive submission – many months after receiving Plaintiffs' notice of claim and the start of this litigation.[99]

## VI.    INJUNCTIVE RELIEF.

Upon determining that Ecology's constructive submission of no TMDL for PCBs in the Spokane River triggered EPA's nondiscretionary duty under 33 U.S.C. § 1313(d)(2), the Court should order EPA to prepare and issue the TMDL itself on a tight timeline in respect for the CWA's intent that TMDLs be adopted promptly.[100]  Given that 33 U.S.C. § 1313(d) sets the timeline for EPA's establishment of a TMDL at 30 days from its disapproval of a state-submitted TMDL, 90 days seems reasonable.

The Court should reject EPA's argument that the Court should first order it to approve or disapprove the TMDL constructively submitted by Ecology, thus allowing EPA the opportunity to avoid establishing its own TMDL if it approves.  Since Ecology's submission is "constructive" rather than "actual," it is hard to see how EPA could conceivably approve the TMDL.  There is no way that the constructive submission of no TMDL (i.e., Ecology's decision not to submit the TMDL to EPA) could be approved by EPA under its TMDL regulations, guidance, and agreement with Ecology, which contain detailed requirements for TMDLs, not least including "a final allocation scheme," obviously not satisfied here.[101]  Furthermore, the Ninth Circuit has expressly held that ordering EPA to itself establish TMDLs constructively submitted by a state is an acceptable remedy within a district court's discretion in a constructive

---

[99] AR A.
[100] 33 U.S.C. § 1365(a); *Ala. Ctr. for the Env't v. Reilly*, 762 F. Supp. 1422, 1427 (W.D. Wash. 1991).
[101] 40 C.F.R. §§ 130.2(i) and 130.7(c); AR 34 at 468; *and see*, Ex. E.  Plaintiffs ask that the Court judicially notice Exhibit H, *TMDL Review Guidelines*, EPA Region 10, January 2002, attached to this brief.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 26
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

submission case.[102]  Doing so here seems particularly appropriate given EPA's responsibilities for cross-border TMDL issues, direct regulation of the Idaho dischargers, and fiduciary duty to the Spokane Tribe.[103]

Plaintiffs are puzzled by EPA's protest that an order requiring prompt establishment of the TMDL would not alleviate Plaintiffs' injuries or serve the public interest in advancing the cleanup of the Spokane River's PCB contamination problem.  Establishment of the TMDL would entail setting a wasteload allocation for each of the dischargers that would be converted into binding numeric effluent limitations in their NPDES permits, which would force them to reduce the amount of PCBs they put in the river.[104]  In contrast to the standard means to determine the need for and level of water quality-based effluent limitations, which focuses on the level at which the discharge, considered individually, presents a "reasonable potential" to cause or contribute to violation of water quality standards, a TMDL brings into the evaluation its conclusions about how much of the pollutant can be discharged by each particular point source, in combination with all other point and non-point sources, to fit within the TMDL-derived budget of total pollution loading that will allow restoration of the waterway to water quality standards compliance.[105]  "As should be apparent, TMDLs are central to the [CWA's] water-

---

[102] *Ala. Ctr. for the Env't*, 20 F.3d at 986.
[103] AR 46 at 924; AR 51; AR 56 at 1035; AR 57.
[104] 40 C.F.R. § 122.44(d)(1)(vii)(B); *Dioxin/Organochlorine Ctr*, 57 F.3d at 1520 ("When a TMDL and specific wasteload allocations for point sources have been established, any NPDES permits issued to a point source must be consistent with the terms of the TMDL and [wasteload allocations].").
[105] 40 C.F.R. § 122.44(d)(1)(ii) and (iii); *Meiburg*, 296 F.3d at 1025 ("Because of non-point source pollution, achieving the specified water quality standard in a body of water may require more stringent limitations upon point-source discharges than would otherwise be required under the permit-issuing regime [in place without a TMDL]."); *see also*, AR 47 at 973.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 27
No. 11-1759RSL

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

quality scheme because … they tie together point-source and nonpoint-source pollution issues in a manner that addresses the whole health of the water."[106]

Indeed, in issuing the most recent NPDES permits to the Spokane River dischargers in 2010 and 2011, Ecology explained that it was not putting stringent, numeric, wasteload allocation-based PCB effluent limitations in the permits precisely because it had not finalized the TMDL.[107]

Given that the missing Spokane River PCB TMDL is a crucial "link in an implementation chain" to using NPDES limitations to attaining the CWA's goals, the Court would be right to order establishment of the TMDL on a tight timeline.[108]

## VII.    CONCLUSION

For the foregoing reasons and those set forth in Plaintiffs' motion, the Court should grant summary judgment to Plaintiffs and order EPA to establish a PCB TMDL for the Spokane River on a 90-day schedule.

RESPECTFULLY SUBMITTED this 12th day of March, 2014.

Smith & Lowney, pllc

By: s/Richard A. Smith
Richard A. Smith, WSBA #21788
Attorneys for Plaintiff
2317 E. John St.,
Seattle, WA 98112
Tel: (206) 860-2124
Fax: (206) 860-4187
E-mail: rasmithwa@igc.org

---

[106] *Meiburg*, 296 F.3d at 1025 (quotation marks omitted).
[107] AR 93 at 1645; AR 96 at 1741; AR 97 at 1847.
[108] *Pronsolino*, 291 F.3d at 1129; *Meiburg*, 296 F.3d at 1025.

PLAINTIFFS' REPLY AND RESPONSE ON
CROSS MOTIONS FOR SUMMARY
JUDGMENT - 28
No. 11-1759RSL