HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SIERRA CLUB; and CENTER FOR
ENVIRONMENTAL LAW AND
POLICY,

                    Plaintiffs,

and

SPOKANE TRIBE OF INDIANS,

                    Plaintiff-Intervenor,

v.

CHRIS HLADICK, et al.,

                    Defendants

and

SPOKANE COUNTY; KAISER
ALUMINUM WASHINGTON LLC; and
STATE OF WASHINTGON
DEPARMTNET OF ECOLOGY,

                    Defendant-Intervenors.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 11-cv-1759-BJR

PLAINTIFFS' RESPONSE TO EPA'S
MOTION FOR DISMISSAL OF THE
SUPPLEMENTAL COMPLAINTS

Plaintiffs' Response to EPA's Motion to Dismiss -
1

## I.    <u>INTRODUCTION</u>

As this Court found five year ago, "the Spokane River has been on the 303(d) list since 1996 and after nearly 20 years still contains the worst PCB pollution in the state."  Dkt. 120 at 20:13-14.  The extraordinarily degraded state of the river obligates the Department of Ecology (Ecology) to implement a Total Maximum Daily Load (TMDL) program for PCBs to the Spokane River and the Clean Water Act imposes a non-discretionary duty on EPA to prepare its own TMDL where Ecology has no credible plan for finalizing one.  *Columbia Riverkeeper v. Wheeler*, 944 F.3d 1204, 1211 (9th Cir. 2019).  This Court ordered EPA to consult with Ecology and file a reasonable plan for finalizing a Spokane River PCB TMDL, but what EPA filed was an arbitrary plan with meaningless benchmarks that does not protect water quality or human health, nor ensures any progress.  And now EPA vigorously argues that its plan has no legal consequences in any case.  The result has been more delay of a legally mandated process that Ecology and EPA continue to avoid without any improvement to PCB contamination in the river.

Continuing judicial oversight of this matter is critical to ensure compliance with the Administrative Procedure Act, the Clean Water Act, and this Court's own remand order.  As detailed below, there are several bases on which the Court should deny EPA's motion to dismiss. The Court should reject EPA's contention that the Court lacks jurisdiction to review compliance with its own order or to correct the profound shortcomings of the EPA Plan under the APA.

## II.    <u>BACKGROUND</u>

EPA's motion and other prior briefing to the Court set forth much of the relevant factual and procedural background of this case, which began in October 2011.  Mindful to avoid unnecessarily redundant briefing, Plaintiffs provide the following additional facts to place EPA's motion into context and to inform the Court about Plaintiffs' plan for next steps in these

Plaintiffs' Response to EPA's Motion to Dismiss - 2

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

proceedings, including seeking leave to amend the complaint and recovering interim fees under the Equal Access to Justice Act.

In short, EPA went through the motions to comply with this Court's remand order (Dkt. 120) but prepared an arbitrary plan (Dkt. 129-1) that is not based on reasoned analysis to promptly bring the Spokane River into compliance with PCB water quality standards, as required by the APA, Clean Water Act and this Court's order, and it will not lead to attainment of water quality standards—even if the plan is implemented, which remains in doubt.  That EPA forcefully denies its plan is enforceable or results in any legal consequences at all, in defiance of this Court's holding, underscores the peril still facing the Spokane River and those who depend on it for sustenance and recreation.

## A.    FACTUAL AND PROCEDURAL BACKGROUND.

### 1.   The Court's Ruling on Summary Judgment.

In March 2015, this Court held on partial summary judgment that EPA's inaction and enabling of Ecology's interminable PCB TMDL delays violated section 706(2)(A) of the Administrative Procedures Act (APA) because the agency "acted contrary to law in finding the Task Force, as it is currently comprised and described, a suitable 'alternative' to the TMDL." Dkt. 120 at 21:04-07.  In so holding, the Court declared:

> When an agency 'does not reasonably accommodate the policies of a statute or it reached a decision that is not one that Congress would have sanctioned . . . a reviewing court must intervene to enforce the policy decisions made by Congress.' *Environmental Defense Fund v. EPA*, 852 F.2d 1316, 1326 (D.C. Cir. 1988) (citations omitted).  An EPA regulation requires that '[s]chedules for submission of TMDLs shall be determined by the Regional Administrator and the State.' 40 C.F.R. §130.7(d)(1).  This regulation derives from Congress's direction that states submit TMDLs 'from time to time' under 33 U.S.C. § 1313(d).  **Thus, the EPA has authority to set, with a state, a schedule to complete the TMDL process**.  *See Idaho Sportsmen's Coal. v. Browner*, 951 F. Supp. 962, 968 (W.D. Wash. 1996); *see also Dioxin/Organochlorine Ctr. v. Clarke*, 57 F.3d 1517, 1527-28 (9th Cir. 1995).

*Id*. at 13-15 (internal quotation marks omitted) (emphasis added).

Accordingly, the Court remanded the matter for EPA to work with Ecology to develop and file with the Court within 120 days:

> a complete and duly adopted ***reasonable*** schedule for the measuring and completion of the work of the Task Force, including quantifiable benchmarks, plans for acquiring missing scientific information, deadlines for completed scientific studies, concrete permitting recommendations for the interim, specific standards upon which to judge the Task Force's effectiveness, and a definite endpoint at which time Ecology must pursue and finalize its TMDL.

*Id*. at 24:23-25:04 (emphasis added).

### 2. The EPA Plan.

Before the 120-day deadline, EPA filed "EPA's Plan for Addressing PCBs in the Spokane River" ("EPA Plan"). Dkt. 129-1 (filed July 14, 2015). The EPA Plan includes a schedule with several deadlines and instream PCB-concentration benchmarks, which if missed, would purportedly result in Ecology "immediately" initiating a PCB TMDL for impaired segments of the Spokane River, a TMDL development process that it states would take approximately 2.5 additional years. *Id.,* EPA Plan at 11-12.

The EPA Plan is riddled with inadequacies contrary to the Clean Water Act and adopts arbitrary deadlines and benchmarks that are insufficient to protect water quality in the Spokane River. For example, the EPA Plan:

> (1) ignores adaptive implementation under a phased TMDL that accounts for uncertainties, about which knowledge will never be perfect despite over thirty years of focused study of PCB contamination in the Spokane River;[1]

---

[1] "TMDLs established under the phases approach [should] include a schedule for installation and evaluation of nonpoint source control measures, data collection, and assessment of water quality standard attainment . . . the schedule [should] include a time frame within which water quality standards are expected to be met and within which controls will be re-evaluated if water quality standards have not been attained.  **The information would be**

Plaintiffs' Response to EPA's Motion to Dismiss -
4

(2) unreasonably relies on purported uncertainty of the applicable PCB water quality criteria, even though water quality criteria are always reviewed and revised periodically, Washington has paused its variance process, and here, the Spokane Tribe's downstream criteria must be protected notwithstanding any anticipated changes to Washington's criteria;[2]

(3) does not provide Load Allocations (LA) and Waste Load Allocations (WLA) as mandated by the CWA and essential for meaningful progress;

(4) arbitrarily departs from guidance defining the sequence for implementing the water quality-based approach required by 33 U.S.C. § 1313 and 40 C.F.R. § 130 by, among other things, wrongly putting TMDL and WLAs development last in the process;

(5) arbitrarily establishes instream water-column PCB-concentration benchmarks based on "annual central tendency of the preceding year," without considering the more relevant environmental metrics of sediment and tissue PCB concentrations (the metrics leading to the river's impaired designation, and the mandatory focus of a TMDL); and

(6) even if water-column concentrations were a reasonable metric, 200 pg/L and 170 pg/L are unreasonably high and arbitrary for the purpose of measuring progress because the Spokane River appeared to have met those benchmarks already.

---

used to determine whether the TMDL needs to be revised." *2006 Phased DMRL Clarification* at 2 (emphasis added). The EPA Plan to focus on implementation of an initial set of BMPs coupled with continued progress and status monitoring to gauge progress is similar to the adaptive implementation approach for phased TMDLs—but without the legal mandates for PCB discharge reductions that would accompany a TMDL.

[2] WAC 173-201A-260(3)(b) ("[u]pstream actions must be conducted in manners that meet downstream water body criteria…").

Plaintiffs' Response to EPA's Motion to Dismiss - 5

### 3.  Plaintiffs' Second Supplemental Complaint, Intervenors' Appeal, and Stay of Case.

Shortly after EPA filed the EPA Plan with the Court, Plaintiffs filed a Motion for Additional Relief, challenging the adequacy of the EPA Plan for the above reasons, among others.  Dkt. 135.  Then, following a conference with EPA, Plaintiffs determined that they would seek leave to amend the complaint to incorporate claims related to inadequacies of the EPA Plan. Plaintiffs then withdrew their Motion for Additional Relief and sought leave to supplement the complaint.  *See* Dkts. 145 and 146.  EPA and Defendant-Intervenors also appealed the Court's March 2015 order, but EPA soon withdrew its appeal.  *See* Dkt. 128.  In April 2016, the Ninth Circuit dismissed the remaining appeals because the Court's remand order was not a "final decision" under 28 U.S.C. § 1291.  9th Cir. Dkt. 30 (Case Nos. 15-35380, et al.).

The Court ultimately granted Plaintiffs leave to file a second supplemental complaint, which Plaintiffs filed in June 2016.  Dkts. 160 and 162 (the operative complaint, filed June 2, 2016).

### 4.  Case Held in Abeyance for Four Years and Plaintiffs' Reasons for Not Voluntarily Dismissing.

The Court ordered this case stayed on September 12, 2016.  Dkts. 182.  In Plaintiffs' motion for the stay, Plaintiffs explained that they would consider voluntarily dismissing this case depending on two factors: (1) whether Ecology issues NPDES permits with total PCB numeric effluent limitations set at the total PCB state water quality criterion, and (2) the adequacy of the then-pending Task Force "Comprehensive Plan to bring the Spokane River into compliance with applicable water quality standards for PCBs."  Dkt. 180 at 2:27-3:14. Unfortunately, Plaintiffs' hope that these items would satisfy Plaintiffs and provide meaningful water quality protections in accordance with the CWA has gone unfulfilled.

Plaintiffs' Response to EPA's Motion to Dismiss - 6

Plaintiffs notified EPA of their intention to lift the stay during conferences leading up to the parties' October 16, 2019 Joint Status Report.  Declaration of Marc Zemel in Support of Plaintiffs' Response to EPA's Motion for Dismissal (Zemel Decl.), ¶ 3.  Due to a then-pending Ninth Circuit ruling in *Columbia Riverkeeper v. Andrew Wheeler*, 9th Cir. No. 18-35982 (argued August 26, 2019), Plaintiffs decided to wait for that ruling to request a lift to the stay.  *See* Dkt. 195 at n.1.  Discussions among the parties about Plaintiffs desire to lift the stay continued thereafter, including discussions about an appropriate sequence of future proceedings considering changes in circumstances since the stay was issued.  *See* Dkt. 197 at 3:23-25.  The parties' Joint Motion to Govern followed.  Dkt. 198.

It is now nearly four years since Plaintiffs moved to stay this case and there are still no NPDES permits with PCB numeric effluent limitations.[3]  Indeed, five PCB-dischargers to the Spokane River, including Defendant-Intervenors in this case, applied to Ecology for a variance from PCB water quality standards, a process that if implemented, would permit those dischargers to continue discharging PCBs at levels that do not protect human health nor protect the Spokane Tribe's downstream water quality standards.  *See* Department of Ecology, Preproposal Statement of Inquiry (June 12, 2019), available at https://ecology.wa.gov/DOE/files/35/35e31cb8-7c0a-4ad3-b63c-69b3b7f62a70.pdf.  Moreover, Ecology appears to have paused the variance process, leaving Ecology's strategy uncertain.  *See* Press Release, Department of Ecology, EPA Water Quality Standards Create Uncertainty for Rule to Reduce PCBs Discharged into Spokane River (June 10, 2020), available at https://ecology.wa.gov/About-us/Get-to-know-us/News/2020/June-10-Spokane-River-preliminary-draft ("Ecology's work has been complicated by the federal

---

[3] The Task Force Comprehensive Plan is also wholly inadequate, as it disowns the obligation to prepare a PCB TMDL for the Spokane River, among other reasons.  *See* Zemel Decl., Exhibit 2 at p. 5 (quoting Comprehensive Plan).

Plaintiffs' Response to EPA's Motion to Dismiss - 7

government's efforts to roll back environmental protections . . . Ecology is unable to move

forward with the variance applications . . .").

Establishing numeric effluent limitations before completing a TMDL was always a

backward approach and at direct odds with the Clean Water Act, but Plaintiffs held out hope that

Ecology would include aggressive limitations in the PCB-dischargers' NPDES permits in the

interim.

> TMDLs are not self-implementing instruments, but instead serve as informational tools utilized by EPA and the States to coordinate necessary responses to excessive pollution in order to meet applicable water quality standards. *Pronsolino v. Nastri*, 291 F.3d 1123, 1129 (9th Cir. 2002). TMDLs are central to the Clean Water Act's water-quality scheme because . . . they tie together point source and non-point source pollution issues in a manner that addresses the whole health of the water. . . [T]he LAs and WLAs that make-up the TMDL are incorporated into the NPDES system through permit-based regulation of point sources. *See* EPA, Water Quality Planning and Management, 50 Fed. Reg. 1774, 1774 (Jan. 11, 1985) ('**Once a TMDL has been completed, a wasteload allocation or load allocation (WLA/LA) for that TMDL forms the basis for permit limitations for individual dischargers**.').

*Anacostia Riverkeeper, Inc. v. Jackson*, 798 F. Supp. 2d 210, 216 (D.D.C. 2011) (emphasis

added, internal citation and quotation marks omitted).

Ecology and EPA's contention that they are unable to immediately develop a PCB

TMDL for the Spokane River because they lack sufficient data is simply false. Not only have

the agencies been compiling data for more than twenty years, but EPA's own "*PCB TMDL*

*Handbook*" encourages states to use "the most recent and best available data," not perfect data.

Dkt. 135-2 at 15 (Handbook at p. 10 of 27). This comports with the absence in the CWA and

EPA's regulation of permission to delay a legally mandated pollution control mechanism "until

better science can be developed, even where there is some uncertainty in the existing data."

*Upper Blackstone Water Pollution Abatement Dist. v. EPA*, 690 F.3d 9, 22 (1st Cir. 2012). That

a TMDL will be difficult is not a legal exception, either.

Plaintiffs' Response to EPA's Motion to Dismiss - 8

1
2

**5.   The Task Force's Comprehensive Plan.**

The first deadline in the EPA Plan required the Task Force to complete a

3
4
5
6
7
8
9

"Comprehensive Plan to bring the Spokane River into compliance with applicable water quality

standards for PCBs" ("Comprehensive Plan") by December 31, 2016.  Dkt. 129-1, EPA Plan at

11.  The EPA Plan provided that "if in EPA's determination the Comprehensive Plan does not

adequately address the items [specified by EPA for the Comprehensive Plan], then Ecology

would immediately initiate development of a PCB TMDL for impaired segments of the Spokane

River, and such TMDL would be submitted for EPA's approval by July 15, 2019."  *Id.*

10
11
12
13
14
15
16
17
18
19
20
21
22

The Task Force prepared the Comprehensive Plan but EPA does not appear to have

evaluated its adequacy as required by the EPA Plan.  With no discernable improvements to PCB

water-quality in the Spokane River since the Task Force issued the Comprehensive Plan and

without any indication that EPA fulfilled its duty under the EPA Plan to review the

Comprehensive Plan for adequacy, Plaintiffs wrote to EPA and requested it to review the

Comprehensive Plan.[4]  Zemel Decl., ¶ 2, Exhibit 1.  EPA never responded to Plaintiffs' letter,

despite multiple attempts by Plaintiffs' counsel to follow-up with EPA.  *Id.*, ¶ 2.  Among the

glaring red flags in the Comprehensive Plan is the explicit assertion that Ecology might still

pursue an "alternative" to a Spokane River PCB TMDL which could delay a TMDL indefinitely.

*See id.*, ¶ 4, Exhibit 2 at p. 5.

23
24

**6.   The Spokane River Remains Impaired and is Not Improving.**

Fifteen waterbody segments of the Spokane River and Lake Spokane, and one segment of

25
26

the Little Spokane River are still impaired for PCBs and remain on Washington State's 303(d)

27
28
29

---

[4] Plaintiffs contend that the Comprehensive Plan is inadequate.  Plaintiffs' letter to EPA also contended that the Comprehensive Plan amounts to a constructive submission of a TMDL and requested EPA to review the constructive submission as well.

Plaintiffs' Response to EPA's Motion to Dismiss - 9

list of impaired waters.  Ecology remains legally obligated to prepare a PCB TMDL for these impaired segments.  *See* 33 U.S.C. § 1313(d).  Most of these segments have remained on the 303(d) list since 1996 and are not even close to meeting applicable water quality standards, nor is PCB contamination appreciably improving in the river.

No statistically relevant evidence indicates that PCB concentrations in the Spokane River are improving.  Indeed the Task Force acknowledged this in a "Water Column Status and Trend Analysis" presentation, the slideshow for which is posted on the Task Force website.  Zemel Decl., ¶ 10, Exhibit 3, available at http://srrttf.org/wp-content/uploads/2019/06/11_TrendPresentation_053019.pdf (last visited August 7, 2020).  The last slide in the presentation summarizes "Trend Analysis Conclusions," stating that although a "simple" (i.e. unreliable) analysis shows PCB concentration decreasing at one monitoring location and no significant trend at another, a "[m]ore detailed look at data is less conclusive.  It will take a large amount of data to conclusively show a trend exists."  *Id*. at p. 18.  The presentation indicates that "[e]xisting data have a fairly high variability," among other issues.  *Id*.  Indeed, substantial PCB loading to the River continues at levels far exceeding the applicable water quality standards, from both point sources and non-point sources.  *See e.g.* http://srrttf.org/wp-content/uploads/2019/04/SRRTTF_2018_TechnicalActivitiesReport_Final_03-27-2019.pdf at Table 2 (showing discharges between 221.6 pg/L and 1,937 pg/L total PCBs).  Washington Department of Health fish consumption advisories also remain in effect because of the persistent PCB contamination in the River.  *See* https://www.doh.wa.gov/DataandStatisticalReports/HealthDataVisualization/fishadvisory.

Plaintiffs' Response to EPA's Motion to Dismiss - 10

Although there has been no improvement over time, some data suggests that Spokane River water column PCB concentrations are and have been below 200 pg/L and 170pg/L at various monitoring locations, the very benchmarks in the EPA Plan that were purportedly selected to measure improvement.  *See* Dkt. 129-1, EPA Plan at 11-12; http://srrttf.org/wp-content/uploads/2019/04/SRRTTF_2018_TechnicalActivitiesReport_Final_03-27-2019.pdf. at Report p. 9, Figure 2.  These loading concentrations are above the Washington State, and orders of magnitude above the Spokane Tribe's, PCB human health criteria.  *See* WAC 173-201A-240(b); Dkt. 129-1 at 4.  Moreover, "PCB concentrations utilized to place the Spokane River and Lake Spokane on the 303(d) list were derived from fish tissue concentrations and a bioconcentration factor," making benchmarks for water quality improvement premised on instream water column concentrations unreasonable, as the EPA Plan provides. http://srrttf.org/wp-content/uploads/2019/04/SRRTTF_2018_TechnicalActivitiesReport_Final_03-27-2019.pdf at Report, p. 1; *see* Dkt. 129-1, EPA Plan at 12.

**B.    PLAINTIFFS' SUPPLEMENTAL 60-DAY NOTICE LETTER AND NEXT STEPS IN PROCEEDINGS**

For the above reasons and additional evidence that the EPA Plan is not credible, Plaintiffs intend to seek leave to amend the complaint in this matter to incorporate a renewed "constructive submission" claim under 33 U.S.C. § 1365(a)(2) to compel EPA to perform its nondiscretionary duty under 33 U.S.C. § 1313(d)(2) with regard to the Spokane River PCB TMDL.  More than sixty-days ago, Plaintiffs served EPA with a supplemental notice of intent to sue under the Clean Water Act ("Supplemental Notice Letter"), satisfying the jurisdictional prerequisite under 33 U.S.C. § 1365(b).  Zemel Decl., ¶ 4, Exhibit 2.

The Supplemental Notice Letter reminded EPA that in March 2015, this Court found:

Plaintiffs' Response to EPA's Motion to Dismiss - 11

> There comes a point at which continual delay of a prioritized TMDL and detours to illusory alternatives ripen into a constructive submission that no action will be taken. With the Task Force as presently proposed, Ecology is coming dangerously close to such a point, and with EPA's support.

*Id.* at 5 (quoting Dkt. 120 at 21:01-04).  In the five years since this Court's determination, Ecology's continual delay and illusory alternatives have crossed the line into a constructive submission of no PCB TMDL for the Spokane River, triggering EPA's non-discretionary duties. Task Force documents and Ecology's demonstrated aversion to implementing a PCB TMDL, among other factors since this Court's March 2015 finding, meet the Ninth Circuit's recent test for a constructive submission set forth in *Columbia Riverkeeper v. Wheeler*, 944 F.3d 1204, 1211 (9th Cir. 2019).  There is simply no credible plan for producing a PCB TMDL for the Spokane River, even after this Court's remand to EPA to establish a schedule, which the agencies insist has no legal effect.

Although it would be manifestly more efficient and conserve judicial resources for Plaintiffs to seek leave to amend the complaint now and for the Court to adjudicate dispositive motions on all issues at once with consolidated briefing, the only reason Plaintiffs have not yet filed their motion for leave is because of a four-year-old stipulation of the parties, which provided that EPA would move to dismiss this matter for lack of jurisdiction as the first order of business after a lift of the stay.  Plaintiffs explained to EPA on multiple occasions the inefficiency of the current process and the change in circumstances that has transpired since the parties' outdated stipulation was made, warranting a consolidated briefing schedule for dispositive motions.  Zemel Decl., ¶ 5.  But regretfully, EPA would not revisit the stipulation. *Id*.  Therefore, Plaintiffs are abiding by the stipulation and intend to move for leave to amend at an appropriate point in the near future.

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

In addition to seeking leave to amend the complaint, Plaintiff Center for Environmental Law & Policy (CELP) also intends to move for interim fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(2)(A) and Fed. R. Civ. P. 45(d)(2).  Having "prevailed on some substantial part of its claim" on partial summary judgment (Dkt. 120), CELP is entitled to an interim fee award under EAJA.  *Animal Lovers Volunteer Ass'n v.* Carlucci, 867 F.2d 1224, 1225 (9th Cir. 1989); *accord League for Costal Prot. V. Kempthorne*, No. C 05-0991-CW, 2006 WL 3797911, 2006 U.S. Dist. LEXIS 94530 at *11 (N.D. Cal. Dec. 22, 2006) (quoting House Committee Report that "[a] fee award may . . . be approved where the party has prevailed on an interim order that was central to the case").  The only reason CELP did not move for interim fees earlier was the stay of this case.

### III.   LEGAL BACKGROUND AND STANDARD OF REVIEW

### A.   SCOPE OF EPA'S LIMITED MOTION

Under the parties' stipulation and the Court's scheduling order, EPA's motion is limited to a motion to dismiss the supplemental complaints for lack of jurisdiction.  *See* Dkt. 199 at 2:10; Dkt. 200 at 11:02-03.  EPA's pending motion is limited to one argument: that the EPA Plan is not a final agency action under the Administrative Procedure Act (APA) and thus this Court lacks jurisdiction.  *See* Dkt. 200 at 2:06-08.

### B.   STANDARD OF REVIEW.

To grant summary judgment, the Court must find that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  Although not disfavored, summary judgment should only be granted cautiously. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The Court must view the evidence presented on the motion in the light most favorable to the opposing party.  *Id*. at 255.  The

Plaintiffs' Response to EPA's Motion to Dismiss - 13

moving party bears the "heavy burden" of demonstrating the absence of material fact, regardless of whether it bears the ultimate burden of persuasion at trial." *Zephyr Cove Lodge, Inc. v. First Nat'l Bank of Nevada*, 478 F.2d 1121, 1127 (9th Cir. 1973); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d).  This rule is liberally applied to require an opportunity to discover relevant evidence when such opportunity has not been provided. *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)).

## IV.   ARGUMENT

### A.  THE COURT HAS JURISDICTION TO REVIEW COMPLIANCE WITH ITS OWN ORDER.

EPA's action pursuant to this Court's remand order is necessarily subject to judicial review.  "A federal court has inherent power to enforce its judgments. *Peacock v. Thomas*, 516 U.S. 349, 356, 133 L. Ed. 2d 817, 116 S. Ct. 862 (1996) ('**Without jurisdiction to enforce a judgment entered by a federal court, the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution**.')." *NRDC v. Evans*, 243 F. Supp. 2d 1046, 1048 (N.D. Cal. 2003) (emphasis added).  This Court need not reach the issue of reviewability under the APA to deny EPA's motion because the agency prepared the EPA Plan pursuant to the Court's order on summary judgment, which set objective standards for the EPA Plan and ordered that it be reasonable.  *See* Dkt. 120 at 24:23-25:04. Moreover, the Court's remand order and partial judgment are not "final," but rather

Plaintiffs' Response to EPA's Motion to Dismiss - 14

"interlocutory,"[5] so the Court retains jurisdiction on that basis as well.  *NRDC v. Evans*, 243 F.

Supp. 2d at 1048 (following a remand order, "partial judgment does not divest this court of

jurisdiction, since the court did not enter a final judgment…"); *see* 9th Cir. Dkt. No. 30 (Case

Nos. 15-35380, et al.) ("Remand orders generally are not 'final decisions' for purposes of [28

U.S.C. § 1291], and appellants have not demonstrated that any exception to that general rule

applies to their appeals of the district court's March 16, 2015 order." (internal quotation marks

and citations omitted)).

> In partially granting Plaintiffs and the Spokane Tribe's motion for summary judgment,

the Court ordered:

> > This matter is remanded to the EPA with directions to consult with Ecology and file
> > herein, within 120 days of the date of this order, a complete and duly adopted **reasonable**
> > schedule for the measuring and completion of the work of the Task Force, including
> > quantifiable benchmarks, plans for acquiring missing scientific information, deadlines for
> > completed scientific studies, concrete permitting recommendations for the interim,
> > specific standards upon which to judge the Task Force's effectiveness, and a definite
> > endpoint at which time Ecology must pursue and finalize its TMDL.

Dkt. 120 at 24:23-25:04 (emphasis added).

> EPA and Defendant-Intervenors would have the Court rendered powerless to ensure

compliance with this order, leaving EPA free to disregard key standards that the Court imposed

to protect water quality in the Spokane River.  There can be no dispute that it is possible for EPA

to go through the motions of the remand order and check all the boxes, while doing so

unreasonably and in contravention of the intent of the order.  Plaintiffs contend that the EPA

Plan's benchmarks, deadlines and endpoint for a TMDL are utterly unreasonable, arbitrarily

---

[5] The interlocutory nature of the Court's ruling must not be confused with EPA's action, which is final.  Under the two-prong "final agency action" test in *Bennett v. Spear*, the Court declared that to meet the first prong of the test, the agency action "must not be of a merely tentative or interlocutory nature."  520 U.S. at 178.  Here, EPA stipulates that the first prong of the *Bennett v. Spear* test is met. Dkt. 200 at 15:19-20.

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29

derived and not in accordance with the law for a number of reasons.  *See* Dkt. 162 at ¶¶ 30-45.

The parties have a disagreement about the EPA Plan's compliance with the Court's order and its

reasonability standard, and it is the role of the Court to adjudicate this dispute.  In this situation,

the Court should exercise its inherent power to review compliance with its own order and deny

EPA's motion.

### B.  JUDICIAL REVIEW OF THE EPA PLAN IS CONSISTENT WITH *IDAHO SPORTSMEN'S COAL. v. BROWNER.*

The Court should follow the reasoning in *Idaho Sportsmen's Coal. v. Browner,* 951 F.

Supp. 962 (W.D. Wash. 1996), find that the EPA Plan is reviewable under the APA, and deny

EPA's motion.

Like the case at bar, *Idaho Sportsmen* involved protracted litigation and judicial oversight

in multiple phases to compel compliance with 33 U.S.C. § 1313 to ensure water quality

protection, as the CWA requires.  There, EPA argued that EPA had complied with the court's

prior remand order because on remand EPA approved a "schedule for the development of 'all

necessary TMDLs' in Idaho," ending the matter.  *Id.* at 964.  The court rejected this argument

and denied EPA's motion to dismiss, finding EPA's compliance reviewable under the APA.  *Id*.

at 967 (also ruling on the merits).  Under remarkably similar facts, the same result should happen

here.

When the *Idaho Sportsmen* court denied EPA's motion to dismiss, the court had already

ruled on prior motions, having ordered EPA to promulgate a 303(d) list of impaired waters for

Idaho, and subsequently ordering EPA "to perform its statutory duty in cooperation with Idaho

and to file 'a complete and duly-adopted reasonable schedule' within one year" (declining at that

time to order EPA to develop the TMDLs without Idaho's participation).  *Id*. at 964.  On remand,

Plaintiffs' Response to EPA's Motion to Dismiss - 16

EPA then approved a TMDL schedule pursuant to the court's order and moved to dismiss the case, arguing it had complied with the order.  *Id*.  The court disagreed, holding:

> Under the CWA, the EPA has a mandatory duty, if it disapproves a state's TMDL submission, to establish the TMDLs itself within thirty days.  Under the APA, the court may compel agency action unlawfully withheld or unreasonably delayed, and a discretionary act may be set aside if found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. §§ 706(1) and (1); *Friends of Endangered Species, Inc. v. Jantzen*, 760 F.2d 976, 980-81 (9th Cir. 1985).  <u>Here, the EPA's approval of Idaho's proposed TMDL schedule is arbitrary, capricious, and an abuse of discretion</u> . . . When an agency 'does not reasonably accommodate the policies of a statute or reaches a decision that is not one that Congress would have sanctioned, . . . a reviewing court must intervene to enforce the policy decisions made by Congress.'

*Id*. at 967-68 (internal citations omitted) (emphasis added) (cited by this Court with approval at Dkt. 120, p. 21).

Here too, EPA's approval of Ecology's TMDL schedule, embodied in the EPA Plan, is arbitrary, capricious, and an abuse of discretion and EPA's motion to dismiss must be denied.  *See* Dkt. 162 at ¶¶ 30-45.  Although the administrative record behind the EPA Plan is unavailable to Plaintiffs at this time (another reason for denying EPA's motion—*see* Section IV.D below), EPA and Ecology's briefs indicate "EPA consulted with Ecology during the development of this plan."  Dkt. 203 at 2:09; *accord* Dkt. 200 at 7:22. Plaintiffs' reading of this limited representation is that Ecology advised EPA about a schedule to which it would agree, and EPA then approved and incorporated that schedule into the EPA Plan.  This reading is supported by EPA's adamant contention (in conflict with the law of the case[6]) that EPA lacks authority to impose a TMDL schedule upon Ecology.  *See* Dkt. 200 at 17:16-19; Dkt. 129-1, EPA Plan at 11.

---

[6] *See* Dkt. 120 at 21:22-23 ("Thus, the EPA has authority to set, with a sate, a schedule to complete the TMDL process." (citing, inter alia, *Idaho Sportsmen*)).  "Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has already been decided by the same court…'" *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (*cert. denied* 508 U.S. 951 (1993)).

Plaintiffs' Response to EPA's Motion to Dismiss - 17

EPA approved the TMDL schedule in the EPA Plan, which is an agency action subject to APA review under *Idaho Sportsmen*. 951 F. Supp. at 967.  On this basis, the Court should deny EPA's motion to dismiss and hold the EPA Plan reviewable under the APA.  At a minimum, there is a genuine issue of material fact regarding EPA's "approval" of the schedule, precluding summary judgment.

However, whether it was EPA or Ecology that led the discussions for the EPA Plan does not matter for APA review.   Under 40 C.F.R. § 130.7(d)(1), "[s]chedules for submission of TMDLs shall be determined by the Regional Administrator <u>and</u> the State." Dkt. 120 at 21:18-19 (quoting 40 C.F.R. § 130.7(d)(1)) (emphasis added).  This regulation contemplates a collaborative process for setting TMDL schedules and was a basis on which *Idaho Sportsmen* found EPA to have acted contrary to law, and on which the court identified a remedy.  951 F. Supp. at 967-69.  "The EPA has authority to set, with the state, a schedule to complete the TMDL process; the CWA's enforcement history makes clear that a firm schedule is vital." *Id*. at 968.  Indeed here, Ecology represented to this Court that it is "committed to complying with EPA's Plan." Dkt. 203 at 2:07.  Accordingly, there is a genuine issue of material fact as to whether the EPA Plan "gave rise to direct and appreciable legal consequences," and thus is reviewable under the APA. *Cal. Cmtys. Against Toxics v. EPA*, 934 F.3d 627, 635 (D.C. Cir. 2019) (internal quotation marks and citation omitted).  EPA simply cannot argue it had nothing to do with establishing the schedule in the EPA Plan or that its involvement and facilitation is beyond judicial review—particularly when it has such profound implications for the ongoing polluted state of the Spokane River.

Moreover, that EPA and Ecology may collaborate to modify the PCB TMDL schedule in the future does not remove the action from APA jurisdiction. *See e.g. United States Army Corps*

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

*of Eng'rs v. Hawkes Co.,* 136 S. Ct. 1807 (2016) (possibility of revising an action "is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal."). Indeed, the long pattern of Ecology delays and reneging on plans to issue a PCB TMDL for the Spokane River, as well as EPA enabling this pattern, suggest that the agencies will work together to kick the can even farther down the road by modifying the schedule once this case is dismissed. *See e.g.* Dkt. 120 at 5:18-7:09 (describing Ecology's abandonment of a 2006 draft PCB TMDL, which it had shared with EPA); *id* at 21:01-04 ("There comes a point at which continual delay of a prioritized TMDL and detours to illusory alternatives ripen into a constructive submission that no action will be taken.  With the Task Force as presently proposed, *Ecology is coming dangerously close to such a point, and with EPA's support*." (emphasis added)).

### C.   OTHER LEGAL CONSEQUENCES WILL FLOW FROM THE EPA PLAN.

Several other legal consequences will flow from the EPA Plan, satisfying the second prong of the *Bennet v. Spear* test for a "final agency action" under the APA.  520 U.S. 154, 177-78 (1997).

First, the EPA Plan establishes the equivalent of a "safe harbor" for Ecology, where as long as Ecology follows the schedule and meets the Plan's arbitrary benchmarks, EPA commits not to find a constructive submission or prepare EPA's own TMDL for the Spokane River. Under Supreme Court precedent, creating or denying a safe harbor from legal or administrative proceedings have legal consequences and constitute final agency action.  *Hawkes*, 136 S. Ct. at 1814-15.  Such a safe harbor is final and reviewable even if a citizen suit remains available.  *Id.* at 1814.  And the Court noted that even an agency action that has "no authority except to give notice of how the [agency] interpreted the relevant statute, and would have effect only if and when" certain facts arise, is "nonetheless immediately reviewable."  *Id*. at 1815 (quoting *Abbot*

Plaintiffs' Response to EPA's Motion to Dismiss - 19

*Laboratories v. Gardner*, 387 U.S. 136, 150 (1967) and *Frozen Food Express v. United States*, 351 U.C. 40, 44-45 (1956)) (quotation marks omitted).

Here, despite EPA's insistence that the EPA Plan is non-binding, and despite the availability of a citizen suit to establish the constructive submission of no PCB TMDL for the Spokane River, the EPA Plan is a final agency action subject to judicial review because of the clear assurances that EPA has made to Ecology that it will not find a constructive submission so long as Ecology implements the arbitrary EPA Plan.  This real-world effect is far more akin to "alter[ing] the legal regime to which the action agency is subject" rather than having "no direct consequences."  *Bennet v. Spear*, 520, U.S. at 178 (quotations and citations omitted).  At the very least, there is a genuine issue of material fact regarding the safe harbor effect of the EPA Plan, precluding summary judgment.  EPA's motion must therefore be denied.

Second, the EPA Plan commits EPA to issue various determinations, the results of which could purportedly trigger PCB TMDL development for the Spokane River (whether by Ecology or by EPA under a constructive submission).  This plainly gives rise to legal consequences as a final agency action.  *Hawkes*, 136 S. Ct. at 1814.  Under the EPA Plan, EPA commits to determine the following: (1) whether the Comprehensive Plan is adequate; (2) whether by July 15, 2021 instream concentrations of PCBs meets 200 pg/L; (3) whether by July 15, 2025 instream concentrations of PCBs meets 170 pg/L; and (4) whether by July 15, 2028 applicable water quality standards for PCBs are met in the Spokane River.  Dkt. 129-1, EPA Plan at 12.  Under the terms of the EPA Plan, if EPA determines these standards are not met, "Ecology would immediately initiate development of a PCB TMDL."  *Id*.  Even if EPA lacks authority to obligate Ecology to act if standards are not met, the EPA plan still imposes obligations on EPA to make those determinations.  *See* Dkt. 120 at 22:03-12 (ordering the EPA Plan to include

Plaintiffs' Response to EPA's Motion to Dismiss - 20

"regular checkpoints at which Ecology and the EPA will evaluate progress").  Therefore, EPA's determinations under the Court-ordered Plan will necessarily give rise to legal consequences.  Again, Plaintiffs have a fundamental disagreement about the reasonableness of the checkpoints and end date for establishing a PCB TMDL, but the Plan clearly gives rise to legal consequences.[7]  The Court should retain jurisdiction and settle this dispute.

### D.  WITHOUT THE ADMINISTRATIVE RECORD, EPA'S MOTION IS PREMATURE AND SHOULD BE DENIED UNDER RULE 56(d).

The limited evidence currently available to Plaintiffs aptly demonstrates that the EPA Plan is a final agency action subject to judicial review and is also reviewable under the Court's inherent power to enforce its own judgment in any case.  However, to the extent the Court adopts the legal theories EPA proffers and finds EPA's evidentiary showing sufficient, the Court should deny or defer the motion under Rule 56(d).[8]

Under Rule 56(d), the Court may defer or deny a motion for summary judgment when the responding party provides a declaration indicating that, for specified reasons, it cannot present facts essential to justify its opposition.  FED. R. CIV. P. 56(d).  Evidence submitted in support of relief under Rule 56(d) need not be presented in a form suitable for admission at trial, so long as it rises sufficiently above mere speculation.  *Simas v. First Citizens Fed. Credit Union*, 170 F.3d 37, 46 (1st Cir. 1999).  This is because the intent of the rule is to allow a party to explain why it is yet unable to file an opposition to summary judgment that is subject to the evidentiary standards that govern Rule 56(c) and (e).  *Id*.  Factors favoring denial of a summary judgment

---

[7] The constitutional concerns issue alluded to in footnote 7 to EPA's motion (Dkt. 200 at 18) is a red herring. The schedule in EPA's plan, if binding, is binding on EPA, not the State of Washington. EPA using its authority under the constructive submission doctrine to develop a TMDL does not raise constitutional concerns.

[8] FED. R. CIV. P. 56(d) was formerly codified as Rule 56(f), therefore some of the authority cited herein refers to 56(f).  *See* Committee Notes on 2010 Amendment.

Plaintiffs' Response to EPA's Motion to Dismiss - 21

motion under Rule 56(d) include the timing of the motion before relevant discovery could be

completed and existence of material facts within the exclusive knowledge of the moving party,

among others.  Federal Civil Procedure Before Trial (The Rutter Group, 2020) § 14:115.

"Although Rule 56[d] facially gives judges the discretion to disallow discovery when the non-

moving party cannot yet submit evidence supporting its opposition, the Supreme Court has

restated the rule as *requiring*, rather than merely permitting, discovery 'where the non-moving

party has not had the opportunity to discover information that is essential to its opposition.'"

*Matabolife Int'l v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2011) (quoting *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)) (emphasis added).

Here, no administrative record has been prepared for Plaintiffs' challenge to the EPA

Plan, depriving Plaintiffs of evidence essential to oppose EPA's motion.  All underlying

evidence remains in EPA's exclusive knowledge.  Although it remains an open question whether

discovery will be permitted on claims in the Second Supplemental Complaint, there is no dispute

that at a minimum an administrative record will provide evidence to prosecute Plaintiffs' claims.

5 U.S.C. § 706 ("the court shall review the whole record…").  The administrative record will

include, among other things, (1) written communications between EPA and Ecology related to

their collaboration in developing the EPA Plan, (2) drafts of the EPA Plan exchanged among the

agencies, (3) records relied upon in determining the reasonableness of the deadlines and

benchmarks established in the EPA Plan, and (4) records related to EPA's review of the Task

Force Comprehensive Plan or lack thereof.  *See* Zemel Decl., ¶ 6.

Without access to evidence that will be compiled in a full administrative record or

discoverable under the Federal Rules, Plaintiffs are unable to present evidence demonstrating a

genuine issue of material fact on the following issues.  First, without copies of communications

Plaintiffs' Response to EPA's Motion to Dismiss -
22

and drafts exchanged between Ecology and EPA during their collaboration on the EPA Plan,

Plaintiffs are unable to cite evidence demonstrating that EPA "approved" the TMDL schedule as

EPA did in *Idaho Sportsmen*. *See* 951 F. Supp. at 964 ("The proposed schedule is set out in an

exchange of letters between the EPA and the State of Idaho"); Zemel Decl. ¶ 7.  Considering the

substantial deference EPA has shown to Ecology during its decades-long delay of a PCB TMDL

for the Spokane River and EPA's insistence that it has no authority over Ecology's schedule,

Plaintiffs anticipate these communications to show that EPA did not impose a schedule on

Ecology based upon its own analysis of what is reasonable to comply with 33 U.S.C. § 1313 and

achieve compliance with PCB water quality standards.  Zemel Decl., ¶ 7.  Rather, Plaintiffs

expect the records to show that EPA approved a schedule that Ecology found palatable for

arbitrary reasons.  *Id*.

Second, without these records, Plaintiffs are unable to cite evidence demonstrating that

EPA extracted binding commitments from Ecology to prepare a PCB TMDL under the EPA Plan

or that the agencies committed not to modify the schedule in the future to push deadlines farther

back.  *Id*. at ¶ 8.  This evidence would rebut EPA's factual argument that the EPA Plan does not

give rise to any legal consequences.  *Id*.

Finally, without these records, Plaintiffs are unable to cite evidence demonstrating EPA's

promise of a safe harbor from EPA finding a constructive submission, which would also render

the EPA Plan reviewable under *United States Army Corps of Engineers v. Hawkes Co.*, 136 S.

Ct. 1807 (2016).  Zemel Decl. at ¶ 9.  EPA has determined once already that no constructive

submission of a PCB TMDL was made (*see* Dkt. 81, p. 21:20-22:01) and it is apparent that

without the Court's remand order, EPA would have allowed Ecology to spin its wheels

indefinitely without ever demanding progress.  *See* Dkt. 200 at 6:05-11.  Considering the

Plaintiffs' Response to EPA's Motion to Dismiss -
23

schedule provided by the EPA Plan, it is therefore reasonable for Plaintiffs to expect the administrative record to include assurances or allusions that EPA will similarly find no constructive submission so long as Ecology abides by the arbitrary schedule.  Zemel Decl., ¶ 9.

As set forth in the above sections, Plaintiffs contend that there is sufficient basis to deny EPA's motion on any of these legal theories.  But to the extent the Court finds Plaintiffs' evidentiary showing lacking, it is because Plaintiffs do not yet have access to the administrative record behind the EPA Plan.  Under Rule 56(d), the Court should defer or deny EPA's motion until the administrative record is filed and finalized.

## V.     CONCLUSION

For the foregoing reasons, the Court should deny EPA's motion to dismiss.  It is vital for the Court to retain jurisdiction to ensure a schedule for finalizing the PCB TMDL is not arbitrary and contrary to law.

RESPECTFULLY SUBMITTED this 7th day of August, 2020.

Smith & Lowney, pllc

By: *s/Richard Smith*
Richard Smith, WSBA # 21788
By: *s/Marc Zemel*
Marc Zemel, WSBA #44325
Attorneys for Plaintiff
2317 E. John St.,
Seattle, WA 98112
Tel: (206) 860-2124; Fax: (206) 860-4187
E-mail: richard@smithandlowney.com, marc@smithandlowney.com