UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SIERRA CLUB; and CENTER FOR ENVIRONMENTAL LAW AND POLICY<br><br>       Plaintiffs,<br>and<br><br>SPOKANE TRIBE OF INDIANS,<br><br>       Plaintiff-<br>       Intervenor,<br><br>v.<br><br>CHRIS HLADICK, *et al*.<br>       Defendants<br>and<br><br>SPOKANE COUNTY; KAISER ALUMINUM WASHINGTON LLC; and STATE OF WASHINGTON DEPARTMENT OF ECOLOGY,<br><br>       Defendant-<br>       Intervenors. | No. 11-cv-1759-BJR<br><br>ORDER DENYING THE EPA'S MOTION FOR DISMISSAL OF PLAINTIFFS' SECOND AMENDED COMPLAINT AND SPOKANE TRIBE'S THIRD AMENDED COMPLAINT |

## I. INTRODUCTION

This nearly decade-old case centers on the regulation of—or lack thereof—polychlorinated biphenyl ("PCB") contamination in the Spokane River and its associated waterbodies. Defendant United States Environmental Protection Agency ("the EPA") moves to dismiss the Second Amended Complaint filed by Plaintiffs Sierra Club and The Center for Environmental Law & Policy ("Plaintiffs") and the Third Amended Complaint filed by Plaintiff-Intervenor Spokane Indian Tribe ("Spokane Tribe"), alleging that this Court lacks jurisdiction over the claims asserted in the amended complaints. Dkt. No. 200. Defendant-Intervenor State of Washington Department of Ecology ("Ecology") and Defendant-Intervenor Kaiser Aluminum Washington LLC each filed briefs in support of the EPA's motion. Dkt. Nos. 208-209. Plaintiffs and Spokane Tribe oppose the motion. Dkt. Nos. 204, 206. Having reviewed the pleadings, the record of the case, and the relevant legal authorities, the Court will deny the motion. The reasoning for the Court's decision follows.

## II. BACKGROUND

**A. The Clean Water Act Statutory Framework**

Congress passed the Clean Water Act ("CWA") to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251. To that end, the CWA sets forth a regulatory scheme that imposes duties on states as well as the EPA. Relevant here, Section 303(d) of the CWA requires states to adopt water quality standards for each waterbody within a state's boundaries. 33 U.S.C. § 1313. If a waterbody does not meet or is not expected to meet the state's standards, the state must then designate that body of water as a "water quality limited segment." § 1313(d)(1)(A); *see* 40 C.F.R. § 130.2(j). The list of "water quality limited segments" within a state is known as the "303(d) list."

Each state is required to develop a "total maximum daily load" ("TMDL") for each pollutant impairing each waterbody on the state's 303(d) list. 40 C.F.R. § 130.2(f). "A TMDL is the calculation of the maximum amount of a pollutant allowed to enter a waterbody so that the waterbody will meet and continue to meet water quality standards for that particular pollutant."[1] A TMDL determines a pollutant reduction target and allocates load reductions necessary to meet that target. The CWA requires states to submit to the EPA "from time to time" the TMDLs for each impaired waterbody on its 303(d) list. § 1313(d)(2). Certain mandatory duties are triggered for the EPA once a submission is made. First, within 30 days of submission, the EPA must approve or disapprove of the "water quality limited segments" and the corresponding TMDLs. *Id*. If the EPA approves a submission, the submission is incorporated by the state into its continuing waterbody regulation process. *Id*. If the EPA disapproves, it must, within 30 days of the disapproval, make its own identification of appropriate "water quality limited segments" and/or establish its own TMDL. *Id*.

The CWA is silent as to the nature of the EPA's obligations if a state fails to make a submission. However, the Ninth Circuit recognizes a judicially-created construct known as a "constructive submission". "Constructive submission" occurs when a state has "clearly and unambiguously" decided that it will not submit a TMDL. *Columbia Riverkeeper v. Wheeler*, 944 F.3d 1204, 1211 (9th Cir. 2019) (quoting *San Francisco BayKeeper v. Whitman*, 297 F.3d 877, 882 (9th Cir. 2002)). This failure to act "can amount to the constructive submission of an inadequate TMDL, thus triggering the EPA's duty to issue its own." *Wheeler*, 944 F.3d at 1211 (quoting *City of Arcadia v. U.S. Environmental Protections Agency*, 411 F.3d 1103, 1105 (9th Cir. 2005).

---

[1] *Overview of Total Maximum Daily Loads*, Environmental Protection Agency, https://www.epa.gov/tmdl/overview-total-maximum-daily-loads-tmdls#1 (last visited Sept. 15, 2020).

### B. PCBs in the Spokane River[2]

The Spokane River is an approximately 100-mile-long tributary of the Columbia River that flows through eastern Washington State. The river has the worst PCB contamination in the state and has been subject to a Spokane County and Washington Department of Health fish consumption advisory since 1994.[3] AR 15 at 97; AR Supp. 5, 7. Ecology is responsible for developing Washington State's 303(d) list and the TMDLs for the waterways on the list. In 1996, Ecology identified five segments of the Spokane River that exceeded water quality standards for PCBs. AR 2710. This number has increased over the years, and in 2010, the 303(d) list identified fifteen segments of the river that exceed water quality standards for PCBs. AR 80.

#### 1. Ecology's Failure to Develop a PCB TMDL for the Spokane River

Ecology has not developed a TMDL for PCBs for the Spokane River ("PCB TMDL") in the nearly quarter century since Ecology first identified the PCB contamination. In 2014, as part of this lawsuit, Ecology alleged that it had been unable to develop the PCB TMDL because "significant data gaps" exist that prohibited it from "identify[ing] the source of the majority of the PCB loading into the Spokane River." Dkt. No. 93 at 1, 4. Ecology further alleged that to "help fill the data gaps and to make immediate progress on identifying and removing sources of PCBs and other toxics to the Spokane River," it formed the Regional Toxics Task Force ("Task Force"). *Id*. at 1. According to Ecology, the Task Force consists of "a diverse group of regulatory agencies, public health officials, environmental organizations, and industrial and municipal dischargers." *Id*. Ecology asserted that the goal of the Task Force "is to develop a comprehensive

---

[2] For convenience, the Court uses "Spokane River" to refer to the Spokane River itself, the lake into which it flows (Spokane Lake, also known as Long Lake), and the Little Spokane River. The parties generally group these waterbodies together and this action targets regulation of all three.

[3] The Spokane Tribe has alleged for years that its membership—including young children—fish throughout the Spokane River watershed as a food source, but the fish have such elevated levels of PCBs that they are hazardous to its members' health. *See e.g*. Dkt. No. 168 at ¶ 4.

4

plan to bring the Spokane River into compliance with applicable water quality standards for PCBs." *Id*. Important to this lawsuit, Ecology admitted that with the creation of the Task Force, Ecology chose "to not prioritize development of a PCB TMDL" for the river. *Id*. at 10 (quoting AR 1 at 2). Rather, Ecology decided to delay developing the PCB TMDL to allow Ecology time to work with the Task Force "to make immediate progress on reducing PCB discharges" into the river. *Id*. The EPA supported Ecology's decision.

### C. Plaintiffs' Initiate this Lawsuit against the EPA

Plaintiffs viewed Ecology's decision to create the Task Force in lieu of creating a PCB TMDL for the Spokane River as a "constructive submission" under Ninth Circuit precedent, which, in Plaintiffs' view, triggered the EPA's "nondiscretionary duty" under the CWA to finalize a PCB TMDL for the river. Dkt. No. 1 at 1-2. When the EPA failed to take such action, Plaintiffs initiated this citizen-suit under the CWA and the Administrative Procedures Act ("APA"), 5 U.S.C. § 706, urging this Court to order the EPA to adopt a PCB TMDL for the river. The Spokane Tribe intervened in the lawsuit in March 2013. Dkt. No. 52. The Tribe joined in Plaintiffs' CWA and APA claims and also alleged that the EPA had breached its fiduciary responsibilities owed to the Tribe by failing to perform its nondiscretionary duties under the CWA. Like Plaintiffs, the Tribe urged this Court to "order the EPA to adopt a Spokane River PCB TMDL." Dkt. No. 84 at 16.

#### 1. This Court Concluded that the EPA Acted Contrary to the Law and Remanded the Matter to the EPA with Instructions to Create Clear Benchmarks and a Reasonable Timeframe for Submitting the PCB TMDL

In March 2015, this Court ruled on cross motions for summary judgment filed by the parties. *See* Dkt. Nos. 81, 84, 91, 95, and 120. First, this Court concluded that the "constructive submission doctrine" articulated by the Ninth Circuit in *San Francisco BayKeeper v. Whitman*,

5

297 F.3d 877, 883 (9th Cir. 2002) applied to this case. Dkt. No. 120 at 14. The Court then determined that Ecology's decision to form the Task Force rather than pursue a PCB TMDL for the river did not constitute a "constructive submission" because the decision "did not clearly and unambiguously indicate [Ecology's] intent to abandon the PCB TMDL." Dkt. No. 120 at 17. Accordingly, the Court denied Plaintiffs' and the Spokane Tribe's claims under the CWA and § 706(1) of the APA.

The Court then turned to Plaintiffs' and the Tribe's claim that the EPA acted contrary to law in violation of § 706(2)(A) of the APA when it approved Ecology's decision to create the Task Force as an alternative to creating the PCB TMDL. Ecology presented the Task Force as an alternative to the TMDL process but represented it would re-visit the issue if the Task Force failed to make "measurable progress." *See* AR 14A at 503. The Court found this representation concerning because Ecology had not defined "what constitutes measurable progress, nor did it clearly illustrate how the Task Force would produce or assist in preparing a TMDL." Dkt. No. 120 at 20. This Court further noted "the worrying lack of progress made with respect to scientific data [regarding PCBs in the Spokane River] in recent years." *Id.* The Court found this particularly troublesome because this alleged lack of data is one of the reasons Ecology and the EPA claim that Ecology has been unable to develop a PCB TMDL up to this point. Accordingly, this Court concluded that "the EPA acted contrary to law in finding the Task Force, as it is currently comprised and described, a suitable 'alternative' to the [PBC] TMDL." *Id.* at 21.

Therefore, the Court remanded the matter to the EPA with instructions to:

> work with Ecology to create a definite schedule with concrete goals, including: clear statements on how the Task Force will assist in creating a PCB TMDL in the Spokane River by reducing scientific uncertainty; quantifiable metrics to measure progress toward that goal; regular checkpoints at which Ecology and the EPA will evaluate progress; a reasonable end date, at which time Ecology will finalize and

> submit the TMDL for the EPA's approval or disapproval; and firm commitments to reducing PCB production from known sources in the interim.

*Id.* at 22. This Court further specified that the EPA shall:

> consult with Ecology and file herein, within 120 days of the date of this order, a complete and duly adopted reasonable schedule for the measuring and completion of the work of the Task Force, including quantifiable benchmarks, plans for acquiring missing scientific information, deadlines for completed scientific studies, concrete permitting recommendations for the interim, specific standards upon which to judge the Task Force's effectiveness, and a definite endpoint at which time Ecology must pursue and finalize its TMDL[.]

*Id.* at 24-25. This Court specifically retained "jurisdiction pending compliance" with the terms of the foregoing remand. *Id.* at 25.

### 2. Post-Remand Litigation Proceedings

The EPA timely responded to the Court's remand order, filing the "EPA's Plan for Addressing PCBs in the Spokane River" ("the EPA Plan" or "the Plan") on July 14, 2015. Dkt. No. 129-1. According to the EPA, the Plan "explain[s] the nature and work" and "goal" of the Task Force and "identifie[s] a schedule for measuring the work of the Task Force, including a definite endpoint at which time [the State] [will] develop and submit to EPA its TMDL." Dkt. No. 200 8-9. The EPA claims that under the Plan's schedule, "A TMDL could be completed as early as July 2019 or as late as July 2030." *Id.* at 8 (quoting Dkt. No. 129-1 at 1 (Summary)).

Shortly after the EPA filed the Plan with the Court, Plaintiffs filed a motion for summary judgment in which it argued that the EPA Plan "is arbitrary and capricious, an abuse of discretion, and not in accordance with the [CWA]." Dkt. No. 135 at 1. Plaintiffs requested that this Court "remand the [P]lan to EPA with directions to change it to require Ecology to submit the proposed Spokane PCB TMDL to EPA by the end of 2018[.]" *Id.* at 31-32. However, Plaintiffs subsequently withdrew the motion and instead moved to amend their complaint. Dkt. No. 145. The EPA opposed Plaintiffs' motion to amend the complaint and filed its own motion

7

"to terminate this case" arguing that it had complied with this Court's remand order. Dkt. No. 150. The Court granted Plaintiffs' motion to amend their complaint and the second amended complaint was filed on June 2, 2016. Dkt. Nos. 160, 162. The Spokane Tribe filed a third amended complaint shortly thereafter. Dkt. No. 168.

The EPA was scheduled to file a motion to dismiss the amended complaints on September 9, 2016 (Dkt. No. 167), but on September 12, 2016, the parties jointly requested that this Court stay the case pending Ecology's issuance of several NPDES permits and the Task Force's issuance of its the final comprehensive plan for the cleanup of PCBs in the river. Plaintiffs and the Tribe represented to the Court that they may voluntarily dismiss the amended complaints after the foregoing occurred. Dkt. No. 180 at 3. The Court granted the motion with instructions to file a status report every 120 days. Dkt. Nos. 182, 184.

On June 17, 2020, the parties jointly notified the Court that Plaintiffs and the Tribe will not voluntarily dismiss their claims and, instead, requested that the Court entertain the EPA's motion for dismissal of the amended complaints. The Court granted the parties' joint request and the EPA's motion is now fully briefed and ready for this Court's review. Dkt. No. 199.

### III.    DISCUSSION

Plaintiffs' and the Spokane Tribe's amended claims seek declaratory and injunctive relief pursuant to section 706(2) of the APA. They argue that the EPA Plan is arbitrary and capricious, an abuse of discretion, and not in accordance with the law and request that this Court vacate and remand the Plan "with specific instructions for its reformulation and reissuance." Dkt. No. 162 at 16; Dkt. No. 168 at 4. The EPA moves to dismiss the amended claims, arguing that judicial review under the APA is limited to "final agency action" and because the EPA Plan does not

constitute a final agency action, this Court lacks subject matter jurisdiction to review the Plan. As such, the EPA argues, the claims must be dismissed as a matter of law.

Plaintiffs and the Tribe counter that the EPA Plan is necessarily subject to judicial review because the Plan was prepared in accordance with this Court's remand order and courts have inherent power to review compliance with their own orders. In Plaintiffs and the Tribe's view, "[t]he parties have a disagreement about the EPA Plan's compliance with the Court's [remand] order … and it is the role of the Court to adjudicate this dispute." Dkt. No. 204 at 16. Nevertheless, Plaintiffs and the Tribe argue, this Court does have subject matter jurisdiction to review the EPA Plan under the APA because the Plan constitutes a final agency action.

The Court will address each of these arguments in turn.

### A. Whether this Court Has Inherent Power to Review the EPA Plan

As stated in the March 2015 order on the parties' cross motions for summary judgment, this Court was uneasy with the apparent lack of progress made by Ecology and the EPA in the nearly twenty-five years since PCB contamination became a known issue for the Spokane River. The Court was further concerned by the ill-defined and open-ended nature of Ecology's stated objective for the Task Force, which contained no defined scope, benchmarks, or deadlines. This indefiniteness combined with Ecology's seemingly endless delay in formulating a PCB TMDL for the Spokane River caused this Court to find that the EPA acted contrary to the law when it approved Ecology's formation of the Task Force constituting yet another bureaucratic obstacle delaying the establishment of the PCB TMDL. As this Court stated:

> There comes a point at which continual delay of a prioritized TMDL and detours to illusory alternatives ripen into a constructive submission that no action will be taken. *With the Task Force as presently proposed, Ecology is coming dangerously close to such a point, and with EPA's support*.

Dkt. No. 120 at 21 (emphasis added).

Therefore, this Court remanded the matter to the EPA with instructions to create a schedule that included the following: (1) concrete goals; (2) clear statements on how the Task Force will assist in the creation of a PBC TMDL for the river; (3) quantifiable metrics and specific standards against which to measure progress and the Task Force's effectiveness; (4) regular checkpoints on progress; (5) plans and deadlines for acquiring missing scientific data; (6) concrete permitting recommendations; and (7) a definite deadline by which Ecology will submit the PBC TMDL for EPA's review. Underscoring each of these requirements is the requirement that the schedule must be "reasonable". *Id.* at 24-25.

Plaintiffs and the Tribe argue that this Court need not reach the issue of reviewability under the APA to deny the EPA's motion because the agency prepared the EPA Plan pursuant to this Court's foregoing remand instructions. According to Plaintiffs and the Tribe, this Court has the authority to review the EPA Plan as part of its inherent power to enforce its judgments. The EPA counters that a motion to enforce this Court's remand order is not pending before the Court; rather, the instant motion seeks to dismiss Plaintiffs' and the Tribe's amended claims in which they request that this Court set aside the EPA Plan pursuant to the APA as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Dkt. No. 162 at ¶ 47; Dkt. No. 168 at ¶ 12.

It is blackletter law that "[a] federal court [has] inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996). However, whether the EPA Plan complies with this Court's remand instructions is not the issue currently before the Court. The issue before the Court—as defined by Plaintiffs' and the Tribe's amended claims—is whether the EPA Plan is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law" and

therefore, should be set aside under the APA. Dkt. No. 162 at ¶ 47. Thus, the Court must ascertain whether it has jurisdiction to review the EPA Plan for purposes of an APA claim. [4]

### B. Whether this Court Has Jurisdiction over Plaintiffs' and the Tribe's APA Claims

Judicial review under the APA is limited to "final agency actions." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.D.C. 2006). Finality is a "threshold question." *Id*. If the challenged agency action is not final, the court lacks jurisdiction to review it, and the claim must be dismissed as a matter of law. *Rattlesnake Coal v. EPA*, 509 F.3d 1095, 1104-05 (9th Cir. 2007). Two conditions must be independently satisfied for an agency action to be "final." *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997); *Valero Energy Corp. v. EPA*, 927 F.3d 532, 536 (9th Cir. 2019) (noting that both conditions must be satisfied independently). The action must mark the "consummation" of the agency's decision-making process and the action must be one by which "rights or obligations have been determined" or from which "legal consequences flow." 520 U.S. at 178. The party seeking judicial review of an agency action bears the burden to demonstrate that the challenged action is "final." 509 F.3d at 1104-05.

The EPA concedes that the first condition of finality—consummation of its decision-making process—is satisfied here. However, the EPA contends that the second condition—an action from which rights or obligations have been determined or from which legal consequences flow—is not satisfied. To satisfy the second condition, the EPA Plan must "impose an obligation, deny a right or fix some legal relationship." *City of San Diego v. Whitman*, 242 F.3d 1097, 1102 (9th Cir. 2001). The Court concludes that the EPA Plan satisfies this requirement. It

---

[4] Kaiser argues that Plaintiffs are barred by the doctrine of judicial estoppel from arguing here that the EPA Plan does not comply with the Court's remand order in light of arguments Plaintiffs made before the Ninth Circuit with respect to Kaiser's appeal of the Court's remand order. Dkt. No. 209. Because Plaintiffs' amended claim challenges the Plan under the APA, this argument is not relevant.

11

is beyond dispute that the Plan imposes obligations on Ecology. The EPA, itself, describes the obligations as follows: (1) if the Task Force has not completed "a comprehensive plan to bring the Spokane River into compliance with applicable water quality standards for PCBs" by December 31, 2016, Ecology shall develop a PCB TMDL for the river by July 15, 2019; (2) if "successive reductions of instream concentrations of PCB" in the river are not met by certain dates specified in the Plan, then Ecology will "initiate and submit a [PCB] TMDL" by corresponding dates set forth in the Plan, possibly as early as December 15, 2020; and (3) if the Spokane River remains on Washington's §303(d) list as of 2028, Ecology "will initiate a TMDL to address the impairments by no later than July 15, 2028, and finalize that TMDL by no later than July 1, 2030." Dkt. No. 200 at 7-8.

Despite these clearly delineated obligations, the EPA argues that the Plan does not constitute a final agency action for purposes of the APA because the Plan imposes no legal consequences for failing to comply with the obligations. Indeed, the EPA argues, it does not have the authority under the CWA to impose such consequences. However, the lack of legal consequences is not dispositive of this issue. Instead, the Ninth Circuit has instructed that "an agency action may be final if it has a 'direct and immediate … effect on the day-to-day business' of the subject party." *Oregon Natural Desert Ass'n v. U.S. Forest Service*, 465 F.3d 977, 987 (9th Cir. 2006) (quoting *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 (9th Cir. 1990)). Clearly the Plan has a direct effect on Ecology's actions as it sets forth a number of benchmarks it expects Ecology and the Task Force to meet and specifies the next steps if such benchmarks are not satisfied. The Ninth Circuit has further instructed that a court must consider "whether immediate compliance with [the] terms [of the agency action] is expected." *Id*. Here, the EPA

12

concedes that it "fully anticipates that it and [Ecology] will implement the Plan [.]" Dkt. No. 207 at 9.

Thus, the Court concludes that the EPA Plan is a final agency action subject to judicial review. Accordingly, the EPA's motion to dismiss must be denied.

### IV.   CONCLUSION

For the foregoing reasons, the Court HEREBY DENIES EPA's Motion for Summary Judgment, for Dismissal of the Supplemental Complaints [Dkt. No. 200].

Dated this 22nd day of September 2020.

Barbara Jacobs Rothstein
U.S. District Court Judge