Honorable Judge Barbara J. Rothstein

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| SIERRA CLUB; and CENTER FOR ENVIRONMENTAL LAW AND POLICY, | No. 2: 11-cv-01759-BJR |
| Plaintiffs, | |
| and | FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT SPOKANE TRIBE OF INDIANS |
| SPOKANE TRIBE OF INDIANS, | |
| Plaintiff-Intervenor, | |
| v. | |
| MICHELLE PIRZADEH; JANE NISHIDA; and UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendants, | |
| and | |
| SPOKANE COUNTY: KAISER ALUMINUM WASHINGTON LLC; and STATE OF WASHINGTON DEPARTMENT OF ECOLOGY, | |
| Intervenors. | |

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
PLAINTIFF-INTERVENOR
SPOKANE TRIBE OF INDIANS
**No. C11-1759-BJR**

Ted Knight, Special Legal Counsel
Office of the Spokane Tribal Attorney
P.O. Box 100, Wellpinit, WA 99040
(509) 953-1908

1

Plaintiff-Intervenor, Spokane Tribe of Indians, (*hereinafter* "Tribe" or "Plaintiff-Intervenor") by and through its counsel of record, Ted C. Knight, submits this Fourth Amended and Supplemental Complaint.

## I. INTRODUCTION

1. The Tribe seeks an order requiring Defendants the Environmental Protection Agency ("EPA") and its administrators to approve or disapprove the cleanup plan, or Total Maximum Daily Load ("TMDL"), for PCBs in the Spokane River developed by the Washington Department of Ecology, and if EPA disapproves, to promulgate a PCB TMDL, as required by the Clean Water Act ("CWA"), 33 U.S.C. §1251, et seq. Alternatively, Plaintiff-Intervenor seeks an order finding EPA's final administrative action in preparing, approving, and filing in this Court "EPA's Plan for Addressing PCBs in the Spokane River" (Dkt. No. 129-1) arbitrary and capricious, an abuse of discretion, and not in accordance with law. These claims are asserted under the Administrative Procedures Act, 5 U.S.C. §§ 701-706, and under the citizen suit provisions of the CWA, 33 U.S.C. § 1365(a)(2). Plaintiff-Intervenor seeks declaratory relief, injunctive relief, and recovery of litigation expenses.

2. Plaintiff-Intervenor, hereby incorporates by reference ¶¶ 2-3, Dkt. No. 217 of Plaintiffs' Sierra Club and Center for Environmental Law and Policy's Third Supplemental Complaint.

## II. JURISDICTION AND VENUE

3  The Court has subject matter jurisdiction and the relief requested herein is authorized by 33 U.S.C. § 1365(a), 5 U.S.C. §§ 701 – 706, 28 U.S.C. § 1331, and 28 U.S.C. § 1346(a)(2).

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
PLAINTIFF-INTERVENOR
SPOKANE TRIBE OF INDIANS
**No. C11-1759-BJR**

Ted Knight, Special Legal Counsel
Office of the Spokane Tribal Attorney
P.O. Box 100, Wellpinit, WA 99040
(509) 953-1908

2

4. Under 33 U.S.C. § 1365(b), Plaintiff-Intervenor notified Defendants of their failure to perform their CWA nondiscretionary duties and of Plaintiff-Intervenor's intent to supplement its complaint in this case to include violations of the CWA. This letter was sent on October 5, 2020 and is attached as Exhibit 1 ("Tribe's Notice Letter"), and incorporated by reference.

5. The office of defendants EPA Region 10 and Michelle Pirzadeh, its Acting Administrator, are located in King County, Washington within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391.

### III. PARTIES

4. Plaintiff-Intervenor, Spokane Tribe of Indians, is a federally recognized Indian Tribe with roughly 2943 Tribal Members. The Tribe's Reservation was established in August of 1877 after the Tribe was forced from its land by the United States government. The Tribe's Reservations' borders are the East Bank of Chamokane Creek, the South Bank of the Spokane River, the West Bank of the Columbia River and the Northern Border is the 48th parallel. The Tribe's ancestral lands as found by the Indian Claims Commission and affirmed by the United States Court of Claims includes the entirety of the Spokane River as it flows through what is now Washington State. Additionally, the Tribe has unquantified water rights with a priority date of 1877 within the Spokane River, which also include a right to water of a quality that can sustain fish and other aquatic life. The Tribe's Reservation is located directly downstream from the City of Spokane and surrounding communities. Fish within the portion of the Spokane River that flows across the Reservation have elevated levels of PCBs that cause them to be harmful to eat. The water of the Spokane River that flows across the Reservation does not meet the Tribe's

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
PLAINTIFF-INTERVENOR
SPOKANE TRIBE OF INDIANS
**No. C11-1759-BJR**

Ted Knight, Special Legal Counsel
Office of the Spokane Tribal Attorney
P.O. Box 100, Wellpinit, WA 99040
(509) 953-1908

3

water quality standards for PCBs.  Additionally, the Tribe's membership fish throughout the Spokane River watershed and use the waters for cultural and subsistence uses.  Finally, the Tribe is treated in the same manner as a state for purposes of the Clean Water Act, and has EPA approved Water Quality Standards.

5. The Tribe has standing to bring this action. The Tribe's water quality standards are currently not being met. The Tribe's membership cannot safely eat fish and aquatic resources throughout the Spokane River. The relief sought in this lawsuit can redress the Tribe's injuries and protect the Tribe's and its members' interests and resources.

6. The Tribe hereby incorporates by reference Plaintiffs', Sierra Club and Center for Environmental Law and Policy, descriptions of themselves contained in their Complaint at ¶¶ 9-10, Dkt. No. 217.

7. The Tribe hereby incorporates by reference the Plaintiffs' description of the EPA Defendants contained in their Complaint. (Dkt. No. 217 at ¶¶ 11-12).

8. Defendant-Intervenor, the State of Washington, Department of Ecology, is the Washington State Agency with delegated authority under the Clean Water Act.

9. Defendant-Intervenor, Spokane County is a political subdivision of the State of Washington, and also owns the new Spokane County Regional Water Reclamation Facility ("SCRWRF").  SCRWRF discharges PCBs into the Spokane River.

10. Defendant-Intervenor, Kaiser Aluminum Washington, LLC, a Delaware Corporation, owns and operates a facility that produces high-quality aluminum products along the Spokane River.  Kaiser Aluminum Washington, LLC discharges PCBs into the River.

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
PLAINTIFF-INTERVENOR
SPOKANE TRIBE OF INDIANS
**No. C11-1759-BJR**

Ted Knight, Special Legal Counsel
Office of the Spokane Tribal Attorney
P.O. Box 100, Wellpinit, WA 99040
(509) 953-1908

4

## IV. FACTS

11.   The Tribe hereby incorporates in whole and adopts by reference Plaintiffs' factual description contained in their Third Supplemental Complaint with the following additions. (Dkt. No. 217 at ¶¶ 17-81).

12.   The State of Washington completed a report in 2017 that documented at the boundary of the Tribe's jurisdictional waters PCB levels ranging between 55-117 pg/L in the water column. *Spokane River PCBs and Other Toxics at the Spokane Tribal Boundary*, page 26, table 9, *available at* https://fortress.wa.gov/ecy/publications/documents/1703019.pdf (Last visited January 5, 2020). These water column samples significantly exceed the Tribe's EPA approved PCB standard of 1.3 pg/L. At the time the report was drafted these samples exceeded Washington's standards, which were 7 pg/L for PCBs. *Id* at 10. The current data indicates that significant reductions in PCBs are still needed to meet the Tribe's applicable downstream standards. *See* WAC 173-201A-240(b); 40 C.F.R.§ 122.4(d).

13.   The State of Washington was actively pursuing water quality variances up until July 2020 but put those efforts on hold: "Because of the uncertainty created by EPA's rollback of the criteria, we are unable to move forward and cannot officially release the formal draft rule language until the court case is resolved." *Available at* https://ecology.wa.gov/Regulations-Permits/Laws-rules-rulemaking/Rulemaking/WAC173-201A-variances (Last visited January 5, 2021).

14.   Regardless, up until Ecology's pause on variance rulemaking they made their intent regarding a PCB TMDL clear as stated in a draft public document:

> The technology limitations for reducing PCBs to a level that would meet the water quality standards would remain an issue for each discharger once a TMDL was developed. A TMDL might provide more detail and analysis on the percentages of reduction needed between point sources and nonpoint sources, but NPDES permittees would still not be able to implement technology to meet the waste load allocations and a variance would still be necessary. **Accordingly,**

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT  
PLAINTIFF-INTERVENOR  
SPOKANE TRIBE OF INDIANS  
**No. C11-1759-BJR**

Ted Knight, Special Legal Counsel  
Office of the Spokane Tribal Attorney  
P.O. Box 100, Wellpinit, WA 99040  
(509) 953-1908

5

> **Ecology will defer development of a PCBs TMDL at this time in order to pursue more immediate reductions of PCBs loading to the Spokane River.**[1]

15.  The Spokane River Regional Toxics Task Force's ("Task Force" or "SRRTTF") plans and activities appear to be lacking as stated in the Spokane Riverkeeper's resignation letter from the Task Force:

> The EPA's 2016 water quality standards should be a cornerstone upon which all other cleanup actions and processes follow. These criteria are scientifically calculated to bring us clean fish and should be the standard from which we all work. However, local efforts to petition the EPA to rescind its water quality standards for PCBs have eroded our confidence in the SRRTTF. We are no longer convinced that meeting water quality standards is indeed the goal of the all of the SRRTTF stakeholders. We cannot continue to be a signatory to an entity whose members are involved in efforts to change the very goalposts by which success or failure are to be measured.

Spokane Riverkeeper letter dated June 7, 2019, *available at* http://srrttf.org/wp-content/uploads/2019/06/20190604_Riverkeeper_SRRTTF_Letter.pdf (last visited January 5, 2021). Additionally, Spokane Riverkeeper called "for the work of the SRRTTF to be formally folded into a conventional Total Maximum Daily Load (TMDL)." *Id*.

## V. CAUSES OF ACTION

### First Cause of Action – Clean Water Act Citizen Suit

16.  The Intervenor-Plaintiff hereby incorporates by reference the Tribe's Notice Letter, the above paragraphs, and adopts as its own all of the allegations contained in the

---

[1] Preliminary Draft Environmental Impact Statement for PCB Variances on the Spokane River, June 10, 2020, Page 8-9 (emphasis added) *available at* https://ecology.wa.gov/DOE/files/90/90a9f3ee-d7e1-4b6b-90cb-86edf06d7671.pdf  (Last visited January 5, 2020).

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
PLAINTIFF-INTERVENOR
SPOKANE TRIBE OF INDIANS
**No. C11-1759-BJR**

Ted Knight, Special Legal Counsel
Office of the Spokane Tribal Attorney
P.O. Box 100, Wellpinit, WA 99040
(509) 953-1908

6

Plaintiffs' Third Supplemental Complaint and adopts as its own the Plaintiffs' cause of action specifically described in Dkt. No. 217 at ¶¶ 82-85.

17. The Tribe's water quality will continue to suffer without the imposition of declaratory and injunctive relief requiring Defendants to perform their nondiscretionary duties.

### Second Cause of Action- APA Section 706(2)

18. The Intervenor-Plaintiff hereby incorporates by reference the Tribe's Notice Letter, the above paragraphs, and adopts as its own all of the allegations contained in the Plaintiffs' Third Supplemental Complaint and adopts as its own the cause of action specifically described in Dkt. No. 217 at ¶¶ 86-91.

19. Defendants' actions and/or failure to act are subject to judicial review, and Intervenor-Plaintiff is entitled to the relief sought under the APA, 5 U.S.C. §§ 701-706.

### Third Cause of Action – APA Section 706(1)

20. The Intervenor-Plaintiff hereby incorporates by reference Tribe's Notice Letter, the above paragraphs, and adopts as its own all of the allegations contained in the Plaintiffs' Third Supplemental Complaint and adopts as its own the cause of action specifically described in Dkt. No. 217 ¶¶ 92-96.

21. Defendants' actions and/or failure to act are subject to judicial review, and Intervenor-Plaintiff is entitled to relief sought under the APA, 5 U.S.C. §§ 701-706.

### VI. RELIEF REQUESTED

Whereof, Plaintiff-Intervenor respectfully requests that this Court grant the following relief:

A. Issue a declaratory judgment that Defendants have failed to perform their nondiscretionary duties under 33 U.S.C. § 1313(d)(2) with respect to the Spokane River PCB

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT  
PLAINTIFF-INTERVENOR  
SPOKANE TRIBE OF INDIANS  
**No. C11-1759-BJR**

Ted Knight, Special Legal Counsel  
Office of the Spokane Tribal Attorney  
P.O. Box 100, Wellpinit, WA 99040  
(509) 953-1908

7

TMDL constructively submitted by Ecology, and that they have acted unlawfully and/or unlawfully withheld or unreasonably delayed agency action;

  B. Enjoin Defendants to perform nondiscretionary duties on an expeditious schedule;

  C. Issue a declaratory judgment that EPA's Plan is arbitrary and capricious, an abuse of discretion, and inconsistent with the law;

  D. Vacate and remand EPA's Plan with specific instructions for its reformulation and reissuance;

  E. Retain jurisdiction to see EPA's Plan through to finalization of the Spokane River PCB TMDL;

  F. Award Plaintiff-Intervenor their litigation expenses, including reasonable attorneys' and expert witness fees, as authorized under Section 505(d) of the CWA; and

  D. Award such other relief, as this Court deems appropriate.

Respectfully submitted this 1st day of March 2021.

> By: s/Ted C. Knight
> Ted C. Knight, WSBA #39683
> Special Legal Counsel
> Office of the Spokane Tribal Attorney
> Spokane Tribe of Indians
> PO Box 100
> Wellpinit, WA 99040
> Phone (509) 953-1908
> tedk@spokanetribe.com

FOURTH AMENDED AND SUPPLEMENTAL COMPLAINT
PLAINTIFF-INTERVENOR
SPOKANE TRIBE OF INDIANS
**No. C11-1759-BJR**

Ted Knight, Special Legal Counsel
Office of the Spokane Tribal Attorney
P.O. Box 100, Wellpinit, WA 99040
(509) 953-1908

8



**Spokane Tribe of Indians**
OFFICE OF THE SPOKANE TRIBAL ATTORNEY
P.O. BOX 100, Wellpinit, WA 99040
(509) 458-6521 / fax (509) 458-6596

October 5, 2020

*By Certified Mail Return Receipt Requested*

Chris Hladick, Administrator
Environmental Protection Agency Region 10
1200 Sixth Ave., Suite 900
Seattle, WA 98101

Andrew Wheeler, Administrator
Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

  **RE: Notice of Intent to Sue Under the Clean Water Act Concerning the Spokane River PCB TMDL**

Dear Administrators Hladick and Wheeler:

  The Office of the Spokane Tribal Attorney represents the Spokane Tribe of Indians ("Tribe"), PO Box 100, Wellpinit, WA 99040. Any response related to this matter should be directed to Ted Knight, Special Legal Counsel at (509) 953-1908 or tedk@spokanetribe.com. This letter is to provide you with sixty days notice of the Tribe's intent to amend/supplement its complaint in W.D. Wash. No. 2:11-cv-01759-BJR, against you and the EPA (*hereinafter* "EPA") under section 505(a)(2) of the Clean Water Act ("CWA"), 33 USC Section 1365(a)(2), for the violations described herein concerning EPA's failure to perform its nondiscretionary duty under CWA Section 303(d)(2) with regard to the total maximum daily load ("TMDL") for PCBs in the Spokane River and its tributaries.

  **Clean Water Act and TMDLS**

  Congress passed the CWA in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To achieve that objective, Congress declared as a "national goal" that "the discharge of pollutants into the navigable waters be eliminated by 1985." *Id.*

1

Exhibit 1

EPA's regulatory program for water protection focuses on two potential sources of pollution: point sources and nonpoint sources. Point source pollution was addressed in the 1972 amendments to the CWA, where Congress prohibited the discharge of any pollutant from any point source into certain waters unless that discharge complies with the CWA's specific requirements. 33 U.S.C. §§ 1311(a) and 1362(12). Under this approach, compliance focuses on technology-based controls to limit the discharge of pollutants through the National Pollutant Discharge Elimination System ("NPDES") permit process.

When these requirements are found insufficient to clean up certain waterbodies, the CWA requires use of a water quality based approach. States are required to identify such waters and designate that was "water quality limited." The states are then to establish a priority ranking for these waters, and in accordance with that ranking, to establish more stringent pollution limits called "total maximum daily loads," or "TMDLS." 33 U.S.C. §§ 1313(d)(1)(A) and (C). TMDLs are the greatest amount of a pollutant the water body can receive without violating a state's water quality standard.

The TMDL calculations help ensure that the cumulative impacts of multiple point source discharges are accounted for and evaluated in conjunction with pollution from nonpoint sources. States are then required to take whatever additional cleanup actions are necessary, which can include further controls on both point and nonpoint pollution sources.

Under Section 303(d), states and EPA are required to meet a schedule regarding TMDL lists: TMDL lists were to be submitted to EPA by states no later than 180 days after EPA's publication of first water pollutants list (June 26, 1979); EPA was to approve or disapprove the submissions within 30 days after that (July 26, 1979) and, upon disapproval, EPA was to promulgate its own TMDLs within 30 days (August 25, 1979). 33 U.S.C. § 1313(d)(2); *see American Canoe Ass'n v. EPA*, 30 F.Supp.2d 908, 921 (E.D. Va. 1998).

Clean Water Act Citizen Suit Provision

CWA Section 505(a)(2), 33 U.S.C. § 1365(a)(2), authorizes citizens to bring suit in federal court against EPA for failing to perform an "act or duty" under the CWA that is not discretionary. The courts have jurisdiction to order EPA to perform such act or duty, and to award costs of litigation, including reasonable attorney and expert witness fees. 33 U.S.C. §§ 1365(a) and (d).

EPA's duties to approve or disapprove TMDL submissions, and to promulgate its own TMDLs upon disapproval, are non-discretionary, and these duties extend to a state's constructive submission of TMDLs. *See Columbia Riverkeeper v. Wheeler*, 944 F.3d 1204, 1206 (9th Cir. 2019); *Scott v. City of Hammond*, 741 F.2d 992, 996-997 (7th Cir. 1984); *American Canoe Ass'n*, 30 F.Supp.2d at 919-921; *Alaska Center for the Environmental v. Reilly*, 762 F.Supp. 1422, 1426-1429 (W.D. Wash. 1991).

Spokane River PCB TMDL

2

Exhibit 1

Numerous waterbody segments of the Spokane River and Lake Spokane (also known as Long Lake), and one segment of the Little Spokane River are on Washington's final and approved 303(d) list for not meeting Washington State's human health water quality criterion of polychlorinated biphenyls (PCBs) in edible fish tissue. (**Attachment 1**). Many of these listings go back to 1996.

The Washington Department of Ecology conducted water quality studies from 2003-2007 to assess PCB sources to the Spokane River. The goal of these efforts was to quantify PCB contamination and identify necessary reductions in sources and the receiving waters to meet applicable PCB water quality criteria in the Spokane River. The studies, which analyzed PCBs in water, industrial and municipal effluents, stormwater, suspended particulate matter bottom sediments, sediment cores, and fish tissue, are described in "Spokane River PCB Source Assessment 2003-2007." Department of Ecology No. 11-03-013 (April 2011).

In May 2011, Ecology published published "Spokane River Toxics Reduction Strategy," Department of Ecology Publication No. 11-10-038. At page 19 of this document, Ecology explains that "[a] draft Spokane River PCB TMDL was issued for public comment in June 2006 but was not completed because of the need for more data, including more accurate stormwater data, updated fish tissue sampling results, and the addition of new Spokane Tribe water quality standards for PCBs based on updated fish consumption rates. The draft TMDL was revised with this updated information in 2009 and issued as the Spokane River Source Assessment Report 2011."

Also, on that page, Ecology declares the following:

Ecology is not currently planning to develop a PCB TMDL with wasteload allocations, but this is still a potential tool for the future. Setting wasteload allocations through a TMDL to accomplish that would set a target well below the 'background' PCB concentrations observed in remote bodies of water with no obvious source of contamination other than aerial deposition.

In part because it would establish an impossible near-term target, and based on its experience with the Spokane River Dissolved Oxygen TMDL, which took 12 years to complete, Ecology is opting to proceed directly to implementing measure to reduce all toxics to the Spokane River. Those measure are described in this strategy. Such a straight-to-implementation plan is a recent strategy adopted by EPA and Ecology to address the many bodies of water that are on the list of polluted waters [called the 303(d) list] through tools other than TMDLs. Ecology plans to develop a straight-to-implementation plan for the Spokane River toxics in 2012.

Sierra Club and Center for Environmental Law and Policy brought a Clean Water Act citizen suit against EPA in October 2011 seeking, *inter alia*, injunctive relief for EPA's failure to perform their nondiscretionary duties under 33 U.S.C. § 1313(d)(2)

3

concerning EPA's obligations to approve or disapprove, and upon disapproval, to promulgate the TMDL for PCBs constructively submitted by Ecology for various segments of the Spokane River. The Spokane Tribe of Indians intervened as a plaintiff in 2013.

On March 16, 2015, the Honorable Judge Barbara Rothstein of the Western District of Washington issued an order on cross motions for summary judgment, finding that the EPA violated section 706(2)(A) of the Administrative Procedures Act "in finding the [Spokane River Regional Toxics] Task Force . . . a suitable 'alternative' to the TMDL." Dkt. 120 p. 21:04-06. The Court set aside EPA's prior decision that, inter alia, interim measures to achieve water quality standards are an acceptable alternative to a TMDL and remanded the matter to EPA for additional consideration consistent with the Court's order. Dkt. 120, pp. 21-22. The Court also dismissed the Clean Water Act claims and the Spokane Tribe's breach of trust claim without prejudice, but found,

> There comes a point at which continual delay of a prioritized TMDL and detours to illusory alternatives ripen into a constructive submission that no action will be taken. With the Task Force as presently proposed, Ecology is coming dangerously close to such a point, and with EPA's support.

Dkt. 120 at 21:01-04. In nearly five years since the Court's determination Ecology's continual delay and illusory alternatives have crossed the line into a constructive submission of no TMDL for PCBs in the Spokane River, triggering EPA's non-discretionary duties under the Clean Water Act.

On July 2015, in accordance with the Court's remand order, EPA submitted its "Plan for Addressing PCBs in the Spokane River" (hereinafter "EPA's Plan"). Dkt. 129-1. EPA's Plan included a schedule, which called for the Task Force to complete by December 31, 2016 a 'Comprehensive Plan to bring the Spokane River into compliance with applicable water quality standards for PCB" and indicated that "if in EPA's determination the Comprehensive Plan does not adequately address the items listed [in EPA's Plan], then Ecology would immediately initiate development of a PCB TMDL for impaired segments of the Spokane River, and such TMDL would be submitted for EPA's approval by July 15, 2019." Dkt. 129-1, p. 11. EPA's Plan further provided that Ecology "will initiate a TMDL to address the impairments by no later than July 15, 2028, and will finalize that TMDL by no later than July 1, 2030." *Id* at p. 1,12. Despite providing theses deadlines for Ecology, EPA's Plan "clarifies" that those deadlines are illusory and unenforceable, since EPA "does not interpret its regulations at 40 C.F.R. 130.7(d)(1), which are referenced in the Court's order, to give EPA the authority to establish a legally enforceable schedule for either the Task Force or the State." *Id* at 11.

Indeed the Task Force, of which Ecology is a member, prepared its "Comprehensive Plan" in a way that explicitly leaves the door open for Ecology to continue its long delays and never issue a TMDL for PCBs in the Spokane River. Page one reads: "Should the Task Force fail to make measurable progress toward [attaining water quality standards for PCBs], then Ecology is 'obligated to proceed with a TMDL in the Spokane River for PCBs or determine an alternative to ensure that water quality

4

standards are met." (Emphasis added, no citation provided for the internal quotation marks). The Comprehensive Plan also states that it "does not constitute an agreement by agency or member of the Task Force to fund or participate in implementation of the Control Actions or Future Studies," on which it places so much emphasis. EPA's Plan and the Comprehensive Plan do not provide a credible plan for producing the PCB TMDL. Ecology's pattern of conduct makes it unambiguously clear that it has no intention of issuing a PCB TMDL for the Spokane River and that it will simply continue to pursue alternatives in lieu of a TMDL, a course of action that Ecology does not have the discretion to take and which is proving inadequate to meet water quality standards in any case.

In a recent document publically released by Ecology, Ecology stated the following:

> TMDLs are cleanup plans that identify the reductions needed in a water body in order for a water body to get back into compliance with the water quality standards. A TMDL is not self-implementing and therefore would not meet the objective of issuing the NPDES permits by fall 2021. A TMDL would help to determine the waste load allocations that would be placed in each individual permit and it would identify the nonpoint load reductions needed. While the waste load allocations would be placed in the NPDES permits, the nonpoint load is more difficult to address.
>
> The technology limitations for reducing PCBs to a level that would meet the water quality standards would remain an issue for each discharger once a TMDL was developed. A TMDL might provide more detail and analysis on the percentages of reduction needed between point sources and nonpoint sources, but NPDES permittees would still not be able to implement technology to meet the waste load allocations and a variance would still be necessary. **Accordingly, Ecology will defer development of a PCBs TMDL at this time in order to pursue more immediate reductions of PCBs loading to the Spokane River.**

Preliminary Draft Environmental Impact Statement for PCB Variances on the Spokane River, page 9, June 10, 2020, available at https://ecology.wa.gov/DOE/files/90/90a9f3ee-d7e1-4b6b-90cb-86edf06d7671.pdf (last visited September 30, 2020)(emphasis added). For some of the Spokane River's 303-d listed segments for PCBs, the development of a PCB TMDL has been delayed for almost 25 years since the segments were first listed.

Intent to sue

With its actions, delay, and declarations, Washington State, through the Department of Ecology has constructively submitted a TMDL for PCB 303(d)-listed segments of the Spokane River and Little Spokane River identified in Attachment 1. EPA has failed to perform its non-discretionary duty to review and approve or disapprove this constructively submitted PCB TMDL, and, in the event of disapproval, to promulgate its own PCB TMDL. The Spokane Tribe of Indians intends to amend/supplement its

5

Exhibit 1

complaint to include violations of the Clean Water Act in the Western District of Washington No. 2:11-cv-01759-BJR against EPA. Relief sought will include declaratory and injunctive relief, as well as the award of litigation expenses.

Sincerely,

Ted Knight
Special Legal Counsel
Spokane Tribe of Indians

Cc:  William Barr, United States Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue
Washington, DC 20530-0001

Counsel of record in W.D. Wash. Case No. 2:11-cv-01759-BJR (via email)

Laura Watson, Director
Department of Ecology
State of Washington
PO Box 47600
Olympia, WA 98504-7600

Washington State's Counsel of record in W.D. Wash. Case No. 2:11-cv-01759-BJR (via email)

6

Exhibit 1

# Washington State Water Quality Assessment
## 303(d)/305(b) List

Approved WQ Assessment | Contact Us | WQ Atlas

[ New Search ] [ Modify Search ] [ Export ]

## Search Results - 23 Matched Listings

| | ListingID | AU ID | Medium | Parameter | Category | Waterbody Name | WRIA | WQ Improvement Project | WQ Atlas Map Link |
|---|---|---|---|---|---|---|---|---|---|
| View | 8201 | 17010305000011 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE RIVER | 57 - Middle Spokane | | 8201 |
| View | 8202 | 17010305000009 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE RIVER | 57 - Middle Spokane | | 8202 |
| View | 8207 | 17010305000010 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE RIVER | 57 - Middle Spokane | | 8207 |
| View | 9015 | 47117I7D4 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE LAKE | 54 - Lower Spokane | | 9015 |
| View | 9019 | 47117I8D3 | Water | Polychlorinated Biphenyls (PCBs) | 2 | SPOKANE LAKE | 54 - Lower Spokane | | 9019 |
| View | 9021 | 47117H5I3 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE LAKE | 54 - Lower Spokane | | 9021 |
| View | 9027 | 17010307000010 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE RIVER | 54 - Lower Spokane | | 9027 |
| View | 9033 | 17010307000774 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE RIVER | 54 - Lower Spokane | | 9033 |
| View | 9051 | 17010308000018 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | LITTLE SPOKANE RIVER | 55 - Little Spokane | | 9051 |
| View | 13119 | 17010305000010 | Water | Polychlorinated Biphenyls (PCBs) | 2 | SPOKANE RIVER | 57 - Middle Spokane | | 13119 |
| View | 14385 | 17010307009615 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE RIVER | 54 - Lower Spokane | | 14385 |
| View | 14396 | 17010305000011 | Water | Polychlorinated Biphenyls (PCBs) | 2 | SPOKANE RIVER | 57 - Middle Spokane | | 14396 |
| View | 14397 | 17010305000012 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE RIVER | 57 - Middle Spokane | | 14397 |
| View | 14400 | 17010307009102 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE RIVER | 54 - Lower Spokane | | 14400 |
| View | 36440 | 47117I8C2 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE LAKE | 54 - Lower Spokane | | 36440 |
| View | 36441 | 47117I6C1 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE LAKE | 54 - Lower Spokane | | 36441 |
| View | 78928 | 47117I7B9 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE LAKE | 54 - Lower Spokane | | 78928 |
| View | 78929 | 47117H5J8 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE LAKE | 54 - Lower Spokane | | 78929 |
| View | 78930 | 47117I5A4 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE LAKE | 54 - Lower Spokane | | 78930 |
| View | 78931 | 47117I7D3 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE LAKE | 54 - Lower Spokane | | 78931 |
| View | 78932 | 47117I5A5 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE LAKE | 54 - Lower Spokane | | 78932 |
| View | 78933 | 47117I7E2 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE LAKE | 54 - Lower Spokane | | 78933 |
| View | 78968 | 17010307009085 | Tissue | Polychlorinated Biphenyls (PCBs) | 5 | SPOKANE RIVER | 54 - Lower Spokane | | 78968 |

[ New Search ] [ Modify Search ] [ Export ]

Ecology Home Page | Copyright | Privacy Notice | Accessibility | Release Notes
Approved WQA Version: 3.0.2

ATTACHMENT 1
NOTICE OF INTENT TO SUE